**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV, | Case No. 14-cv-8175-SAS |
| Plaintiff, | |
| | **JURY DEMAND** |
| v. | |
| HSBC BANK USA, NA, AS TRUSTEE, | |
| Defendants. | |
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), *et al*., | Case No. 14-cv-9366-SAS |
| Plaintiffs, | |
| | **JURY DEMAND** |
| v. | |
| HSBC BANK USA, NATIONAL ASSOCIATION, | |
| Defendant, | |
| -and- | |
| The Trusts Identified in Exhibit 1, | |
| Nominal Defendants. | |
| PHOENIX LIGHT SF LIMITED, *et al.*, | Case No. 14-cv-10101 |
| Plaintiffs, | |
| | **JURY DEMAND** |
| v. | |
| HSBC BANK USA, N.A., | |
| Defendants. | |

**PLAINTIFFS' JOINT MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(6)**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

I.      PRELIMINARY STATEMENT ......................................................... 1

II.     FACTUAL BACKGROUND .............................................................. 4

        A.      HSBC's Critical Role As Trustee For The Trusts ................................. 4

        B.      HSBC's Contractual Duties ................................................................... 6

                1.      HSBC's Duty To Protect The Trusts ......................................... 6

                2.      HSBC's Duty To Ensure The Trusts Take Title To The
                        Mortgage Loans ......................................................................... 6

                3.      HSBC's Duty To Enforce The Sellers' Repurchase
                        Obligations ................................................................................. 7

                4.      HSBC's Duty To Notify Defaulting Servicers And Demand
                        A Cure ........................................................................................ 7

                5.      HSBC's Heightened Duties Following An Event Of
                        Default ........................................................................................ 7

        C.      HSBC's Knowledge Of Defaults ........................................................... 8

        D.      HSBC's Failure To Timely Enforce The Trusts' Rights Has
                Caused The Trusts And Holders To Suffer Substantial Losses ........................ 10

III.    ARGUMENT ...................................................................................... 11

        A.      The Complaints State A Claim For Breach Of Contract ....................... 11

                1.      HSBC Materially Breached Its Duty To Enforce The
                        Sellers' Representations And Warranties .................................. 12

                2.      Plaintiffs Adequately Allege That HSBC Breached Its Post-
                        Default Obligations ................................................................... 17

        B.      Phoenix Light's Claims Related To HSBC's Breach Of Its Duties
                Relating To Document Delivery And Servicing Related
                Certifications Are Well Pled ............................................................... 20

        C.      Plaintiffs' Adequately Allege A Claim Under The TIA For The
                Indenture Trusts ................................................................................... 24

                1.      Plaintiffs Properly Allege HSBC's Violation Of Section
                        315(b) Of The TIA .................................................................... 25

2.      Plaintiffs Properly Allege HSBC's Violation Of Section
        315(c) Of The TIA ................................................................................ 26

3.      Plaintiffs Adequately Allege Damages Under The TIA ......................... 26

D.      The Streit Act Applies To Trusts Not "Qualified" Under The TIA ................... 27

E.      Plaintiffs Adequately Allege Tort, Breach Of Trust And Fiduciary
        Duty Claims ........................................................................................................ 29

1.      Plaintiffs State A Claim For Breach Of Fiduciary Duty......................... 29

2.      Plaintiffs' Tort And Breach Of Trust/Fiduciary Duty
        Claims Are Predicated On Independent, Extracontractual
        Duties ..................................................................................................... 29

3.      The Economic Loss Doctrine Does Not Bar Plaintiffs'
        Non-Contract Claims .............................................................................. 32

F.      Plaintiffs Have Standing To Bring Contract Claims As To All
        Trusts................................................................................................................... 33

1.      Plaintiffs Are "Holders" As That Term Is Used Throughout
        The Governing Agreements..................................................................... 33

2.      Plaintiffs Have Standing As Cede & Co.'s Principals............................. 35

3.      Plaintiffs Are Third-Party Beneficiaries Of Last Resort........................ 36

4.      Any Lack Of Standing Can Be Cured...................................................... 37

G.      The No-Action Clauses Do Not Bar Plaintiffs' Breach Of Contract
        Claims ................................................................................................................. 38

H.      HSBC Concedes That All Plaintiffs May Assert Direct Claims......................... 39

I.      The Institutional Plaintiffs And RPI May Assert Derivative Claims
        As To All Trusts................................................................................................... 40

1.      There Is Ample Authority Supporting The Derivative
        Nature Of Plaintiffs' Claims ................................................................... 41

2.      The Institutional Plaintiffs Have Properly Stated Derivative
        Claims In The Right Of The Indenture Trustee ...................................... 46

3.      The "Contemporaneous Ownership" Requirement Is
        Satisfied................................................................................................... 48

4.      The Institutional Plaintiffs Are Not Obligated To Plead
        Demand Futility As To The Owner Trustee ............................................ 49

J.      The Complaints Properly Allege Damages......................................................... 50

IV.     CONCLUSION................................................................................................................ 50

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Access Point Med., LLC v. Mandell,*
   963 N.Y.S.2d 44 (1st Dep't 2013) ............................................................24

*Ace Sec. Corp. v. DB Structured Prods., Inc.,*
   2014 WL 1384490 (N.Y. Sup. Ct. Apr. 4, 2014)......................................16

*Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.,*
   76 A.D.2d 68, 430 N.Y.S.2d 179 (4th Dep't 1980)..................................22

*Anwar v. Fairfield Greenwich, Ltd.,*
   728 F. Supp. 2d 372 (S.D.N.Y. 2010)................................................23, 37

*Applestein v. The Province of Buenos Aires,*
   415 F.3d 242 (2d Cir. 2005)......................................................................37

*In re the Application of The Bank of New York Mellon*
   Index No. 651786/2011 (N.Y. Sup. Ct. June 28, 2011).........................46

*In re the Application of The Bank of New York Mellon,*
   Index No. 651786/2011 (N.Y. Sup. Ct. Oct. 11, 2013) .........................45

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937 (2009)................................................11, 14

*Backer v. Levy,*
   82 F.2d 270 (2d Cir. 1936)...................................................................41, 46

*In re Bank of N.Y. Derivative Litig.,*
   320 F.3d 291 (2d Cir. 2003)......................................................................48

*Bank of N.Y. v. Tyco Int'l Grp., S.A.,*
   545 F. Supp. 2d 312 (S.D.N.Y. 2008)......................................................19

*Bankers Ins. Co. v. Countrywide Fin. Corp.,*
   2012 WL 2594341 (M.D. Fla. July 5, 2012) ...........................................43

*Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.,*
   2010 WL 4867533 (M.D. Fla. Oct. 8, 2010) ...........................................44

*Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.,*
   2011 WL 2470226 (M.D. Fla. Mar. 17, 2011) .........................................43

iii

*Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*,
    2011 WL 2470615 (M.D. Fla. June 21, 2011).......................................................39

*In re Bankers Trust Co.*,
    450 F.3d 121 (2d Cir. 2006)..............................................................................19

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*,
    57 F.3d 146 (2d Cir. 1995)................................................................................49

*Barry v. Curtin*,
    993 F. Supp. 2d 347 (E.D.N.Y. 2014) ...............................................................42

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................11, 14

*Birn v. Childs Co.*,
    37 N.Y.S.2d 689 (Sup. Ct. N.Y. Cnty. 1942) .................................................47, 48

*Bluebird Partner, LP v. First Fid. Bank, N.A.*,
    85 F.3d 970 (2d Cir. 1996)..............................................................................4, 34

*Bluebird Partners, L.P. v. First Fid. Bank*,
    896 F. Supp. 152 (S.D.N.Y. 1995)....................................................................27

*Bluebird Partner, LP v. First Fid. Bank, N.A.*,
    97 N.Y.2d 456 (N.Y. App. 2002) .....................................................................49

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
    784 N.Y.S.2d 479 (2004).................................................................................27

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    778 F. Supp. 2d 375 (S.D.N.Y. 2011)........................................................20, 29, 30, 41

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    949 F. Supp. 2d 486 (S.D.N.Y. 2013)...............................................................41

*Bulova Watch Co. v. Celotex Corp.*,
    46 N.Y.2d 606, 389 N.E.2d 130 (1979).............................................................22

*Campbell v. Hudson & Manhattan R.R. Co.*,
    277 A.D. 731 (1st Dep't 1951) .........................................................................47

*Caprer v. Nussbaum*,
    825 N.Y.S.2d 55 (N.Y. App. Div. 2d Dep't 2006) ...............................................43

*Center v. Hampton Affiliates, Inc.*,
    488 N.E.2d 828, 66 N.Y.2d 782 (N.Y. 1985) .....................................................21

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
   738 F. Supp. 2d 450 (S.D.N.Y. 2010)..................................................................47

*Ciccone v. Hersh*,
   320 F. App'x 48 (2d Cir. 2009) ...............................................................23, 24

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
   516 N.E.2d 190, 70 N.Y.2d 382 (1987)..............................................................30

*In re Color Tile Inc.*,
   475 F.3d 508 (3d Cir. 2007)...............................................................................35

*Commerce Bank v. U.S. Bank Nat'l Ass'n*,
   2013 WL 8338105 (W.D. Mo. Nov. 18, 2013)........................................3, 30, 31

*Cortlandt Street Recovery Corp. v. Hellas Tellcomm., S.a.r.l.*,
   2014 WL 4650231 (N.Y. Sup. Ct. Sept. 16, 2014)..............................................36

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992)..................................................................2, 23, 38

*Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Trust*,
   1996 WL 601705 (S.D.N.Y. Oct. 18, 1996) (Scheindlin, J.).......................... passim

*Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.*,
   918 N.Y.S.2d 73 (N.Y. App. Div. 1st Dep't 2011) .............................................36

*DiBlasio v. Novello*,
   344 F.3d 292 (2d Cir. 2003)...............................................................................24

*In re Dolcater*,
   106 F.2d 30 (2d Cir. 1939).................................................................................46

*Druck Corp. v. Macro Fund Ltd.*,
   290 Fed. App'x 441 (2d Cir. 2008).....................................................................42

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011).............................................30, 32, 38, 41

*Ettlinger v. Persian Rug & Carpet Co.*,
   66 Hun. 94 (N.Y. Supp. Gen. Term 1892) *aff'd*, 97 Sickels 189, 36 N.E. 1055
   (1894).................................................................................................................46

*Excimer Assocs. v. LCA Vision, Inc.*,
   292 F.3d 134 (2d Cir. 2002)...............................................................................39

*Fed. Hous. Fin. Agency v. WMC Mortg. LLC*,
   2013 WL 5996530 (S.D.N.Y. June 12, 2013) .....................................................45

*Feldbaum v. McCrory Corp.*,
  1992 WL 119095 (Del. Ch. June 2, 1992)........................................................44, 47

*FHFA v. HSBC North American Holdings, Inc.*,
  2014 WL 3702587 (S.D.N.Y. July 25, 2014) .......................................................15

*Fleisher v. Farmers' Loan & Trust Co.*,
  69 N.Y.S. 437 (1st Dep't 1901) ...........................................................................42

*Fontana v. The Republic of Argentina*,
  415 F.3d 238 (2d Cir. 2005)...........................................................................37, 38

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
  66 N.Y.2d 38 (1985) .............................................................................................36

*Gen. Elec. Co. v. Bucyrus-Erie Co.*,
  563 F. Supp. 970 (S.D.N.Y. 1983)........................................................................42

*Gentile v. Rossette*,
  906 A.2d 91 (Del. 2006) .......................................................................................39

*Golden Pac. Bancorp v. F.D.I.C.*,
  273 F.3d 509 (2d Cir. 2001).............................................................................23, 24

*Gould v. J. Henry Schroder Bank & Trust Co.*,
  78 A.D.2d 870 (2d Dep't 1980) ............................................................................47

*Gulf Ins. Co. v. Transatlantic Reinsurance Co.*,
  886 N.Y.S.2d 133, 2009 N.Y. Slip Op. 06788 (N.Y. App. Div. 1st Dep't
  2009) ....................................................................................................................35

*Hazzard v. Chase Nat'l Bank*,
  287 N.Y.S. 541 (N.Y. Sup. Ct. 1936), *aff'd*, 282 N.Y. 652 (N.Y. 1940) ..............42

*Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*,
  2012 WL 3542196 (S.D.N.Y. Aug. 15, 2012)........................................................45

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) .....................................................................................32

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
  907 N.E.2d 268 (2009).........................................................................................23

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
  759 F. Supp. 2d 363 (S.D.N.Y. 2010)...................................................................36

*Int'l Ry. Co. v Rann*,
  120 N.E. 153 (1918).............................................................................................36

*Knights of Columbus v. The Bank of N.Y.*,
    2013 WL 1822565 (N.Y. Sup. Ct. Apr. 26, 2013)....................................................30, 31, 32

*LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*,
    173 F.3d 454 (2d Cir. 1999)........................................................................................39

*LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*,
    1997 WL 528283 (S.D.N.Y. Aug. 27, 1997).................................................................27

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).....................................................................................................36

*Magten Asset Mgmt. Corp. v. The Bank of N.Y.*,
    841 N.Y.S.2d 219 (N.Y. Sup. Ct. 2007).......................................................................42

*MASTR Asset Backed Sec. Trust 2006–HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC
    Mortg. Corp.*,
    2012 WL 4511065 (D. Minn. Oct. 1, 2012) .................................................................15

*Mastrobuono* v. *Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995).......................................................................................................34

*Meckel v. Cont'l Res. Co.*,
    758 F.2d 811 (2d Cir. 1985).........................................................................................42

*In re Meyer*,
    757 N.Y.S.2d 98 (2d Dep't 2003)................................................................................24

*In re MF Global Holdings Ltd. Inv. Litig.*,
    998 F. Supp. 2d 157 (S.D.N.Y. 2014)..........................................................................32

*Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*,
    2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013)...............................................................19

*Million Air Corp. v. The Republic of Argentina*,
    2005 WL 2656126 (S.D.N.Y. Oct. 17, 2005)...............................................................37

*Nat'l Credit Union Admin. Bd. v. Wachovia Capital Mkts., LLC*,
    2014 WL 1795294 (S.D.N.Y. May 6, 2014) ................................................................31

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
    986 F. Supp. 2d 412 (S.D.N.Y. 2013)..........................................................................49

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*,
    291 F.R.D. 47 (S.D.N.Y. 2013) ............................................................................ passim

*One William St. Capital Mgmt. L.P. v. U.S. Educ. Loan Trust IV, LLC*,
    986 N.Y.S.2d 21 (N.Y. App. Div. 1st Dep't 2014) .....................................................37

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007)............................................................................11

*Peak Partners, L.P. v. Republic Bank*,
   191 Fed. App'x 118 (3d Cir. 2006).................................................................38

*People v. Ben*,
   866 N.Y.S.2d 464 (4th Dep't 2008)..........................................................23, 24

*Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of Am., NA*,
   907 F. Supp. 2d 536 (S.D.N.Y. 2012)..................................................13, 15, 18

*Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of Am., NA*,
   943 F. Supp. 2d 428 (S.D.N.Y. 2013) ..................................................... passim

*Prudence Realization Corp. v. Atwell*,
   35 N.Y.S.2d 1001 (1st Dep't 1942) ................................................................28

*Quadrant Structured Prods. Co. v. Vertin*,
   102 A.3d 155 (Del. Ch. 2014)........................................................................48

*Rabinowitz v. Kaiser-Frazer Corp.*,
   111 N.Y.S.2d 539 (Sup. Ct. Kings Cnty. N.Y. 1952)....................................47

*Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*,
   902 N.Y.S.2d 14 (N.Y. 2010) ........................................................................42

*Rajamin v. Deutsche Bank Nat'l Trust Co.*,
   757 F.3d 79 (2d Cir. 2014).............................................................................40

*Ray v. Marine Midland Grace Trust Co.*,
   359 N.Y.S.2d 28 (N.Y. App. Div. 1974) .......................................................42

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of City of Chicago v. The Bank
   of N.Y. Mellon*,
   914 F. Supp. 2d 422 (S.D.N.Y. 2012)................................................... passim

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of City of Chicago v. The Bank
   of N.Y. Mellon*,
   2014 WL 3858469 (S.D.N.Y. July 30, 2014) .............................................2, 18

*Retirement Board of the Policemen's Annuity & Benefit Fund of the City of
   Chicago v. The Bank of N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014)........................................................... passim

*Riviera Cong. Assocs. v. Yassky*,
   223 N.E.2d 876 (1966)..........................................................................41, 43, 47

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*,
  934 F. Supp. 2d 516 (E.D.N.Y. 2013) *aff'd*, 548 Fed. App'x 741 (2d Cir. 2014).......... passim

*Seaver v. Ransom*,
  224 N.Y. 233 (1918) ...................................................................................................36

*Sirico v. F.G.G. Prods., Inc.*,
  71 A.D.3d 429, 896 N.Y.S.2d 61 (1st Dep't 2010) .................................................22

*Smith v. Cont'l Bank and Trust Company*,
  292 N.Y. 275 (1944) ...................................................................................................39

*Spanos* v. *Skouras Theatres Corp.*,
  364 F.2d 161 (2d Cir. 1966) .......................................................................................19

*Springwell Navigation Corp. v. Sanluis Corporación*,
  81 A.D.3d 557 (N.Y. App. Div. 1st Dep't 2011) .....................................................37

*Springwell Navigation Corp. v. Sanluis Corporación, S.A.*,
  849 N.Y.S.2d 34 (N.Y. App. Civ. 1st Dep't 2007) ..................................................37

*Springwell Navigation Corp.* v. *Sanluis Corporation, S.A.*,
  46 A.D. 3d 377 (1st Dep't 2007) ...............................................................................36

*State of N.Y. Workers' Comp. Bd. v. Madden*,
  38 Misc. 3d 1229(A), 967 N.Y.S.2d 870 (Sup. Ct. 2013), *aff'd in part by* 119
  A.D.3d 1022, 989 N.Y.S.2d 156 (2014) ...................................................................22

*Sterling Fed. Bank, F.S.B. v. Countrywide Fin. Corp.*,
  2012 WL 2368821 (N.D. Ill. June 21, 2012) ...........................................................43

*Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital Inc.*,
  2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) .................................................. passim

*Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital Inc.*,
  2011 WL 1792710 (N.D. Ill. May 11, 2011) ...........................................................43

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) ..................................................................................44, 45

*Transp. Workers Union of Am. Local 100 AFL-CIO v. Schwartz*,
  17 A.D.3d 218, 794 N.Y.S.2d 308 (1st Dep't 2005) ...............................................24

*Velez v. Feinstein*,
  451 N.Y.S.2d 110 (N.Y. App. Div. 1982) .........................................................41, 47

*VNB Realty, Inc. v. U.S. Bank, N.A.*,
  2014 WL 1628441 (D.N.J. Apr. 23, 2014) .......................................................3, 25, 30, 31

*Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.*,
   178 F. Supp. 655 (S.D.N.Y. 1959).................................................................35

*Webster's Red Seal Publs. v. Gilberton World-Wide Publs.*,
   415 N.Y.S.2d 229 (1st Dep't 1979), *aff'd*, 53 N.Y.2d 643 (1981) .........................35

*Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*,
   No. 13 Civ. 5981 SAS (S.D.N.Y.) (Scheindlin, J.)...............................................38

*Westchester Cnty. Correction Officers Benevolent Ass'n, Inc. v. Cnty. of
   Westchester*,
   65 A.D.3d 1226, 885 N.Y.S.2d 728 (2009) .......................................................22

*Wilk v. VIP Health Care Servs., Inc.*,
   2012 WL 560738 (E.D.N.Y. Feb. 21, 2012)......................................................11

*Xcellence, Inc. v. Arkin Kaplan Rice LLP*,
   2011 WL 1002419 (S.D.N.Y. Mar. 15, 2011) ...................................................27

*Yudell v. Gilbert*,
   949 N.Y.S.2d 380 (1st Dep't 2012) ....................................................39, 44, 45

**STATUTES, RULES & REGULATIONS**

Del. C. § 3825 ............................................................................................49

8 Del. C. § 327 ...........................................................................................49

12 Del. C. § 3816(b) ...............................................................................48, 49

15 U.S.C..
   § 77ooo(c)......................................................................................17, 24, 26
   § 77ooo(b)........................................................................................17
   § 77bbb(a) ........................................................................................4
   § 77ooo(a)(1)....................................................................................42
   § 77ooo(a)(2)....................................................................................42
   § 77ooo(b)...............................................................................17, 24, 25
   § 77ppp(b)........................................................................................42
   § 77www(b).......................................................................................26

17 C.F.R.
   § 229.1122(a) ....................................................................................21
   § 229.1122(d)(4)(i) .............................................................................21

Federal Rules of Civil Procedure
   Rule 8 ..............................................................................1, 11, 13, 14
   Rule 12(b)(6)............................................................................1, 24, 27
   Rule 23.1 ..........................................................................................45

N.Y. General Obligation Law
    § 13-105 ...........................................................................................................49
    § 13-107 ...........................................................................................................49

N.Y. Real Property Law
    § 124 ................................................................................................................27
    § 126(1) ...........................................................................................................29
    § 130-k ............................................................................................................28

N.Y. CPLR 213 ...........................................................................................................21

Fourth Report of the Joint Legislative Committee to Investigate Bondholders'
    Committees, Stockholders' Committees, Creditors' Committees, Certificate
    Holders' Committees, Corporations, Trustees and Fiduciaries (the "Streit Act"
    1937) ............................................................................................................27, 28, 29

**SECONDARY AUTHORITIES**

Trust Indenture Act of 1939 ...................................................................................2, 25

12B Fletcher Cyclopedia of the Law of Corporations § 5921 (1984) ..........................39

Black's Law Dictionary (8th Ed.) ..............................................................................28

RESTATEMENT (THIRD) OF TRUSTS § 94(1) (2012) ............................................39

Plaintiffs Blackrock Balanced Capital Portfolio (FI), *et al.* ("Institutional Plaintiffs"), Royal Park Investments SA/NV ("RPI"), and Phoenix Light SF Limited, *et al.* ("Phoenix Light") (collectively "Plaintiffs") respectfully submit this Joint Memorandum of Law in Opposition to Defendant HSBC Bank USA, National Association's ("HSBC") Motions to Dismiss Complaints Pursuant to Rule 12(b)(6).

## I.   PRELIMINARY STATEMENT

These cases center on HSBC's failure to discharge its essential duties as the sole gatekeeper for the residential mortgage-backed securities ("RMBS") trusts and their beneficial Holders.  In this role, HSBC was required at all times to act to protect the interests of the trusts and their beneficial Holders.  At a minimum, HSBC was obligated to: (i) ensure that title to the underlying mortgage loans was properly transferred to the trusts; (ii) enforce the trusts' repurchase rights for loans that HSBC knew did not comply with representations and warranties; and (iii) remedy known servicing violations.

In the aftermath of the financial crisis, armed with myriad reports, investigations and public evidence of significant problems with the RMBS products being underwritten and sold, and having unfettered access to the mortgage loan files which would evidence those problems, HSBC abdicated its duties and failed to protect the trusts at issue in this motion ("Trusts") and others.  As a result, the Trusts and their beneficial Holders suffered billions of dollars in losses and have lost valuable claims HSBC was obligated to pursue.

Plaintiffs' detailed allegations satisfy Fed. R. Civ. P. 8 and put HSBC on notice of the claims asserted against it and the basis for the relief sought.  Nothing more is required.  HSBC, however, has now moved to dismiss Plaintiffs' Complaints, characterizing Plaintiffs' claims as "novel" and claiming that Plaintiffs have not pled sufficient facts setting forth HSBC's breach of its alleged contractual, statutory and common law duties.  As outlined below, numerous courts in

this District have addressed and rejected challenges similar to those raised by HSBC at the pleading stage, permitting the plaintiff investors' claims to proceed.

● **Breach of Contract/TIA claims**:   HSBC claims that Plaintiffs' breach of contract and Trust Indenture Act of 1939 ("TIA") claims do not allege HSBC's discovery of and actual knowledge of specific loans in breach of seller representations and warranties or servicer covenants.   Judges Pauley, Forrest and Koeltl rejected this argument in actions against RMBS trustees.   *Ret. Bd. of the Policemen's Annuity & Ben. Fund of City of Chicago v. The Bank of N.Y. Mellon*, 914 F. Supp. 2d 422 (S.D.N.Y. 2012) ("*Policemen's/BNY I*"), 2014 WL 3858469 (S.D.N.Y. July 30, 2014) ("*Policemen's/BNY III*"); *Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of Am., NA*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012) ("*Policemen's/BofA I*"), 943 F. Supp. 2d 428 (S.D.N.Y. 2013) ("*Policemen's/BofA II*"); *Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47 (S.D.N.Y. 2013) ("*Oklahoma Police I*").[1]   HSBC also erroneously claims the "No Action" clause bars Plaintiffs' contract claims.   Again, every court to consider this argument has rejected it, concluding that to require Holders to demand a trustee sue itself and to indemnify that trustee for its own wrongful conduct would be "absurd."   *See, e.g.*, *Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992).   Similarly, HSBC's assertion that the Court should strike Plaintiffs' demand for investment losses as consequential damages has been rejected.   *See Oklahoma Police I*, 291 F.R.D. at 71 (rejecting trustee's motion to dismiss investors' demand for investment losses as consequential damages).

---

[1] While *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014) ("*Policemen's/BNY Appeal*") abrogated these cases to the extent they held that "non-indenture" trusts were subject to the TIA or on class standing issues not relevant here, *Policemen's/BNY Appeal* left undisturbed the cases' holdings that Complaints like those here properly pled a trustee's discovery or knowledge.

● **<u>Tort claims</u>**:  HSBC claims that Plaintiffs' tort claims are duplicative of Plaintiffs' contract claims and do not state a cognizable conflict of interest.  Courts have rejected similar contentions.  *AG Capital Funding Partners, L.P. v. State Bank & Trust Co.*, 11 N.Y.3d 146, 158-159; *VNB Realty, Inc. v. U.S. Bank, N.A.*, 2014 WL 1628441, at *3 (D.N.J. Apr. 23, 2014).

● **<u>Derivative Standing</u>**:  HSBC further erroneously contends these claims cannot be brought derivatively.  As this Court and others have routinely held, a New York trust beneficiary may sue the indenture trustee derivatively where (i) the claim is predicated on a duty owed equally to all trust beneficiaries and (ii) seeks redress for an injury affecting the trust beneficiaries as a whole.  *See, e.g.*, *Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Trust*, 1996 WL 601705 (S.D.N.Y. Oct. 18, 1996), at *2-4 (Scheindlin, J.).  HSBC does not dispute that such claims also may be brought directly (the claims of Phoenix Light are only asserted directly).

● **<u>Purported Justifications For Failing To Act</u>**:  HSBC separately attempts to justify its breaches because it was not paid enough.  This fails because (a) HSBC negotiated its compensation and agreed to perform the critical duties of a trustee and (b) in truth, HSBC pocketed tens of millions of dollars in revenue from its trustee business (in addition to immeasurable profits from its business relationships).

HSBC next asserts that Plaintiffs and other beneficial Holders, who invested and lost billions of dollars, lack standing because they are not "Certificateholders" or "Noteholders" (collectively, "Holders") as defined in the governing agreements.  HSBC's interpretation contradicts the parties' intent to make Plaintiffs third party beneficiaries, HSBC's admissions that Plaintiffs are Holders, and Plaintiffs' standing to sue as the principals of the defined Holder. HSBC's post hoc interpretation should be rejected.

HSBC then contradictorily claims that the same investors that HSBC claims have no rights under the governing agreements – Plaintiffs – are required to act to enforce the Trusts' rights.  But these investors have no obligations or duties under the agreements and are entitled to rely upon the trustee to act to protect their interests. HSBC's attempt to transfer its responsibilities to investors contradicts the express language of the agreements and Congress' intent in enacting the TIA to protect investors "because previous abuses by indenture trustees had adversely affected 'the national public interest.'"  *Bluebird Partners, L.P. v. First Fid. Bank, NA. N.J.*, 85 F.3d 970, 974 (2d Cir. 1996) (quoting 15 U.S.C. § 77bbb(a)).  At the time the TIA was enacted, Congress and the SEC cited collective action requirements and trustees' unwillingness "to perform even the negligible duties which the indenture place[d] upon them." *See* Declaration of Timothy A. DeLange In Support Of Plaintiffs' Joint Memorandum Of Law In Opposition To Defendants' Motions To Dismiss ("DeLange Decl.") Ex. 1.  Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees dated June 18, 1936 ("SEC Report") at 31-32.  The SEC concluded that inaction threatened security holders with "[i]rreparable loss . . . clearly traceable to the trustee's inaction." *Id*. at 45.

In sum, every analogous post-financial crisis era investor complaint against an RMBS trustee pending in this District has been sustained. HSBC's motion provides no authority or compelling reason why the Court should not do the same here.

## II.   FACTUAL BACKGROUND

### A.   HSBC's Critical Role As Trustee For The Trusts

HSBC serves as trustee for the thirty-nine RMBS Trusts created between 2004 and 2008 at issue in this motion.  The Trusts' assets consist entirely of residential mortgage loans.

IP Compl. ¶2; RP Compl. ¶37; PL Compl. ¶¶4, 28.[2]  Investment bank entities called "Sponsors" and "Depositors" acquired the loans generated by originators and pooled and conveyed them into the Trusts (collectively, "Sellers").  IP Compl. ¶2; RP Compl. ¶38; PL Compl. ¶¶29-30.  The Master Servicers and their subservicers (collectively, "Servicers") service and administer the loans.  IP Compl. ¶2; RP Compl. ¶43; PL Compl. ¶31.  The principal and interest payments ("P&I") are "passed through" to Plaintiffs and other beneficial Holders of the Trusts' RMBS.[3] IP Compl. ¶2; RP Compl. ¶43; PL Compl. ¶¶33-34.

The Sellers provide contractual representations and warranties to the Trusts attesting to the completeness of the mortgage loan files and the credit quality and characteristics of the loans and borrowers.  IP Compl. ¶¶241-47; RP Compl. ¶¶48-51; PL Compl. ¶¶35, 41, 45.  The Sellers contract to cure, substitute, or repurchase mortgages that materially breach these representations and warranties.  *Id*.  Likewise, the Servicers covenant to service the loans in accordance with customary and usual standards.  IP Compl. ¶¶266-68; RP Compl. ¶¶53-54; PL Compl. ¶13.

As trustee, HSBC is supposedly an independent entity with the critical role of protecting the Trusts' assets.  IP Compl. ¶4; RP Compl. ¶¶8, 12, 44; PL Compl. ¶¶4-5, 10.  Plaintiffs and other investors have no access to the underlying loan files and other documents necessary to confirm the quality of the underlying loans and must, therefore, rely upon the trustee to protect their interests.  IP Compl. ¶¶251-52; RP Compl. ¶7; PL Compl. ¶¶5, 10.

In addition to a percentage of the outstanding unpaid principal balance in the trust, HSBC, like other trustees, generates millions of dollars of additional annual revenue through

---

[2] All references herein to IP Compl. ¶_ are to the Institutional Plaintiffs' Complaint; RP Compl. ¶_ are to the Royal Park Investments SA/NV's Complaint; and PL Compl. ¶_ are to Phoenix Light SF Ltd.'s Complaint; (collectively, the "Complaints)."

[3] The RMBS are registered in "street name" to Cede & Co., as nominee for the Depository Trust Company, a central securities depositary and clearing agency.  Cede & Co. has no beneficial interest in the RMBS or Trusts.

"float" income,[4] transactional fees, advances, and ancillary trust services.

**B.      HSBC's Contractual Duties**

Each Trust is governed by contracts (the "Governing Agreements") setting forth the structure of the transaction and the duties of the trustee.   Twenty-eight Trusts are Delaware statutory trusts that issue notes, are governed by an Indenture and transfer and servicing agreements ("SSAs"), and incorporate by reference the duties set forth in the TIA.   Eleven Trusts are New York common law trusts that issue certificates and are governed by pooling and servicing agreements ("PSAs").   Both the PSAs and the Indentures provide that they are construed in accordance with the laws of the State of New York.   IP Compl. ¶212; PL Compl. ¶27.   The Governing Agreements impose five identical and fundamental duties on HSBC as trustee.

**1.      HSBC's Duty To Protect The Trusts**

HSBC, as trustee, must protect the trust corpus for the benefit of the Trusts and their Holders.   In particular, the Depositor transfers, and the trustee accepts on behalf of the Trusts, all right, title and interest in and to the mortgage loans for the benefit of and on behalf of the Holders.   IP Compl. ¶¶249, 251, 277; RP Compl. ¶¶4, 173; PL Compl. ¶¶36, 38.

**2.      HSBC's Duty To Ensure The Trusts
Take Title To The Mortgage Loans**

HSBC must ensure that the Trusts take title to the mortgage loans and must certify receipt of complete mortgage loan files from the Depositor.   IP Compl. ¶¶253-55; PL Compl. ¶¶36, 39-43.   These certifications require HSBC to verify, among other things, that the underlying loans were properly conveyed to the Trust and that the Trust has perfected enforceable title to the mortgage loans.   IP Compl. ¶¶253-55; PL Compl. ¶¶43-45.   If HSBC discovers a material defect

---

[4] "Float" income refers to interest HSBC earns on trust funds before remitting them to the trust.

(*e.g.*, a missing or irregular document), HSBC must promptly identify the loan in its certifications, and require the Seller to cure or repurchase the loan.  IP Compl. ¶¶253-55; PL Compl. ¶45.

### 3.      HSBC's Duty To Enforce The Sellers' Repurchase Obligations

HSBC must give notice to the Seller and other parties upon discovery of any breach of the representations and warranties which materially and adversely affects the value of the interests of the Holders or the Trust.  IP Compl. ¶¶256-57, 279; RP Compl. ¶¶50-51; PL Compl. ¶¶48, 155-58.  If the Seller refuses or fails to cure the breach, HSBC must enforce the Seller's duty to repurchase the breaching loan.  *Id.*

### 4.      HSBC's Duty To Notify Defaulting Servicers And Demand A Cure

HSBC must promptly notify a responsible Servicer upon its discovery of the Servicer's failure to observe or perform in any material respect any covenant or agreement, and demand that such servicing failure be timely remedied.  IP Compl. ¶258; RP Compl. ¶56; PL Comp. ¶64.

### 5.      HSBC's Heightened Duties Following An Event Of Default

The Governing Agreements impose heightened obligations on HSBC following an "Event of Default."  IP Compl. ¶¶260, 280; RP Compl. ¶57; PL Compl. ¶¶49, 52-53.  Although "Event of Default" is defined differently among the PSA and Indenture Trusts, courts have largely found this variance to be insignificant.[5]

For the PSA Trusts, only the conduct of the Servicer gives rise to an Event of Default.  IP Compl. ¶258; RP Comp. ¶¶12, 52; PL Compl. ¶¶61-63.  An Event of Default under the PSAs occurs, among other instances, when the Servicer fails to observe or perform in any material

---

[5] *See Policemen's/BNY I*, 914 F. Supp. 2d at 432 (plaintiffs' well-pled allegations of, among other things, servicer misconduct constituted both an Event of Default under the PSA and Indenture); *Oklahoma Police I*, 291 F.R.D. at 66 (same).

respect any material covenants and agreements in the PSA and fails to cure this breach within a specified time period. IP Compl. ¶258; RP Compl. ¶53; PL Compl. ¶¶61-63, 405. If an Event of Default occurs, HSBC must exercise remedies available to it to protect investors and use the same degree of care and skill as a prudent person would under the circumstances in the conduct of such person's own affairs in doing so. IP Compl. ¶260; RP Compl. ¶¶52-54; PL Compl. ¶49.

For the Indenture Trusts, only the conduct of the issuer, the Trust, may constitute an Event of Default. IP Compl. ¶280; PL Compl. ¶417. An Event of Default occurs under the Indenture, when, among other things, a default occurs in the observance or performance of any covenant or agreement of the Trust made in the Indenture, and such default is not cured within a specified period of time after notice is given to the Trust by HSBC. IP Compl. ¶280; PL Compl. ¶419. Once HSBC has knowledge of an Event of Default, HSBC must exercise the same degree of care and skill as a prudent person would in the conduct of his or her own affairs. IP Compl. ¶281; PL Compl. ¶¶49, 52.

Although worded differently, the practical effect of an Event of Default under a PSA Trust or an Indenture Trust is the same. Under the Indenture, the Trust as issuer is obligated to "enforce any rights to the mortgage loans" and is required to "preserve and defend title to the Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties." IP Compl. ¶278; PL Compl. ¶418. Consequently, known and unremedied Seller and Servicer defaults constitute both a direct breach of the SSA and a violation of the issuer's duties under the Indenture. IP Compl. ¶¶278, 283-84; PL Compl. ¶¶420-21.

C.   **HSBC's Knowledge Of Defaults**

Between 2009 and 2011, HSBC discovered that the Trusts' contained large numbers of loans that materially breached the Sellers' representations and warranties. IP Compl. ¶¶381-420;

RP Compl. ¶¶65-71; PL Compl. ¶¶155, 159, 168.  HSBC and its responsible officers witnessed a significant rise in reported default and delinquencies, which are indicative of non-compliant loan origination practices.  IP Compl. ¶¶382-83; RP Compl. ¶70; PL Compl. ¶176.  For example, as of January 2009, 34 out of the 39 Trusts reported delinquency rates of over 25%, and 23 Trusts reporting delinquency rates of over 40%.  The average delinquency rate was nearly 40%.  IP Compl. Ex. 3.

At the same time, the Trusts incurred extraordinary losses indicative of severe deficiencies in the underlying collateral.  IP Compl. ¶¶382-87; RP Compl. ¶68; PL Compl. ¶¶163, 169.  For example, the FMIC 2006-2 Trust reported cumulative losses of over $161 million in January 2009, nearly 20% of the Trust's total original par value.  By January 2009, the total combined cumulative losses for the Trusts (with reported figures) exceeded $2.6 billion.  Two years later, the total reported cumulative losses nearly doubled to over $4.9 billion.  IP Compl. Ex. 3.

The credit ratings also plummeted.  IP Compl. ¶¶386-87; PL Compl. ¶176.  By December 31, 2009, at least 70% of the senior tranches in the Trusts had been downgraded.  Across all Trusts, 80% of all RMBS certificates had been downgraded and over 50% of the senior certificates had been downgraded to junk bond status.  IP Compl. ¶387.

Moreover, the Trusts were filled with loans originated by some of the most notorious financial crisis era lenders, including IndyMac Bank, American Home Mortgage Corp., GreenPoint Mortgage Funding, Delta Funding Corporation, Fieldstone Mortgage Corporation, People's Choice Home Loan, Inc., and Ownit Mortgage Solutions, Inc.  RP Compl. ¶65; PL Compl. ¶¶209-27, 360-67.  Additionally, the Trusts were sponsored by banks whose securitization abuses were well documented, including Deutsche Bank [IP Compl. ¶¶358-63; RP

Compl. ¶¶90-91; PL Compl. ¶¶295-302], Wells Fargo [IP Compl. ¶¶351-57; RP Compl. ¶¶74, 77], Merrill Lynch [IP Compl. ¶¶375-80; PL Compl. ¶¶346-51], Fremont [IP Compl. ¶¶303-309; RP Compl. ¶65], and Nomura [IP Compl. ¶¶369-74; PL Compl. ¶¶352-59]. Highly publicized reports, lawsuits and government investigation concerning these same Sellers supports the plausible inference of HSBC's knowledge of breaches of representations and warranties. In fact, several of the Trusts have been the subject of RMBS investor lawsuits alleging pervasive underwriting and securitization abuses. DeLange Decl. Ex. 2. RP Compl. ¶¶95-96; PL Compl. ¶¶319, 355-56, 366.

Similarly, between 2009 and 2011, HSBC was aware that the Trusts' Servicers had materially failed to observe or perform their obligations under the Governing Agreements based on, among other things, the numerous highly publicized public and private investigations and enforcement actions against the Trust Servicers (and against HSBC in its capacity as an RMBS Trustee Servicer), including those pursued by the Federal Reserve, the OCC, the FDIC, and the Office of Thrift Supervision. IP Compl. ¶¶421-72; RP Compl. ¶¶71-87, 89, 93-94, 108-09, 122, 127-132; PL Compl. ¶¶426-64. These servicing violations include (i) failure to give prompt written notice to all parties of material breaches of representations or warranties; (ii) failure to timely and accurately apply loan payments and failure to maintain accurate account statements; (iii) charging excessive or improper fees; (iv) improper foreclosure practices; (iv) modifying loans to settle predatory lending or wrongful foreclosure claims; and (v) improper and unreasonable servicing advances. IP Compl. ¶¶421-72.

     D.    **HSBC's Failure To Timely Enforce The Trusts' Rights Has
              Caused The Trusts And Holders To Suffer Substantial Losses**

HSBC has taken virtually no action to enforce the Sellers' obligations to repurchase defective loans in the Trusts and the Servicers' obligations to cure the servicing defaults and

reimburse the Trusts for damages caused.  IP Compl. ¶¶473-82; RP Compl. ¶134; PL Compl.
¶¶67-68, 401-03.  HSBC's inaction has negatively impacted the performance of the Trusts.  In
total, the Trusts have reported $6.9 billion dollars in recognized losses as of November 1, 2014
and staggering delinquency rates, indicating that substantial additional losses are likely.  IP
Compl. Ex. 2.

## III.   ARGUMENT

Pursuant to Fed. R. Civ. P. 8, a complaint need only "contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556
U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007)).   Moreover, "[a]sking for plausible grounds does not impose a probability
requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable
expectation that discovery will reveal evidence" to prove the claim.  *Twombly*, 550 U.S. at 545.
Under this standard, "[o]nly a statement of facts so conclusory that it fails to give notice of the
basic events and circumstances on which a plaintiff relies should be rejected as legally
insufficient under [Rule] 12(b)(6)."  *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007).

### A.   The Complaints State A Claim For Breach Of Contract

"A breach of contract claim under New York law requires: (i) the existence of a contract;
(ii) performance by the party seeking recovery; (iii) nonperformance by the other party; and (iv)
damages attributable to the breach."  *Oklahoma Police I*, 291 F.R.D. at 67 (collecting New York
law).  Here, the Complaints adequately allege these elements.[6]

---

[6] Contrary to HSBC's contentions (Mot. 14), "[a] plaintiff need not attach a copy of the contract
to the complaint or quote the contractual provisions verbatim."  *Wilk v. VIP Health Care Servs.,
Inc.*, 2012 WL 560738, at *3 (E.D.N.Y. Feb. 21, 2012).  The IP Complaint sets forth the terms of
the Governing Agreements upon which liability is predicated and HSBC is clearly on notice of
the contract claims.  Nonetheless, the RPI Complaint does attach a Governing Agreement for one
of the Trusts at issue which is representative of all the Governing Agreements.

1.      **HSBC Materially Breached Its Duty To Enforce**
        **The Sellers' Representations And Warranties**

The Governing Agreements require HSBC to give prompt notice to the Seller of any breaches of representations and warranties, and that enforcement of the Seller's obligation to repurchase or substitute such defective mortgage loans is the Trustee's only remedy.   HSBC erroneously asserts that the Complaints do not allege a breach of this duty.  Mot. 13-18.

a)      **Plaintiffs Adequately Allege That Loans Within**
        **The Trusts' Breached Seller Representations And Warranties**

Repeating arguments other courts in this District have rejected, HSBC contends the Complaints do not sufficiently allege the existence of breaching loans within the Trusts.  Mot. 14-15.  The Complaints, however, detail the systemic and widespread breaches.  *See also* DeLange Decl. Ex. 2.   According to HSBC, the Complaints must also identify which representations and warranties were breached, the mortgage loans in which the breaches occurred and the trusts to which those loans applied.   This argument has been uniformly rejected.[7]  In *Policemen's/BofA II*, 943 F. Supp. 2d at 442, Judge Forrest concluded:

> At the pleading stage, plaintiffs cannot be required to identify breaches of representations and warranties with respect to individual loans in the specific trusts – such information, at this stage, is uniquely in the possession of defendants.   Rather, plaintiffs satisfy their burden where their allegations "raise a reasonable expectation that discovery will reveal evidence" proving their claim.

In *Oklahoma Police I,* Judge Koeltl agreed, recognizing that investors "cannot be expected to detail the defects in specific loans before it has had discovery."  291 F.R.D. at 70.  Instead, Judge Koeltl found allegations of significant losses in the trusts, mortgage files riddled with document deficiencies, widespread abuses in such files uncovered by federal and state

---

[7] While this level of specificity is not required to state a claim, the RPI Complaint does allege specific examples of loans within the Trusts where the Sellers breached their representations and warranties and further identifies specific representations and warranties that were breached.  RP Compl. ¶¶95-104.

investigators, numerous document deficiencies found in the public records of the foreclosures on two of the covered trusts, and the public reports and testimony about breaches of representations and warranties by Sellers in connection with RMBS trusts provided sufficient factual basis to plausibly allege breaches of the Seller's representations and warranties. *Id*. at 69-70.

HSBC ignores these well-reasoned decisions. Instead, HSBC wrongly asserts that Plaintiffs must plead specific breaches of representations and warranties on a "loan-by-loan and trust-by-trust," citing the Second Circuit's recent decision in *Policemen's/BNY Appeal*, 775 F.3d 154. Mot. 14. But, the Second Circuit's decision has nothing to do with allegations at the pleading stage nor Rule 8. Rather, the Court was analyzing class standing and commented in dicta regarding what must be ***proven*** at trial.[8]

### b) Plaintiffs Adequately Allege HSBC's Actual Knowledge Of Representations And Warranties Breaches

HSBC also contends that Plaintiffs failed to adequately allege that HSBC had actual knowledge of the breaches of representations and warranties. Mot. 15-18. Dismissing Plaintiffs' detailed allegations as "generalized, public information," HSBC asserts that Plaintiffs' allegations fail to show that HSBC discovered any loan-specific breaches required to trigger its notice and enforcement obligations. Again, courts have uniformly rejected this argument, finding this level of factual detail is not required at the pleading stage. *See, e.g.*, *Policemen's Annuity II*, 943 F. Supp. 2d at 442 ("The gravamen of defendants' argument is that plaintiffs have to be able to allege unequivocally that defendants had actual notice in order to state a claim.

---

[8] The "loan-by-loan and trust-by-trust" passage from *Policemen's Annuity* that HSBC quotes concerns proof of ***damages***, ***not liability***. To establish liability, Plaintiffs must only prove that HSBC was chargeable with actual knowledge of "***some number***" of defective loans, thereby triggering HSBC's duty to act. *Policemen's Annuity/BofA I*, 907 F. Supp. 2d at 553 (emphasis added).

That, however, mistakes the standard of proof with the plausibility required at the pleading stage."); *Oklahoma Police I*, 291 F.R.D. at 70 (same).

As Judge Forrest stated: "[o]n this motion to dismiss, the question for the Court is not whether *in fact* the Trustees had actual notice − that is a factual determination left for trial. Instead, the question under the Rule 8 pleading standard − as elaborated by *Twombly* and *Iqbal* − is whether plaintiffs have ***pled plausible facts supporting allegations of actual notice***." *Policemen's/BofA II*, 943 F. Supp. 2d at 442-43 (emphasis added).  Judge Forrest concluded that in light of the plaintiff investors' allegations of the Trusts' "deteriorating credit quality," the fact that the Trustees regularly reported on increasing credit losses, public reports of the Sellers' generally deficient underwriting practices a plausible inference could be drawn that the trustees had actual knowledge that loans in the trusts breached Seller representations and warranties.  *Id.* at 442.  "Indeed, based on the allegations of the SAC, it would be ***implausible to assume that somehow all of the mortgage loans underlying the MBS miraculously avoided being originated with practices generally utilized throughout WaMu and its contracted affiliates at that time.***"  *Id.* (emphasis added).

Here, as in *Policemen's/BofA II*, the Complaints allege that HSBC discovered and knew of the falsity of the Sellers' breach of representations and warranties by, among other things, (1) the high number of borrower defaults; (2) the enormous losses to the Trusts; (3) the collapse of the certificates' and notes' credit ratings; (4) reports and litigation concerning common originators' systemic abandonment of underwriting standards, as well as common Sponsors' pervasive disregard of prudent securitization standards; (5) litigation contending the specific loans in some of the specific Trusts had been misrepresented; and (6) HSBC's involvement in putback efforts involving the same Sellers.  These allegations raise a plausible inference of

HSBC's actual knowledge of breaches of representations and warranties.[9]  *Id.* at 442-43.

HSBC claims that, notwithstanding this wealth of information it was entitled to ignore it

and take no further action. Judge Forrest rejected this assertion in *Policemen's/BofA I*, 907 F.

Supp. 2d at 553-54:

> As plaintiff asserts, to accept that the Trustee was unaware of those reports and
> investigations would require the Court to "find that the responsible officers of
> Defendants had been living under a rock."  If the Trustee was indeed "living
> under a rock," it had no right to do so given its role and responsibilities.  Second,
> the Trustee had complete access to the Mortgage Files.  That access, coupled with
> the widespread, public reporting of deficiencies in WaMu-securitized loans, no
> doubt would have raised facts "suggestive of a breach" and/or that there may have
> been missing or deficient documents in the Mortgage Files.  ***The Trustee***
> ***therefore was required to "pick up the scent and nose to the source" − i.e., to***
> ***investigate any suspicions about the loans and Mortgage Files in the Trusts***.

(Emphasis added), citing *MASTR Asset Backed Sec. Trust 2006–HE3 ex rel. U.S. Bank Nat'l*

*Ass'n v. WMC Mortg. Corp.*, 2012 WL 4511065, at *7 (D. Minn. Oct. 1, 2012).

### c)     HSBC Has A Contractual Obligation To Enforce Seller Repurchase Obligations For All Of The Trusts

HSBC claims that with respect to one of the Trusts (WFHET 2006-2), it is not

contractually required to enforce breaches of representations and warranties unless it has

received a specified notice from the Custodian or Securities Administrator.  HSBC misreads PSA

§ 2.03(f), which states:

> ***The Trustee shall be responsible for enforcing the Depositor's obligations***
> ***under this § 2.03***. If the Trustee receives written notice from the Custodian or the
> Securities Administrator that the defect is not cured by the Depositor within 60
> days after the Trustee's notice, the Trustee shall enforce the Depositor's

---

[9] *FHFA v. HSBC North American Holdings, Inc.*, the case that HSBC asserts is "directly on
point," addressed whether an RMBS investor without access to loan files or other confidential
information could be on notice of representation and warranty violations.  *See* 2014 WL
3702587, at *5 (S.D.N.Y. July 25, 2014).  HSBC was an insider and was ***required*** to perform an
investigation, which investors were not entitled to perform.  Moreover, *FHFA* was decided at
summary judgment, not on the pleadings.

obligation to repurchase such Mortgage Loan or substitute for such Mortgage Loan in accordance with the provisions of this § 2.03.

(Emphasis added). The first sentence of § 2.03(f) gives HSBC the unwaivable duty to enforce the Sellers' repurchase obligations. The Complaints allege that HSBC discovered the breaching loans on its own. Thus, HSBC's duty arose irrespective of any notice received from the Custodian or the Securities Administrator.[10] In any event, HSBC breached its duty to give notice to all parties of the Sellers' breaches, and therefore cannot argue that it is excused from enforcing the Trust's contractual rights because of the absence of notice from the Custodian or the Securities Administrator. *See Oklahoma Police I*, 291 F.R.D. at 70 (a "trustee cannot rely on its own failure to give notice to escape its own liability").

Finally, HSBC concedes its duty to enforce the Sellers' repurchase obligations for all but 12 of the 39 Trusts, and even as to those 12 trusts, HSBC is wrong.[11] Contrary to HSBC's contention, the FHLT 2006-C Trust does provide for HSBC's initial obligation to enforce breaches of the representations and warranties. DeLange Decl. 3. (FHLT 2006-C PSA § 2.05 provides that "[t]he Trustee agrees to hold the Trust Fund and *exercise the [representation and warranty rights] for the benefit of all present and future Holders of the Certificates.*" In addition, § 2.04 states *"the Trustee shall require the Originator to repurchase the affected Mortgage Loan within 30 days of the earlier of discovery or receipt of notice in the same manner as it would a Mortgage Loan for a breach of representation or warranty made pursuant to Section 2.03."*)

---

[10] HSBC has articulated a similar interpretation of the Sponsors' repurchase obligations under analogous contract provisions in the putback context. *See* Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss, *Ace Sec. Corp. v. DB Structured Prods., Inc.*, 2014 WL 1384490 (N.Y. Sup. Ct. Apr. 4, 2014), Doc. No. 18 at p. 14.

[11] These twelve Trusts include 9 Indenture Trusts (FMIC 2004-3; FMIC 2004-4; FMIC 2004-5; FMIC 2005-1; FMIC 2005-2; FMIC 2005-3; FMIC 2006-1; FMIC 2006-2; FMIC 2006-3), and 3 PSA Trusts (FHLT 2006-C; STALT 2006-1F; and NAA 2005-AR6).

-16-

Although for 11 of the Trusts some other party has the ***initial*** obligation to enforce Seller repurchase obligations, HSBC ignores that the Complaints plead Events of Defaults, which trigger HSBC's heightened duties to act "prudently."   15 U.S.C. § 77ooo(c); IP Compl. ¶¶473-82; RP Compl. ¶¶151-54; PL Compl. ¶¶403, 417-21.   Plaintiffs allege that a prudent trustee under these circumstances would have taken action to enforce the Sellers' repurchase obligations, but HSBC did not.   HSBC cannot escape liability for its own actions by attempting to blame others.   *Policemen's/BofA II*, 943 F. Supp. 2d at 442 (sustaining investor's claim predicated on trustee's failure to enforce Seller repurchase obligations, despite the fact that the master servicer had the initial obligation to enforce Seller repurchase obligations, because investor properly alleged Events of Default).

**2.      Plaintiffs Adequately Allege That HSBC
Breached Its Post-Default Obligations**

Upon an Event of Default, the Governing Agreements require HSBC to (i) notify Holders of its occurrence and (ii) act as a prudent person in the exercise of its rights and powers under the Agreements. 15 U.S.C.A. § 77ooo(b); IP Compl. ¶¶260, 281; RP Compl. ¶¶57-58; PL Compl. ¶49.   Again repeating arguments courts in this District have rejected, HSBC asserts that the Complaints do not adequately allege a breach of HSBC's post-default duties.   Mot. 18-25. HSBC is wrong.

**a)      Plaintiffs Allege Plausible And Sufficient Facts
To Infer HSBC's Knowledge Of Events Of Default**

Plaintiffs' allegations of HSBC's and its Responsible Officers' actual knowledge of Events of Defaults go much further than allegations that other courts have held to be sufficient to survive a motion to dismiss.   In particular, the Complaints allege HSBC's discovery of common Sellers' systemic and pervasive violation of underwriting and securitization practices through HSBC's involvement as an RMBS servicer (IP Compl. ¶¶388-89; RP Comp. ¶132; PL Compl.

-17-

¶¶160-61), and its participation in RMBS litigation and settlement proceedings, where loan level reviews revealed systemic breaches of representations and warranties, including loans within Trusts at issue here.  IP Compl. ¶¶390-97, 404-13, 415-20; RP Comp. ¶¶27, 133; PL Compl. ¶¶174, 410-16.  Plaintiffs also allege HSBC's responsible officers' receipt of written notice of pervasive and systemic common Seller breaches from monoline insurers and Holders, including those received by HSBC Senior Vice Presidents Fernando Acebedo and Susie Moy.  IP Compl. ¶¶398-403, 411-13; PL Compl. ¶¶170-75.  Moreover, with respect to its knowledge of uncured Servicer defaults, the Complaints allege that HSBC was the target of government investigations, prosecutions and settlements alongside many of the Servicers to the Trusts for the same alleged improper servicing practices.  IP Compl. ¶¶463-67; PL Compl. ¶¶160, 429; RP Compl. ¶¶115, 188.  Further, Plaintiffs allege HSBC's Responsible Officers' receipt of written notice from Holders to other RMBS trusts for which it acts as trustee complaining of the same systemic servicing violations perpetrated by the very same Servicers to the Trusts.  IP Compl. ¶¶468-71. These facts amply allege HSBC's actual knowledge of Events of Defaults.

Despite these detailed allegations, HSBC asserts that Plaintiffs are attempting "to sidestep the plain requirements of the Agreements."  Mot. 22.  As noted above, to credit this argument would require the Court to find that HSBC and its responsible officers had been "living under a rock," which they could not do given HSBC's role and responsibilities.  *Policemen's/BofA I*, 907 F. Supp. 2d at 553-54; *accord Policemen's/BNY III*, 2014 WL 3858469, at \*6; *Oklahoma Police I*, 291 F.R.D. at 69.

### b) HSBC Cannot Rely On Its Own Failure To Provide Notice To Servicers To Escape Its Own Liability

Next, HSBC contends that Plaintiffs' claims for breach of post-Event of Default duties fail because a specified party (including HSBC) did not give notice to the Servicer.  The fallacy

of HSBC's argument is that HSBC was required to give this notice (RP Compl. ¶56) yet failed to do so. Thus, a "trustee cannot rely on its own failure to give notice to escape its own liability." *Oklahoma Police I*, 291 F.R.D. at 70 (citing and quoting *In re Bankers Trust Co.,* 450 F.3d 121, 129 (2d Cir. 2006); *Bank of N.Y. v. Tyco Int'l Grp., S.A.,* 545 F. Supp. 2d 312, 324 n.81 (S.D.N.Y. 2008)).   HSBC cites no "case in which the failure of the alleged wrongdoer to give notice was excused when the alleged wrongdoer's failures prevented at least one way of satisfying [a] precondition" to a technical Event of Default.  *Oklahoma Police I*, 291 F.R.D. at 71.[12]

In *Bankers Trust*, the Second Circuit rejected the indenture trustee's attempt to rely on its own failure to prevent the occurrence of an Event of Default.  The Second Circuit concluded that the indenture trustee's "failure to fulfill its affirmative duty to inspect the certificates 'unjustly prevent[ed] the performance' of its duty to give notice of the nonconformities.  BT [the indenture trustee] *is 'not . . . permitted to take advantage of [its] own wrong*.'"  *Bankers Trust*, 450 F.3d at 129 (quoting *Spanos* v. *Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir. 1966)) (emphasis added).[13]

The error in HSBC's position is evident from the provisions of the Governing Agreements.  The Governing Agreements provide that no provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct.  IP Compl. ¶261; RP Compl. ¶164; PL Compl. ¶67.  HSBC should not be allowed to "rely on its own failure to give notice [to the Servicers] to escape

---

[12] All of the Trusts in the Complaints which require HSBC to give notice to the offending Servicers which HSBC never provided, and therefore HSBC cannot escape liability.

[13] HSBC's cited authority, *Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*, 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013) and *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital Inc.*, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010), directly conflicts with the Second Circuit's decision in *Bankers Trust* and the decisions in *Oklahoma Police I* and *BNP Paribas*.

its own liability." *Oklahoma Police I*, 291 F.R.D. at 70; *accord BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 398 (S.D.N.Y. 2011).

**c)**   **Plaintiffs Adequately Allege
Events Of Default Under The Indentures**

Finally, HSBC contends that the Institutional Plaintiffs and Phoenix Light fail to allege the occurrence of an Indenture Event of Default because they do not specifically allege a breach of the Issuer's duties. Mot. 19. Once again, courts in this District have considered and rejected this argument. *See Policemen's/BNY I*, 914 F. Supp. 2d at 432 ("After all, if Countrywide and Bank of America failed to cure or repurchase defective mortgages, the issuer similarly failed to 'enforce any rights with respect to any of the Collateral,' as the Indenture required it to do."); *Oklahoma Police I*, 291 F.R.D. at 66 (issuer Event of Default properly alleged in light of alleged failure by the seller and servicer to cure defects in the mortgage loans and/or to substitute conforming loans). Here, as in those cases, the Issuer (*i.e.*, the Trust) is obligated to "enforce any rights to the mortgage loans" and must "preserve or defend title to the Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties." IP Compl. ¶278; PL Compl. ¶418. Consequently, known and unremedied Seller and Servicer defaults constitute both a direct breach of the SSA and a violation of the issuer's duties under the Indenture.[14]

**B.**   **Phoenix Light's Claims Related To HSBC's Breach Of Its Duties Relating
To Document Delivery And Servicing Related Certifications Are Well Pled**

Phoenix Light alleges that Events of Default also occurred when HSBC (or the Custodian on HSBC's behalf) delivered final exception reports identifying loans with missing documents,

---

[14] HSBC also claims (Mot. § I.B.3) that for 27 Trusts, SSA Servicer Events of Default do not trigger prudent person obligations. As explained above, however, a known and uncured Servicer Event of Default also causes an Indenture Event of Default, thus triggering HSBC's prudent person obligations in all 39 Trusts.

-20-

and that HSBC continues to breach its heightened duties by failing to review defaulted loans to determine whether there is a repurchase remedy.  PL Compl. ¶¶408, 468.  In response, HSBC argues that claims based on document delivery failures should be dismissed because the PSAs provide that a "Custodian," working "on behalf" of HSBC may prepare the final exception report.  Mot. 30.  However, HSBC indisputably received the reports prepared by its agent and is charged with knowledge of the contents of such reports.  PL Compl. ¶¶41-46; *Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828, 829, 66 N.Y.2d 782 (1985).

HSBC similarly claims that it delegated its duties to provide accurate certifications under Regulation AB, *see* Mot. 29, which requires entities engaged in "servicing functions" to attest to compliance with applicable servicing standards.  *See* 17 C.F.R. § 229.1122(a).  "A party participating in the servicing function means any entity (e.g., . . . ***trustees***) that" performs specified servicing activities, including ensuring the mortgage files are "maintained as required by the transaction agreements."  *Id.* § 229.1122(d)(4)(i) and Instr. No. 2 (emphasis added). The Governing Agreements provide the trustee is the party responsible for holding the mortgage files. *See, e.g*., DBALT 2006-AB4 PSA, § 2.02 ("[t]he ***Trustee*** acknowledges receipt . . . of the Loan Documents and declares that it holds (or the applicable Custodian on its behalf holds) and will hold such documents.").  Thus, Phoenix Light adequately alleges that HSBC breached its certification requirements.  PL Compl. ¶¶56-57, 422-25.

Next, HSBC erroneously argues that Phoenix Light's claims based on document delivery failures and defaults relating to Regulation AB certifications are untimely.  HSBC is wrong.

As for Phoenix Light's contract claims, a claim for breach of contract is timely if brought within six years of the date of the breach.  *See* CPLR 213.  "[W]here a contract provides for continuing performance over a period of time, each breach may begin the running of the statute

[of limitations] anew such that accrual occurs continuously and plaintiffs may assert claims for damages occurring up to six years prior to filing of the suit." *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 80, 430 N.Y.S.2d 179, 186 (4th Dep't 1980)).[15] Phoenix Light alleges that HSBC had a variety of duties relating to the document delivery failures and servicing certifications that required continuing performance and resulted in multiple breaches throughout HSBC's tenure as trustee.  For example:

- Phoenix Light alleges that HSBC had an obligation "to ensure[] the Sponsors or Originators either cured the documentation problems or repurchased or substituted another mortgage loan for the improperly documented mortgage loan within the deadlines set forth in the PSAs."  PL Compl. ¶70.

- Phoenix Light alleges that once Events of Default occurred relating to the failure to deliver complete mortgage files, HSBC had a continuing duty to act prudently to protect the Certificateholders' interests.  *Id.* ¶¶49, 405-08, 466.

- Phoenix Light alleges that HSBC has been aware of instances when the Master Servicer or Servicers fabricated documentation required for foreclosure proceedings and provided false testimony in foreclosure proceedings.  *See* PL Compl. ¶¶155, 159-60.  HSBC was obligated to provide notice of these servicing related breaches, which continue to this date, but has continued to fail to do so.  *Id.* ¶¶62, 155, 407.

- Phoenix Light alleges that the HSBC was required to provide annual certifications and to provide notice that the monthly remittance reports failed to disclose representation and warranty breaches and that mortgage files for many loans were incomplete.  *Id.* ¶¶422-25.

HSBC does not address the allegations of continuing performance obligations and related breaches.  Accordingly, its motion to dismiss these claims as untimely should be denied.  *See, e.g., State of N.Y. Workers' Comp. Bd. v. Madden*, 967 N.Y.S.2d 870 (N.Y. Sup. Ct. 2013), *aff'd in part by* 119 A.D.3d 1022, 989 N.Y.S.2d 156 (2014).  Moreover, any breach of contract claims that accrued more than six years prior to the filing of the lawsuit are tolled for the period of time

---

[15] *Accord Sirico v. F.G.G. Prods., Inc.*, 896 N.Y.S.2d 61, 66 (1st Dep't 2010); *Westchester Cnty. Correction Officers Benevolent Ass'n, Inc. v. Cnty. of Westchester*, 65 A.D.3d 1226, 1228, 885 N.Y.S.2d 728, 732 (2009); *see also Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 611, 389 N.E.2d 130, 132 (1979)).

that it was reasonable to rely on HSBC as trustee to exercise all rights under the PSAs to protect Certificateholders.  *See Cruden*, 957 F.2d at 968 (no action clauses, even if inapplicable to claims against a trustee, "operate to toll the statute of limitations upon an alleged breach having occurred").

As for Phoenix Light's tort claims, New York courts apply a three-year statute of limitations to tort claims, including breach of fiduciary duty, based on allegations of negligence and a six-year period to claims based on fraud.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 272 (2009).  "A tort claim accrues as soon as 'the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.'"  *Id.* at 273 (citation omitted).  Even when a claim against a trustee has accrued, "the limitations period for claims arising out of a fiduciary relationship does not commence 'until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated.'"  *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518-19 (2d Cir. 2001).[16]  "The reason for such a tolling rule is that the beneficiary should be entitled to rely upon a fiduciary's skill without the necessity of interrupting a continuous relationship of trust and confidence by instituting suit."  *Id.* at 519.

As discussed above, Phoenix Light alleges that Events of Default occurred when final exception reports identified numerous incomplete loan files and that these Events of Default triggered HSBC's duty to review defaulted loans and make appropriate repurchase claims throughout the life of the trusts.  PL Compl. ¶¶405-08, 466.  HSBC's obligation was continuing as the Events of Default were never cured.  As a result, tort claims relating to HSBC's failure to

---

[16] *Accord Ciccone v. Hersh*, 320 F. App'x 48, 49 (2d Cir. 2009); *People v. Ben*, 866 N.Y.S.2d 464, 465-66 (4th Dep't 2008); *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 445 (S.D.N.Y. 2010).

act prudently and review defaulted loans for potential repurchase continue to accrue to this date as loans continue to default and HSBC continues to sit by idly.

Regardless of the accrual date or applicable limitations period, Phoenix Light's tort claims are timely because they are tolled – HSBC has not yet openly repudiated its duties as trustee. *See ,e.g.*, *Golden Pac. Bancorp*, 273 F.3d at 518-19. Where a party serves as trustee "it is appropriate to toll the limitations period until the beneficiary has reason to know that the fiduciary relationship has unequivocally ended." *Access Point Med., LLC v. Mandell*, 963 N.Y.S.2d 44, 47 (1st Dep't 2013). "[P]roof of a repudiation by the fiduciary [must be] clear and made known to the beneficiaries." *In re Meyer*, 757 N.Y.S.2d 98, 99 (2d Dep't 2003).[17] No such repudiation has occurred to date.

### C.    Plaintiffs' Adequately Allege A Claim Under The TIA For The Indenture Trusts

Despite taking no action to protect the Trusts and their investors, HSBC claims it did not violate its duties under the TIA. HSBC's contentions are flawed and turn on "disputed issue[s] of fact that [are] inappropriate to consider in the context of a Rule 12(b)(6) motion." *DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003).[18]

---

[17] While some courts have held that the open repudiation doctrine applies only to equitable claims, the Second Circuit applied the doctrine to toll monetary claims in *Golden Pacific Bancorp*, 273 F.3d at 518-19 and later in *Ciccone*, 320 F. App'x at 49, and other New York courts have expressly rejected the contention that monetary claims are not subject to the open repudiation doctrine. *See People v. Ben*, 866 N.Y.S.2d at 466; *Transp. Workers Union of Am. Local 100 AFL-CIO v. Schwartz*, 17 A.D.3d 218, 794 N.Y.S.2d 308 (1st Dep't 2005).

[18] HSBC's challenge to Plaintiffs' TIA Section 315(a) claims is misplaced. Mot. 42, citing *Policemen's/BNY I*, 914 F. Supp. 2d at 429. Plaintiffs' claims are predicated on HSBC's failure to provide notice of defaults (15 U.S.C. § 77ooo(b)) and for failure to act prudently following an Event of Default (15 U.S.C. § 77ooo(c)) in violation of Section 315(b) and Section 315(c).

-24-

      1.      **Plaintiffs Properly Allege HSBC's**
                            **<u>Violation Of Section 315(b) Of The TIA</u>**

Section 315(b) of the TIA provides that indenture trustees must, within 90 days, provide "notice of all defaults known to the trustee." Under Section 315(b), a default is the "omission or failure of a legal or contractual duty." *Policeman's/BofA II*, 943 F. Supp. 2d at 441. Here, Plaintiffs allege HSBC's knowledge of the parties' (including its own) failure to provide notice of Seller breaches of representations and warranties and the failure to enforce the Sellers' repurchase obligations. The Complaints also detail the Servicers' material breaches of the Indentures, including breach of their duty to service the Trusts' loans in accordance with customary and lawful practices, as well as the failure to correct these Servicer breaches. IP Compl. ¶¶429-39; RP Compl. ¶¶53-54, 105-39; PL Compl. ¶¶344-85. The Complaints detail myriad defaults in the Trusts and HSBC's violations of Section 315(b) when it repeatedly failed to provide Holders the required notice.[19]

Misreading Section 315(b), HSBC claims the Complaints do not adequately allege an Indenture Event of Default. Section 315(b)'s notice duty is, however, triggered by a "default," not an "Event of Default." *See Policemen's/BofA II*, 943 F. Supp. 2d at 441 ("[Section 77ooo(b)] speaks of "defaults," without limiting that term to the defaults defined in the PSA."); *VNB Realty, Inc.* 2014 WL 1628441, at *4 (D.N.J. 2014). Accordingly, Plaintiffs' allegations sufficiently allege HSBC's violations of Section 315(b). *See Policemen's/BofA II*, 943 F. Supp. at 442; *VNB Realty, Inc.*, 2014 WL 1628441, at *4.

---

[19] Section 315(b) uses the term "known to the trustee." Because Plaintiffs plausibly allege HSBC's actual knowledge of defaults, the Court need not determine whether the term "known" means actual knowledge or constructive knowledge.

2.     **Plaintiffs Properly Allege HSBC's**
       **Violation Of Section 315(c) Of The TIA**

Section 315(c) requires that "[t]he indenture trustee shall exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs."   15 U.S.C. § 77ooo(c).  For 4 Trusts, the Indentures do not define the term "default."[20]  Thus, for these Trusts, the term "default" should be given its ordinary meaning, similar to Section 315(b), and both an Issuer Event of Default and Seller and Servicer breaches will trigger HSBC's prudent person obligations.

For the remaining Indenture Agreements, "Default" means "[a]ny occurrence which is or with notice or the lapse of time or both would become an Event of Default."  IP Compl. ¶280; PL Compl. 475.  All of the Indentures incorporate the SSA.  Under the SSAs for 24 of the Trusts, an "Event of Default" occurs where the Servicer materially breaches the SSA.  Again, either an Issuer Event of Default, or Servicer breaches trigger HSBC's prudent person obligations.

As detailed above in Section III.A.2.c., the Complaints include detailed allegations of both Issuer Events of Default and Servicer breaches for all of the Indenture Trusts.

3.     **Plaintiffs Adequately Allege Damages Under The TIA**

The TIA expressly permits "actual damages."  15 U.S.C. § 77www(b).  Here, Plaintiffs allege damages attributable to HSBC's breach of the prudent person standard. IP Compl. ¶¶529-31; PL Compl. ¶¶483-85.  Nothing further is required.  Nevertheless, HSBC erroneously contends that Plaintiffs must allege failure to receive a specific payment of interest or principal

---

[20] These 4 Trusts are FBR 2005-1, FBR 2005-2, FBR 2005-4, and FNLC 2005-3.

under the notes, or that they sold their notes for a loss.  Mot. 43.[21]  This misstates the law and the proper measure of damages under the TIA.[22]  Lastly, damages are a matter of fact, not appropriate for a 12(b)(6) motion, and even a "general pleading" of damages is "sufficient to withstand a motion to dismiss." *Xcellence, Inc. v. Arkin Kaplan Rice LLP*, 2011 WL 1002419, at *5 (S.D.N.Y. Mar. 15, 2011).[23]

### D.    The Streit Act Applies To Trusts Not "Qualified" Under The TIA

Article 4A of the New York Real Property Law, or the "Streit Act," was enacted to regulate "all mortgage investments" where: (i) all or part of the underlying properties are located in the state; (ii) the trustee transacts business with respect to the investments in New York; (iii) where the trustee is authorized to do business in the state.  N.Y. Real Prop. Law § 124.  The Streit Act was passed after a series of legislative inquiries "exposed evils and abuses which followed in the wake of the depression with respect to . . . improper and wasteful administration of properties by those pretending to act for bondholders."  *See* DeLange Decl. Ex. 4 at 7.  It was

---

[21] *Bluebird Partners, L.P. v. First Fid. Bank*, 896 F. Supp. 152, 157 (S.D.N.Y. 1995) is inapposite. There, the court found plaintiffs could not allege damages under TIA because they purchased "after all the alleged breaches transpired" and "after the adverse consequences to certificate holders became painfully apparent." *Id*. at 157.  In contrast, here Plaintiffs purchased and held the notes during the trustee's misconduct and before such misconduct became apparent. IP Compl. ¶15; RP Compl. ¶31; PL Compl. ¶3.

[22] *Policemen's/BNY I* does not, as HSBC claims, require Plaintiffs to allege that "they sold their notes and suffered a loss" to state a claim under the TIA.  No such requirement exists. *See, e.g.*, *LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*, 1997 WL 528283, at *38 (S.D.N.Y. Aug. 27, 1997) (recognizing that holders can state a claim for damages under the TIA); *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 784 N.Y.S.2d 479, 482 (2004).  Moreover, in *Policemen's/BNY I*, a case involving a trust fully wrapped by a monoline insurer, the court held that plaintiffs adequately alleged "damages beyond those covered by the guarantee" since "they claim to have sold notes issued by the [trust] at a significant loss." *Policemen's/BNYI*, 914 F. Supp. 2d at 427.

[23] HSBC challenges Plaintiffs' TIA claim for the PSA Trusts. On December 23, 2014, the Second Circuit issued its opinion in *Policemen's/BNY Appeal*, holding, among other things, that the TIA does not apply to RMBS certificates.  775 F.3d 154.  Plaintiffs in that action, however, have filed an *en banc* appeal with the Second Circuit.  Accordingly, Plaintiffs submit that the Court refrain from ruling on HSBC's challenge until the *Policemen's/BNY* appeal is resolved.

enacted to "afford genuine and not feigned protection" to Certificateholders and "impose[] active duties upon a trustee under trust indentures." *Id.*

HSBC argues that the Streit Act is inapplicable because it only applies to "direct" investments in mortgages rather than "collateral trusts." Mot. 43-44. This argument is foreclosed by the Second Circuit's recent decision in the *Policemen's* case holding that RMBS are "certificate[s] of interest or participation in two or more securities having substantially different rights and privileges,' namely, the numerous mortgage loans held by each trust." *See Policemen's/BNY Appeal*, 775 F.3d at 15. The Second Circuit reasoned, "payments on the certificates are contingent on the cash flows generated by the underlying mortgage loans." *Id.*

As a result, under the Second Circuit's analysis, RMBS are "direct" investments in the underlying mortgages and not "collateral trusts," which, by definition, are trusts that hold security for a debt – not a certificate of interest entitling the holder to payments tied to the underlying mortgages. *See* Black's Law Dictionary (8th Ed.) ("collateral trust bond: A bond representing a debt secured by the deposit of another security with a trustee."). Further, RMBS are plainly covered by the definition of mortgage investments set forth in Section 125(1) as they are "bonds, notes *or other evidence of indebtedness* . . . secured by a mortgage or mortgages on real property . . . ." (emphasis added).[24]

Finally, Section 130-k of the New York Real Property Law exempts from the Streit Act from any trust indenture that is "qualified" under the TIA. Whether or not particular indentures

---

[24] HSBC urges this Court to ignore this plain language based on a single case, *Prudence Realization Corp. v. Atwell*, 35 N.Y.S.2d 1001 (1st Dep't 1942), that has no application here. *Prudence* involved a trust holding *neither* real estate *nor* mortgages. Rather, the trust held only "collateral security consist[ing] of various kinds of personal property" such as cash, government obligations, bonds and other securities. *Id.* at 1003.

were "qualified" under the TIA is a factual issue that cannot be resolved on a motion to dismiss. Thus, HSBC's motion to dismiss the Streit Act claims should be denied for all Trusts.[25]

**E.    Plaintiffs Adequately Allege Tort,
Breach Of Trust And Fiduciary Duty Claims**

**1.    Plaintiffs State A Claim For Breach Of Fiduciary Duty**

After the occurrence of Events of Default, HSBC's common law duties expand to include a fiduciary duty to the Trusts and Holders. HSBC breached this duty by failing to timely take appropriate action against responsible parties, including the Sellers and Servicers, and by failing to notify Holders of the defaults and its intention not to enforce the rights of the Trusts and Holders.  IP Compl. ¶¶541-47; RP Compl. ¶¶15-16; PL Compl. ¶¶155-56.  In response, HSBC again asserts that no heightened duty arises in this case because Plaintiffs have not sufficiently alleged an Event of Default.  Mot. 31.  This argument is meritless.  As addressed in §III.A.2. above, Plaintiffs properly allege Events of Default.  *BNP Paribas*, 778 F. Supp. 2d at 401 (sustaining claim against indenture trustee for breach of fiduciary duty predicated on failing to provide noteholder's with written notice of an Event of Default).

**2.    Plaintiffs' Tort And Breach Of Trust/Fiduciary Duty Claims
Are Predicated On Independent, Extracontractual Duties**

Next, HSBC claims Plaintiffs' tort and breach of trust/fiduciary duty claims are duplicative of Plaintiffs' contract claims.  Mot. 32.  This misconstrues the law and basis for Plaintiffs' non-contract claims.  Plaintiffs' tort and breach of trust/fiduciary duty claims are predicated on HSBC's breach of its two unwaivable, "***extra-contractual***" duties to Holders: (i) the duty to avoid conflicts of interest; and (ii) the duty to "perform all basic, non-discretionary,

---

[25] HSBC concedes that if applicable, Section 126(1) of the Real Property Law provides a remedy for breaches of an indenture trustee's post-Event of Default duties, but argues that no Events of Default have occurred.  Mot. 44.  As addressed above in Section III(A), the Complaints allege numerous Events of Default.

ministerial tasks with due care." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc.*, 837 F. Supp. 2d 162, 191–92 (S.D.N.Y. 2011).  Although these duties may be connected with and dependent upon the indenture, an indenture trustee's breach of these duties gives rise to independent tort claims.  *See, e.g.*, *Commerce Bank*, 2013 WL 8338105, at *5 (sustaining investors' tort claim against RMBS trustee for breach of duty of loyalty); *VNB Realty, Inc.*, 2014 WL 1628441, at *6 (sustaining negligence claim based on RMBS trustee's alleged conflict of interest); *Knights of Columbus v. The Bank of N.Y.*, 2013 WL 1822565 (N.Y. Sup. Ct. Apr. 26, 2013) (sustaining claim for RMBS trustee's failure to administer the Trusts with due care by neglecting to notify Holders of trustee breaches).  Moreover, if the breach occurs subsequent to an Event of Default, such conduct gives rise to claims for breach of fiduciary duty.  *BNP Paribas*, 778 F. Supp. at 401.[26]

### a)   Plaintiffs Adequately Allege That HSBC Breached Its Duty Of Loyalty

Plaintiffs allege that HSBC failed and unreasonably refused to discharge its critical pre- and post-default duties because such action would conflict with its own interests.  IP Compl. ¶¶489-98; RP Compl. ¶¶141-47; PL Compl. ¶¶11, 497.  Specifically, Plaintiffs detail HSBC's unreasonable refusal to take action against Sellers and Servicers because it would have exposed HSBC's own misconduct in its role as Seller and Servicer for other RMBS trusts in which these same entities served as either trustee or servicer, including Wells Fargo.  IP Compl. ¶¶491-502; RP Compl. ¶¶141-47; PL Compl. ¶¶11, 497.  In similar cases, courts have found this conduct

---

[26] HSBC's cases are readily distinguishable.  In *Ellington*, the court dismissed the breach of fiduciary duty claim because it had not "adequately alleged the existence and breach of a fiduciary duty" not because it was duplicative of the breach of contract claim.  837 F. Supp. 2d at 193.  HSBC ignores the complete reasoning in *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987), which states that the legal duty independent of the contract needed to establish a negligence claim "may be connected with and dependent upon the contract."

alone sufficient to state a viable conflict of interest claim. *Commerce Bank,* 2013 WL 8338105, at *5 (sustaining conflict of interest claim where trustee failed to take action against master servicer because trustee "was independently engaging in the same improper actions."); *VNB Realty*, 2014 WL 1628441, at *6 (same).

Plaintiffs' Complaints allege more. Plaintiffs detail that HSBC's conflicts were exacerbated by its ongoing business relationships with the Sellers, Servicers and related companies; that the Servicers paid HSBC's trustee fees; and that HSBC was economically disincentivized to declare an Event of Default. HSBC mistakenly attempts to isolate these allegations out of context to contend that such conduct alone does not state a conflict of interest claim. Mot. 37-38. Courts do not, however, review the conduct in isolation, but rather look to the "totality" of the circumstances. *Nat'l Credit Union Admin. Bd. v. Wachovia Capital Mkts., LLC*, 2014 WL 1795294, at *2 (S.D.N.Y. May 6, 2014). In their totality, Plaintiffs allegations establish HSBC's conflict of interest.

### b) Plaintiffs Adequately Allege HSBC Breached Its Ministerial Duties

Plaintiffs also allege that HSBC breached its duty to perform its ministerial functions with due care. IP Compl. ¶¶503-04; RP Compl. ¶12; PL Compl. ¶13. In particular, HSBC failed to fulfill various common law duties, including notifying Holders that other parties to the Governing Agreements had failed to perform their duties with respect to the mortgage files and the administration of the Trusts (IP Compl. ¶506; RP Compl. ¶56; PL Compl. ¶67); ensuring that the Trust had proper title to the mortgage loans (IP Compl. ¶254; RP Compl. ¶¶53-54; PL Compl. ¶¶9, 70-71); and notifying Holders that it did not intend to enforce the rights of the Trusts as against responsible parties. IP Compl. ¶257; RP Compl. ¶56; PL Compl. ¶¶155-56. In *Knights of Columbus*, Justice Kapnick sustained nearly identical allegations, reasoning that "an

indenture trustee owes a duty to perform its ministerial functions with due care, and ***if this duty is breached the trustee will be subjected to tort liability***. ***This obligation is in addition to those obligations specified in the PSAs for which the Knights seek to recover damages for breach of contract***.”  2013 WL 1822565, at *8 (emphasis added) (internal citation omitted).

        **3.**       **The Economic Loss Doctrine Does<br>Not Bar Plaintiffs’ Non-Contract Claims**

HSBC contends the economic loss doctrine bars Plaintiffs’ tort claims because Plaintiffs plead only economic loss, not “property damage or physical injury.” Mot. 35.  HSBC is wrong. Plaintiffs plead more than economic loss, including “[r]equiring HSBC to take corrective actions, including taking all necessary actions to reform and improve its internal policies and procedures to comply with its Trustee obligations under the PSAs and applicable laws, and to protect the Trusts and the Certificateholders from a repeat of the damaging events described herein . . .”  IP Compl. “Relief Requested.”

Moreover, the economic loss doctrine does not apply if a plaintiff can show that the legal duty underlying the tort claim is separate and apart from the contract claim.  *See*, *e.g.*, *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000) (“the rule allows such recovery in . . . cases involving liability for the violation of a professional duty”);   *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 185 (S.D.N.Y. 2014) (same).  As set forth in Section III.E.2., *supra*, Plaintiffs’ tort claims are founded upon HSBC’s “extra-contractual” duties separate from the obligations in the Governing Agreements.  *See Ellington,* 837 F. Supp. 2d at 191.  Courts have held that “[t]hese two pre-default obligations are not construed as ‘*fiduciary* duties,’ but as obligations whose breach may subject the trustee to ‘tort liability.’”  *Id.* at 192.

F.      **Plaintiffs Have Standing To Bring Contract Claims As To All Trusts**

Plaintiffs invested (and lost) tens of millions of dollars in certificates or notes in each of the Trusts at issue.  Nevertheless, HSBC contends that Plaintiffs lack contractual standing to sue for 25 of the Trusts at issue.  Specifically, HSBC asserts that Plaintiffs do not fit within the definition of the parties who may enforce the terms of the Governing Agreements, including defined "Holders".  Mot. 27.[27]

Although not articulated, HSBC suggests that the only entity with standing to bring contract claims is Cede & Co. – the Depository Trust Company's ("DTC") nominee which nominally "holds" the certificates or notes for administrative purposes and to ensure payment of the principal and interest amounts to Plaintiffs and all other beneficial Holders.  Cede & Co. has no financial or beneficial interest in the certificates, has suffered no injury, and likely lacks Article III standing to bring any claims.  At bottom, HSBC claims no one has standing to bring the contract claims against it.  Such a result is untenable.[28]

1.      **Plaintiffs Are "Holders" As That Term Is Used Throughout The Governing Agreements**

"Holder" was clearly intended to include the beneficial Holders of the RMBS (*i.e.*, "Owners").  For example, each of the Governing Agreements provides that HSBC as trustee holds the trust assets (*i.e.*, the Mortgage Loans and the rights attendant thereto) for the benefit of the "Holders."   IP Compl. ¶¶247, 234; RP Compl. ¶47; PL Compl. ¶36.   Likewise, the

---

[27] HSBC does not challenge Plaintiffs' standing to assert claims with respect to the following 15 Trusts that do not contain "Negating Clauses": MLCC 2005-2, MLMBS 2007-2 PCHLT 2005-1, PCHLT 2005-2, PCHLT 2005-3, DBALT 2006-AB4, DBALT 2006-AR5, DMSI 2006- PR1, FHLT 2006-C, NAA 2005-AR6, OWNIT 2005-2, OWNIT 2005-3, OWNIT 2004-4, SGMS 2006-FRE1, and STALT 2006-1F.  RPI therefore notes that for 2 of the 3 Trusts it is suing about – DBALT 2006-AR5 and FHLT 2006-C – this argument is inapplicable.

[28] HSBC's standing argument has no impact on the Institutional Plaintiffs' and RPI Plaintiffs' standing to sue derivatively because, as discussed in § III.I below, the Trustee and Trusts have standing to sue.

Governing Agreements refer to adverse events and breaches of representations and warranties that would "materially and adversely affect . . . the *[]holders*." IP Compl. ¶257; RP Compl. ¶51; PL Compl. Ex. C.

Ignoring the entire agreement, HSBC mistakenly suggests that the only "Holder" is Cede & Co. But because Cede & Co. has no financial interest in the Notes or Certificates, no adverse events or breaches of representations and warranties would *adversely* affect Cede & Co. The only reasonable conclusion is that "Holders" includes beneficial Holders such as Plaintiffs, *i.e.*, the Owners. To read the Governing Agreements otherwise would effectively nullify key provisions of these agreements. *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) ("cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other").

The fallacy of HSBC's contention is evident in its own motion. While HSBC asserts that Plaintiffs are not "Holders," it also contends that Plaintiffs, as "Certificateholders," have an affirmative obligation under the Governing Agreements to take action. Mot. 10 ("The Certificateholders or Noteholders (collectively and individually, 'Holders') can direct the indenture trustee to initiate proceedings . . .)." HSBC's contradictory interpretation of the Governing Agreements should be rejected.[29]

---

[29] The Indentures expressly incorporate the TIA, including the obligations imposed on indenture trustees by Section 315(b)-(c), which (i) cannot be modified by contractual terms; (ii) refers to "holders", not registered holders; and (iii) are meant to protect investors like Plaintiffs. *Bluebird Partner, LP v. First Fid. Bank, N.A.*, 85 F.3d 970, 974 (2d Cir. 1996). Accordingly, regardless of the Indenture's definition of "Holder," Plaintiffs as beneficial Holders are entitled to sue to vindicate a breach of the Indenture.

Moreover, HSBC has admitted Plaintiffs' status as "Holders" in court proceedings involving other RMBS trusts.[30]  For example, on August 1, 2014 and October 2, 2014, HSBC and other RMBS trustees petitioned for approval of a $4.5 billion settlement of claims relating to 330 RMBS trusts sponsored by JPMorgan Chase & Co. or certain affiliates ("JPMorgan").  *In the Matter of the Application of U.S. Bank Ass'n, et al.*, Index No. 652382/2014 (N.Y. Sup. Ct.). Throughout that proceeding, HSBC repeatedly referred to the Institutional Plaintiffs and other investors as "Holders."  U.S. Bank Petition (Aug. 4, 2014) ¶¶12, 17; RMBS Trust Settlement Agreement (Aug. 3, 2014) Section 1.14; Memo of Law (Trustees' Brief in Support of the Settlement) (pg. 3); First Amended Petition (Oct. 10, 2014) ¶¶12, 17, 18, 54; RMBS Trust Settlement Agreement (Oct. 2, 2014) Section 1.14.  HSBC has repeatedly referred to other RMBS investors as "Holders" in court filings in at least 21 other actions.[31]

## 2.  Plaintiffs Have Standing As Cede & Co.'s Principals

HSBC does not dispute that Cede & Co. has the right to maintain the present suit under the Governing Agreements as an intended third party beneficiary.  Cede & Co. is a subagent ultimately acting on behalf of the principal, the RMBS investors.  *In re Color Tile Inc.*, 475 F.3d 508, 511 (3d Cir. 2007) (identifying Cede as the sub-agent for the DTC participant, who in turn operates as an agent for investors (the principal)).  Here, Plaintiffs are the undisputed beneficial

---

[30]"'[T]he parties' course of performance under the contract is considered to be the 'most persuasive evidence of the agreed intention of the parties.'" *Gulf Ins. Co. v. Transatlantic Reinsurance Co.,* 886 N.Y.S.2d 133, 143-44, 2009 N.Y. Slip Op. 06788 (1st Dep't 2009) (quoting *Webster's Red Seal Publs. v. Gilberton World-Wide Publs.,* 415 N.Y.S.2d 229 (1st Dep't 1979), *aff'd,* 53 N.Y.2d 643 (1981); *Warner-Lambert Pharm. Co. v. John J. Reynolds, Inc.,* 178 F. Supp. 655, 667 (S.D.N.Y. 1959) ("It is well settled that where there is doubt or ambiguity as to the meaning of a contract the conduct of the parties in rendering or receiving performance under it may be resorted to by the courts to aid in its interpretation.  The courts will follow the interpretation placed upon the contract by the parties themselves as shown by their acts and conduct.").

[31] DeLange Decl. Ex. 5.

owners and, therefore, have standing to bring this suit as Cede & Co.'s principals.  *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 375 (S.D.N.Y. 2010) ("As principal, the Zohar Funds have standing to sue on the License Agreement, because a principal can sue on a contract entered into by his agent on his behalf.").

### 3.   Plaintiffs Are Third-Party Beneficiaries Of Last Resort

Under New York law, a third party may enforce a contract when "no one other than the third party can recover if the promisor breaches the contract."  *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985); *Seaver v. Ransom*, 224 N.Y. 233 (1918); *Int'l Ry. Co. v. Rann*, 120 N.E. 153 (1918).  Here, if HSBC's interpretation of these Governing Agreements is accepted (which it should not be), no one other than Cede & Co. could recover from HSBC's breach.  Cede & Co. lacks Article III standing because it cannot allege it suffered any "injury in fact."  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (in order to have Article III standing to sue, a plaintiff ***must suffer an "injury in fact"*** that must be "concrete and particularized" as well as "actual or imminent").[32]

The negating clause does not alter this conclusion.  For example, in *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.*, 918 N.Y.S.2d 73, 75 (1st Dep't 2011), plaintiff formed an acquisition company to purchase a corporation from defendant.  When plaintiff subsequently sued for breach of the agreement, defendant argued plaintiff lacked standing as an excluded third party beneficiary under the negating clause of the agreement.  The court rejected

---

[32] HSBC's reliance on *Cortlandt Street Recovery Corp. v. Hellas Tellcomm., S.a.r.l.*, 2014 WL 4650231, at *4 (N.Y. Sup. Ct. Sept. 16, 2014) and *Springwell Navigation Corp. v. Sanluis Corporation, S.A.*, 46 A.D. 3d 377 (1st Dep't 2007) is misplaced.  These decisions do not analyze or discuss the contract language or the parties' contractual intent.  Likewise, these courts did not determine whether investors had standing as the principal of the nominal "holder" or as a third-party beneficiary of last resort.

this argument finding that allowing the negating clause to override plaintiff's rights would render the contract meaningless and leave plaintiff without a remedy.[33]

### 4.   Any Lack Of Standing Can Be Cured

Finally, if Plaintiffs lack standing (they do not), it can be cured.  The Second Circuit has twice found that a beneficial owner who may lack standing to sue on a bond may receive authorization or ratification from the registered Holder, and that such authorization – which is routinely granted – may be granted subsequent to the filing of the lawsuit.  *See Applestein v. The Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005) (holding that beneficial bondholder who had obtained authorization from the registered Holder had standing to sue despite the fact that authorization was granted subsequent to the filing of a lawsuit); *Fontana v. The Republic of Argentina*, 415 F.3d 238 (2d Cir. 2005) (same); *see also Million Air Corp. v. The Republic of Argentina*, 2005 WL 2656126, at *3 (S.D.N.Y. Oct. 17, 2005) (same); *One William St. Capital Mgmt. L.P. v. U.S. Educ. Loan Trust IV, LLC*, 986 N.Y.S.2d 21, 22 (N.Y. App. Div. 1st Dep't 2014) (same).[34]

Here, Sealink Funding Ltd. ("Sealink"), one of the Institutional Plaintiffs, has negotiated a form of consent with Cede & Co. to initiate the present litigation as Cede & Co.'s authorized proxy.  DeLange Decl. Ex. 6.  Cede & Co. concedes that it is "only a nominal party," and has no

---

[33] *See also Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d at 430 (inurement clause that specified only certain parties were intended third party beneficiaries and did not include plaintiff; court found the contract clearly made plaintiff the intended beneficiary and thus the inurement clause would not be literally enforced).

[34] RPI is initiating the authorization process for the one Trust it is suing over to which this argument applies – the WFHET 2006-2 Trust.  In addition, HSBC's own authority, *Springwell Navigation Corp. v. Sanluis Corporación, S.A.*, 849 N.Y.S.2d 34 (N.Y. App. Civ. 1st Dep't 2007), supports this contention. In a subsequent opinion, the Appellate Division found that by obtaining "the registered holder's authorization to sue in its stead, plaintiff's status has changed, and its prior lack of capacity has been cured." *Springwell Navigation Corp. v. Sanluis Corporación,* 81 A.D.3d 557, 558 (1st Dep't 2011).

interest in this matter other than to take those steps which are necessary to ensure that Sealink is not denied its rights as the beneficial owner[s] of the Notes." *Id*. Cede & Co., however, requires payment of $400 in administrative fees per letter, per Note. Thus, obtaining the necessary authorizations from Cede & Co. will cost nearly $650,000.[35] As Judge Griesa suggested in *Republic of Argentina*, 415 F.3d at 240, HSBC should be required to pay these costs.

Alternatively, Plaintiffs could join Cede & Co. as a nominal defendant. In that case Cede & Co. would invariably file an answer disclaiming any interest in the covered securities and advising that it did not intend to take an active role in the litigation of this case, as it has repeatedly done in other unrelated RMBS actions in this District. *See*, *e.g.*, *Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*, No. 13 Civ. 5981 SAS, (S.D.N.Y.) (Scheindlin, J.), Answer of Cede & Co. to the Amended Interpleader Complaint (ECF No. 20) at pp. 2-3; *Bank of Am., N.A. v. Morgan Stanley & Co. Inc*., No. 10 Civ. 6322 RJH (S.D.N.Y.), Answer of Cede & Co. to the Interpleader Complaint (ECF No. 7) at ¶¶6-8.

### G.   The No-Action Clauses Do Not Bar Plaintiffs' Breach Of Contract Claims

It is well-settled that the pre-suit requirements of a No-Action Clause may not be construed to bar a Holder's claims against an indenture trustee, since it would be "absurd to require the debenture holders to ask the trustee to sue itself." *Cruden*, 957 F.2d at 968; *see also Ellington*, 837 F. Supp. 2d at 186; *Peak Partners, L.P. v. Republic Bank,* 191 Fed. App'x 118, 126 n.11 (3d Cir. 2006). Ignoring this authority, HSBC contends the "No Action Clause" prohibits these lawsuits because certain pre-suit conditions – which require written notice of default, a demand from 25% of the Holders, and an offer of reasonable indemnity to HSBC –

---

[35] The Institutional Plaintiffs' 1,623 certificates and notes at issue, multiplied by $400, equals $649,200.

were not met.  Mot. 25-26.  HSBC is wrong, as numerous courts have held.  *See, e.g., Sterling Fed. Bank, F.S.B.*, 2010 WL 3324705, at *4 (N.D. Ill. Aug. 20, 2010) (rejecting RMBS trustee's unsupported request to parse the no-action clause's requirements and holding that *Cruden* and *Peak Partners* impliedly rejected that approach); *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2011 WL 2470226, at *2 (M.D. Fla. Mar. 17, 2011) report and recommendation adopted, 2011 WL 2470615 (M.D. Fla. June 21, 2011) (rejecting RMBS trustee's unsupported request to sever the demand requirement and enforce the remaining pre-suit requirements of the no action clause).

### H.      HSBC Concedes That All Plaintiffs May Assert Direct Claims

It is well-settled that the same set of operative facts can give rise to both direct and derivative claims.  *See, e.g., Excimer Assocs. v. LCA Vision, Inc.*, 292 F.3d 134, 139-40 (2d Cir. 2002) ("a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring an action"); *Gentile v. Rossette*, 906 A.2d 91, 103 & n.29 (Del. 2006); *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 383-84 (1st Dep't 2012) (adopting Delaware standard); see generally 12B Fletcher Cyclopedia of the Law of Corporations § 5921 (1984).

The standing of Plaintiffs to assert direct claims is not in dispute here.  Mot. 45-46 (acknowledging that Plaintiffs have standing to assert direct claims).  As HSBC concedes, for the past 70 years the New York Court of Appeals and the Second Circuit have regularly sustained direct claims against indenture trustees.  *See, e.g., LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*, 173 F.3d 454, 462 (2d Cir. 1999) (breach of contract, breach of fiduciary duty, and TIA claims); *Smith v. Cont'l Bank and Trust Co.*, 292 N.Y. 275, 278 (1944) (breach of fiduciary duty claim); *see generally* RESTATEMENT (THIRD) OF TRUSTS § 94(1) (2012) (claims against trustees

may be maintained by a beneficiary or by a person acting on behalf of one or more beneficiaries).[36]

While HSBC suggests such claims cannot be brought in a class action because RPI and the Institutional Plaintiffs have class standing issues (Mot. 11, n.14), HSBC does not move to dismiss the class claims – obviously because HSBC's argument is without merit. In these cases, RPI and the Institutional Plaintiffs each purchased certificates in each of the Trusts on which they sue. IP Compl. ¶¶15, 225; RP Compl. ¶31. The Second Circuit has made it clear that under these circumstances RPI and the Institutional Plaintiffs have class standing. *See Policemen's/BNY Appeal*, 2014 WL 7272269, at *4-6.

## I.    The Institutional Plaintiffs And RPI
## May Assert Derivative Claims As To All Trusts[37]

The Institutional Plaintiffs' and RPI's claims are properly pled derivatively on behalf of the Trusts and in the right of the Trustee. In *Dallas Cowboys*, after analyzing decades of New York trust law, this Court held that a claim brought by a New York trust beneficiary against a trustee may be brought derivatively where (i) the claim is predicated on a breach of a duty owed equally to all trust beneficiaries and (ii) seeks redress for an injury affecting the trust beneficiaries as a whole. 1996 WL 601705, at *2-4.

---

[36] The direct claims asserted here are consistent with this Court's rulings in *Dallas Cowboys* because such claims are based upon legal duties owed directly to the holders independent of any rights of the trust. For example, Plaintiffs have legal rights personal to them arising out of their undisputed status as intended third-party beneficiaries of the Governing Agreements. *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 83-84, 90 (2d Cir. 2014) (RMBS certificateholders are intended third-party beneficiaries of PSAs with standing to assert claims for breach of PSA). HSBC does not – and cannot – contest the long line of cases permitting direct claims against both indenture and PSA trustees, including cases since *Dallas Cowboys*. *See, e.g., supra* at H; *Policemen's/BNY I*, 914 F.Supp.2d 422, 422-23 (Pauley, J.) (sustaining direct and derivative claims); *Policemen's/BofA II*, 943 F. Supp. 2d 428, 436-43 (Forrest, J.); *Oklahoma Police I*, 291 F.R.D. 47, 66-71 (Koeltl, J.).

[37] Phoenix Light asserts only direct claims. Accordingly, Phoenix Light takes no position on the issue of derivative standing and does not join in this section.

Here, the Institutional Plaintiffs' and RPI's claims meet the *Dallas Cowboys* doctrine. All of their claims relate to HSBC's breach of duties owed to the Trusts and all Trust beneficiaries, including enforcing the Trusts' rights against those who have harmed the Trusts. *Id*. at *2 (allegations of trustee's mismanagement or breach of fiduciary duty may be brought derivatively); *see also Backer v. Levy*, 82 F.2d 270 (2d Cir. 1936). This is a concern common to **all** Holders of interest in the Trusts, not just the Institutional Plaintiffs and RPI, because all of the Holders are paid from the cash flow generated by the loan pools held by the Trusts. *Sterling Fed. Bank*, 2010 WL 3324705, at *5 (applying *Dallas Cowboys*). Thus, the Institutional Plaintiffs and RPI's claims concern an injury to the Trusts as a whole, and any injury sustained by the Holders may be remedied in a derivative claim. *Dallas Cowboys*, 1996 WL 601705 at *4.

### 1.   There Is Ample Authority Supporting The Derivative Nature Of Plaintiffs' Claims

HSBC states that "Courts have treated cases brought against indenture trustees, such as HSBC in the Royal Park PSA trusts, as direct actions for as long as these trusts have existed." Mot. 44. HSBC's own authorities demonstrate that derivative actions may also be brought by trust beneficiaries. *See, e.g.*, *Ellington*, 837 F. Supp. at 188 ("Derivative suits may also be brought by the beneficiaries of a trust in New York."), cited at Mot. 45, n.59; *BNP Paribas*, 778 F. Supp. 2d at 409.[38] These cases and many others applying New York law makes clear that an

---

[38] In *Ellington*, after acknowledging that derivative suits may be brought by beneficiaries, the court determined that the investors' claims against the **servicer** were direct and not derivative because those claims "plainly seek relief for Plaintiffs' own unique injuries." 837 F. Supp. 2d at 188. The court did not determine whether plaintiffs' claims against the trustee could be brought derivatively because the trustee did not move for dismissal on those grounds. *Id*. Similarly, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486 (S.D.N.Y. 2013) does not address the availability of derivative claims. An earlier opinion in that same case did. 778 F. Supp. 2d at 409 (recognizing the line of New York case law holding that beneficiaries may bring derivative actions); *id.*, citing *Riviera Cong. Assocs. v. Yassky*, 223 N.E.2d 876 (1966); *Velez v. Feinstein*, 451 N.Y.S.2d 110, 115 (1st Dep't 1982). The court held that the plaintiffs' claims

alleged injury equally applicable to all trust beneficiaries gives rise to a derivative action.  *Dallas Cowboys*, 1996 WL 601705, at *2-4.[39]

Next, HSBC suggests that Plaintiffs cannot bring the TIA claim derivatively.  Mot. 44-46.[40]  But the derivative inquiry focuses on the injury alleged and the relief sought, not the denomination of the claim.[41]  *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 528 (E.D.N.Y. 2013) *aff'd*, 548 F. App'x 741 (2d Cir. 2014), citing *Druck Corp. v. Macro Fund Ltd*., 290 Fed. App'x 441, 443 (2d Cir. 2008) (holding that breach of contract actions may be brought derivatively).  Importantly, Plaintiffs' TIA claims are predicated on violations of the portion of the TIA establishing the indenture trustees' pre- and post-default duties that apply equally to all noteholders (15 U.S.C. §§ 77ooo(a)(1), (2)), as opposed to the section of TIA dealing with the prohibition of impairment of an individual holder's right to payment.  15 U.S.C. § 77ppp(b)).  Moreover, Plaintiffs' TIA claims seek the same relief as their

---

were not derivative because the plaintiffs there were not "suing for the benefit of a trust or other entity. They are suing for their own losses."  *BNP Paribas*, 778 F. Supp. 2d at 409.

[39] HSBC's remaining authorities (Mot. 45, n.59) do not address whether trust beneficiaries may bring derivative claims.  *See, e.g., Meckel v. Cont'l Res. Co*., 758 F.2d 811 (2d Cir. 1985); *Racepoint Partners, LLC v. JPMorgan Chase Bank, N.A.*, 902 N.Y.S.2d 14 (2010); *Magten Asset Mgmt. Corp. v. The Bank of N.Y.*, 841 N.Y.S.2d 219 (N.Y. Sup. Ct. 2007); *Ray v. Marine Midland Grace Trust Co*., 359 N.Y.S.2d 28 (1974); *Hazzard v. Chase Nat'l Bank*, 287 N.Y.S. 541 (N.Y. Sup. Ct. 1936), *aff'd*, 282 N.Y. 652 (1940); *Fleisher v. Farmers' Loan & Trust Co*., 69 N.Y.S. 437 (1st Dep't 1901).

[40] HSBC provides no authority for the proposition that derivatively pled TIA claims are barred.  The cases HSBC cites at Mot. 45 and n.60 merely recognize that TIA claims may be brought directly and were predicated on the impairment of the individual holder's right to payment, a unique injury.

[41] Courts regularly permit claims based on federal statutes providing a private right of action to be brought derivatively.  *See, e.g., Barry v. Curtin*, 993 F. Supp. 2d 347 (E.D.N.Y. 2014) (holding that investors' federal claim for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) were derivative); *Gen. Elec. Co. v. Bucyrus-Erie Co*., 563 F. Supp. 970, 975 (S.D.N.Y. 1983) (sustaining derivative claims under Section 1 of the Sherman Act).

-42-

other common law claims.  Accordingly, *Dallas Cowboys* applies with equal force to Plaintiffs' TIA claims.

HSBC also suggests that derivative suits cannot be brought on behalf of the PSA Trusts because New York express trusts are not juridical entities.  Mot. 44, n.58.  However, New York courts routinely hold that stakeholders in unincorporated entities may bring derivative suits.  *See Riviera*, 18 N.Y.2d 540, 547 (limited partners may bring derivative suits on behalf of the partnership); *Caprer v. Nussbaum*, 825 N.Y.S.2d 55 (2d Dep't 2006) (permitting condominium unit owners to sue on behalf of the condominium).  Moreover, district courts applying New York law have routinely applied *Dallas Cowboys* to post-financial crisis era actions brought by RMBS investors against RMBS trustees for PSA trusts for breach of identical or similar duties.[42]  HSBC inexplicably fails to address these authorities.

While it does not negate direct claims, the express language of the Governing Agreements further supports the availability of derivative claims by providing that Holders are to enforce rights under the Agreement (as defined) "for the equal, ratable and common benefit of all Certificateholders."  *SC Note Acquisitions*, 934 F. Supp. 2d at 530 (similar provision in PSA for commercial MBS suggested that for special servicer's breach of the PSA a derivative claim would be available).  Here, the Institutional Plaintiffs and RPI do not assert unique injuries – rather, that all Holders have been injured "because the Trust is worth less due to [HSBC's]

---

[42] *See, e.g.*, *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, 2010 WL 3324705, at *6, 2011 WL 1792710, at *2 (N.D. Ill. May 11, 2011) (denying RMBS trustee's motion to dismiss in its entirety and allowing derivative claims to proceed); *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2011 WL 2470226, at *3-4 (M.D. Fla. Mar. 17, 2011) (upholding derivative common law breach of duty claims against RMBS trustee); *Sterling Fed. Bank, F.S.B. v. Countrywide Fin. Corp.*, 2012 WL 2368821 (N.D. Ill. June 21, 2012) (sustaining derivatively pled breach of contract claim against RMBS Trustee); *Bankers Ins. Co. v. Countrywide Fin. Corp.*, 2012 WL 2594341 (M.D. Fla. July 5, 2012) (same); *Policemen's/BNY I*, 914 F. Supp. 2d 422 (sustaining investors' derivative breach of fiduciary claim against RMBS trustee).

actions." *SC Note Acquisitions*, 934 F. Supp. 2d at 530; IP Compl. ¶¶222, 508-09; RP Compl. ¶¶172-175, 185-187.

Additionally, HSBC claims that the injuries alleged do not apply to all Holders equally because of "varying payment priorities." Mot. 46. Courts, however, have rejected similar arguments, finding derivative claims to lie despite the varying tranches within RMBS trusts. *See, e.g.*, *Sterling Fed. Bank*, 2010 WL 3324705, at *6; *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2010 WL 4867533, at *4 (M.D. Fla. Oct. 8, 2010). Indeed, any conduct by the trustee that violates the indenture necessarily harms all bondholders in the same manner "through an increased risk of default and a corresponding reduction in the market value of the bonds." *Sterling Fed. Bank*, 2010 WL 3324705, at *6, citing *Feldbaum v. McCrory Corp.*, 1992 WL 119095, at *8 (Del. Ch. June 2, 1992).

HSBC contends that the New York Appellate Division's decision in *Yudell v. Gilbert*, 949 N.Y.S.2d 380, where it adopted the test developed by the Supreme Court of Delaware in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) somehow abrogates *Dallas Cowboys*. However, the *Tooley* test, which instructs that "a court should look to [1] the nature of the wrong and [2] to whom the relief should go," is nearly identical to the *Dallas Cowboys* doctrine. *See Tooley*, 845 A.2d at 1039. *Yudell's* adoption of the *Tooley* test did not overturn any of the New York authorities relied upon by *Dallas Cowboys*. To the contrary, the *Yudell* Court stated that "the *Tooley* test is consistent with New York law" and that the appellate court was adopting the *Tooley* test so that lower courts would have "a clear and simple framework to determine whether a claim is direct or derivative." *Yudell*, 949 N.Y.S.2d at

381.   Indeed, since *Yudell*, courts have continued to apply *Dallas Cowboys* in the mortgage-backed securities context.[43]

Application of the *Tooley* test yields the same result.  It is only through the loss to the Trusts that these Plaintiffs have suffered a loss at all, and all Holders in the Trusts suffer an injury from HSBC's failure to enforce the Trusts' rights as against responsible parties.   IP Compl. ¶¶222, 508-09; RP Compl. ¶¶172-73.  Moreover, any recovery would represent the value of trust assets that have been depleted as result of HSBC's abdication of its responsibilities, which would inure to the benefit of the Trust Estate.   Thus, only if and when the Trust Estate receives this compensation would Plaintiffs then be entitled to receive their proportionate share, as set forth under the Trusts' cash flow waterfall. Indeed, the recovery and distribution would operate similar to a putback settlement, which trustees have referred to as "derivative" in nature.[44]   Accordingly, the Institutional Plaintiffs' and RPI's claims are appropriately pled as derivative claims.  *Yudell*, 949 N.Y.S.2d at 384.

Finally, HSBC asserts that the Institutional Plaintiffs' and RPI's claims are only direct because any monetary judgment Plaintiffs obtain on their claims would eventually flow to Holders.   However, accepting this logic, no shareholder could ever sue derivatively based on injury to corporate assets, since corporate entities all hold assets for the ultimate benefit of

---

[43] *See, e.g.*, *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, 2012 WL 3542196, at *2 (S.D.N.Y. Aug. 15, 2012); *SC Note Acquisitions*, 934 F. Supp. 2d at 530; *Fed. Hous. Fin. Agency v. WMC Mortg. LLC*, 2013 WL 5996530, at *1 (S.D.N.Y. June 12, 2013), citing *Hildene* and *Dallas Cowboys* ("While Rule 23.1 speaks of 'unincorporated associations' and does not mention trusts, the language of the rule is broad enough to encompass the trust at issue in the case, as other courts in this district have found.").

[44] *See* The Petitioners' Brief in Support of Entry of Proposed Final Order and Judgments, *In re the Application of The Bank of New York Mellon*, Index No. 651786/2011 (N.Y. Sup. Ct. Oct. 11, 2013), NYSCEF Doc. No. 942, Section VI.B., p.48 ("[T]he claims being settled all belong to the Trustee on behalf of the Certificateholders, not to the individual holders.  Because any claim that holders could bring on their own would have to be derivative . . . .").

investors.  Regardless, recoveries on derivative claims will first be deposited in the Trust Estate then flow through the payment waterfall in accordance with the Governing Agreements for each Trust, like a putback settlement.[45]  Thus, any derivative judgment would benefit all Holders.[46]  RMBS trustees have referred to such a recovery as "derivative" in nature.  Furthermore, in addition to monetary relief, both the Institutional Plaintiffs and RPI seek equitable relief on behalf of the Trusts and Holders in order to enjoin, remedy, monitor and correct the wrongful conduct of Master Servicers and Servicers.  IP Compl. at Relief Requested (c); RP Compl. at Prayer for Relief (C).

### 2.    The Institutional Plaintiffs Have Properly Stated Derivative Claims In The Right Of The Indenture Trustee

HSBC's contention that the Institutional Plaintiffs lack derivative standing because they are not "beneficial owners" of the Indentures ignores over 100 years trust jurisprudence holding that noteholders bring may bring a derivative action in **the right of the Indenture Trustee**.  *See Ettlinger v. Persian Rug & Carpet Co.*, 66 Hun. 94 (N.Y. Supp. Gen. Term 1892), *aff'd*, 97 Sickels 189, 36 N.E. 1055 (1894); *In re Dolcater*, 106 F.2d 30, 31 (2d Cir. 1939) (holding that beneficiaries may sue derivatively on behalf of deceased's estate to recover money fraudulently extracted from the estate); *Backer v. Levy*, 82 F.2d 270, 274 (finding that remainder beneficiaries of a life estate had a derivative claim against trustee for fraudulent transfer of trust assets).  This

---

[45] *See, e.g.*, Memorandum of Law in Support of its Verified Petition Seeking Proposed Settlement, *In re the Application of The Bank of New York Mellon*, Index No. 651786/2011 (N.Y. Sup. Ct. June 28, 2011), NYSCEF Doc. No. 12, Section III, pp.15-16 citing Verified Petition at ¶¶38-40, NYSCEF Doc. No. 1 ("The Trusts will receive the entirety of the Settlement Payment. Following court approval of the Settlement, that payment will be allocated among the Trusts pursuant to an agreed-upon formula that accounts for past and future net losses in the Trust. An independent financial advisor, without input from the Trustee, will perform any calculations required in connection with that formula, and the allocable share for each Trust will then be distributed to Trust Beneficiaries in accordance with the terms of the Governing Agreements.").

[46] *Id*. at Section III, p.16. "The Trustee itself will not receive any part of the Settlement Payment."

was clearly and effectively enunciated in *Campbell v. Hudson & Manhattan R.R. Co.*, 277 A.D. 731, 734-35 (1st Dep't 1951): "If a trustee under such an indenture acts in bad faith, or, abdicating its function with respect to the point in question, declines to act at all, bondholders for themselves and others similarly situated may bring a derivative action in the right of the trustee, rather than in their own individual rights as bondholders."

The Court in *Campbell* relied on the earlier opinion of Justice Walter in *Birn v. Childs Co.*, 37 N.Y.S.2d 689 (N.Y. Sup. Ct. 1942), which drew the parallel between shareholder derivative suits and derivative suits by noteholders as beneficiaries under an indenture:

> Suits by stockholders in the right of their corporation upon causes of action vested in the corporation are the creatures and inventions of courts of equity. Equity also allows other beneficiaries to sue upon causes of action vested in their trustees when the trustee unreasonably refuses to sue. It sometimes is stressed that these restrictive or no-action clauses are matters of contract and that security holders must be held to their contract, but the contract, in its entirety, is one which gives rise to a trust, and upon the question of allowing a beneficiary to sue upon a showing of an unreasonable refusal of the trustee to sue I can perceive no difference between a trust based upon contract and one based on status or one arising by operation of law. ***In each instance the principle is the same, that equity will not permit a wrong to go unredressed because the trustee unreasonably refuses to sue***.

*Id.* at 697 (emphasis added) (internal citations omitted).[47]  Here, HSBC ignored pervasive and systemic deficiencies in the underlying loan pools and the servicing of those loans, and "unreasonably refuse[d]" and in bad faith failed to bring suit under the Indentures against those who have harmed the trust beneficiaries.  *Id.*  Plaintiffs anticipate that HSBC will attempt to

---

[47] *See also CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 477-78 (S.D.N.Y. 2010); *Velez*, 87 A.D.2d 309, 314, 451 N.Y.S.2d 110; *Gould v. J. Henry Schroder Bank & Trust Co.*, 78 A.D.2d 870, 870-71 (2d Dep't 1980) (recognizing bondholders' right to bring derivative actions arising out of alleged misconduct by indenture trustee); *Riviera*, 18 N.Y.2d at 547 ("It is fundamental to the law of trusts that [beneficiaries] have the right, 'upon the general principles of equity' and 'independently of [statutory] provisions,' to sue for the benefit of the trust on a cause of action which belongs to the trust 'if the trustees refuse to perform their duty in that respect.'") (internal citations omitted); *Rabinowitz v. Kaiser-Frazer Corp.*, 111 N.Y.S.2d 539 (N.Y. Sup. Ct. 1952); *accord Feldbaum*, 1992 WL 119095, at *7.

distinguish the above-cited cases because those cases were all brought ***primarily*** against third party defendants. This Court in *Dallas Cowboys*, however, soundly rejected this distinction. 1996 WL 601705, at *3, n.4 ("Plaintiffs also contend that the cases Defendants cite are distinguishable because they were all brought primarily against third party defendants, and a trust beneficiary can only sue such defendants (on behalf of the trust) in a derivative action. This distinction is unconvincing.").

### 3.    The "Contemporaneous Ownership" Requirement Is Satisfied

The Institutional Plaintiffs and RPI specifically allege that they have been beneficial owners of the RMBS in each of the Trusts during ***all*** or a large portion of HSBC's wrongful course of conduct alleged herein.  IP Compl. ¶225; RP Compl. ¶33; *see also In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003) (a derivative plaintiff need not have owned the shares during the entire course of all relevant events; rather, it need only acquire the shares before the core of the allegedly wrongful conduct transpired). HSBC does not – and cannot – challenge that the "core" of its alleged wrongdoing occurred before RPI acquired their interests in the Trusts.[48]   In any event, the contemporaneous ownership test does not apply here.   As HSBC concedes, 12 Del. C. § 3816(b) applies only to "beneficial owners" in a statutory trust, not to noteholders like the Institutional Plaintiffs.  *See Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 178 (Del. Ch. 2014) (holding that analogous Delaware shareholder contemporaneous

---

[48] That RPI's Complaint contains revelations of Seller underwriting abuses in 2007 and 2008 which pre-date RPI's acquisition of its certificates is of no moment.  The wrongful conduct at issue here is that of HSBC when it failed to timely enforce the Trusts' rights upon discovery or actual knowledge of breaches by Sellers and Servicers which RPI's Complaint alleges did not conclusively occur until 2011 (RP Compl. ¶¶11, 16), when RPI held the certificates.  HSBC further ignores that RPI's Complaint alleges that RPI was assigned all of the original purchasers' litigation rights and claims to the certificates.  These rights and claims included all litigation rights and claims that arose from the certificates' initial purchase in 2006.  Thus, RPI has all the rights and claims from the time these certificates were initially sold to the public in 2006, as RPI was assigned those rights.  RPI therefore was a holder during all relevant times.

ownership rule set forth in 8 Del. C. § 327 unambiguously applies only to "shareholders," not to noteholders).  More fundamentally, under New York law, "a transfer of any bond shall vest in the transferee **all** claims or demands of the transferrer [sic] . . . for damages against the trustee." N.Y. Gen. Oblig. Law § 13-107 (emphasis added); *see also* 97 N.Y.2d at 461.  Section 13-107 applies to both the notes and RMBS certificates (*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 986 F. Supp. 2d 412 (S.D.N.Y. 2013)), and therefore invalidates the contemporaneous ownership rule for the claims asserted here.  *See SC Note Acquisitions*, 934 F. Supp. 2d at 530-31 (dismissing RMBS certificateholder derivative suit against special servicer under contemporaneous ownership rule, but suggesting that such rule would apply if the defendant was an indenture trustee).[49]

### 4.     The Institutional Plaintiffs Are Not Obligated To Plead Demand Futility As To The Owner Trustee

As HSBC concedes, the demand requirement established by 12 Del. C. § 3816(b) applies only to "beneficial owners" in a statutory trust, not to noteholders.  The Indentures' No Action Clauses express the standards and restrictions on noteholders' ability to bring derivative actions, and the Issuers are bound by these terms. Del. C. § 3825 ("It is the policy of this subchapter to give maximum effect to the principle of freedom of contract and to the enforceability of

---

[49]  HSBC's assertion that "Section 13–107 deals with the assignment of claims, not the acquisition of shares" is a non-sequitor.  Mot. 49.  The right to bring a claim, including derivatively, is a property right associated with a bond and freely assignable.  *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 97 N.Y.2d 456, 461 (N.Y. App. 2002).  Further, HSBC's claim that application of Section 13-107 here would make for bad public policy is without merit.  Section 13-107 is consistent with the general trend in New York toward adopting principles of free assignability of claims.  *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995), citing N.Y. Gen. Oblig. Law §§ 13-105 & 13-107.  Indeed, bondholder suits against indenture trustees often arise after catastrophic events, where original bondholders are incentivized to divest themselves of the toxic investment.  If bondholders lack standing to assert claims that pre-date their ownership, there will be few possible bondholders available to protect the Trusts.

governing instruments."). The No Action Clauses do not require noteholders to make a demand on the Owner Trustee, and case law excuses the Institutional Plaintiffs from making a demand on HSBC here. Moreover, reason dictates that the Owner Trustee is not a proper demand party. If the Owner Trustee were to institute the present suit, it would be subject to an unclean hands, or *in pari delicto*, affirmative defense because the Issuers caused the Events of Default by failing to observe or perform covenants in the Indenture.

### J.       The Complaints Properly Allege Damages

HSBC's motion to strike Plaintiffs' request for RMBS losses as to 16 of the Trusts is premature. *Oklahoma Police I*, 291 F.R.D. at 71 (denying trustee's challenge to investors' damage allegations because argument "raise[d] issues of fact that cannot be resolved on a motion to dismiss.").

## IV.   CONCLUSION

For the foregoing reasons, HSBC's motion should be denied in its entirety.


Dated: February 13, 2015

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER         ROBBINS GELLER RUDMAN
   & GROSSMANN LLP                        & DOWD LLP

/s/ Timothy A. DeLange                    /s/ Arthur C. Leahy
    TIMOTHY A. DeLANGE                       ARTHUR C. LEAHY

BLAIR A. NICHOLAS (*pro hac vice*)        ARTHUR C. LEAHY
TIMOTHY A. DeLANGE (*pro hac vice*)       622 West Broadway, Suite 1900
BENJAMIN GALDSTON (*pro hac vice*)        San Diego, CA 92101-8498
LUCAS E. GILMORE (*pro hac vice*)         Tel:    (619) 231-1058
12481 High Bluff Drive, Suite 300         Fax:    (619) 231-7423
San Diego, CA  92130                         -and-
Tel:    (858) 793-0070                    SAMUEL H. RUDMAN
Fax:    (858) 793-0323                    58 South Service Road, Suite 200
   -and-                                  Melville, NY 11747
HANNAH G. ROSS                            Tel:    (631) 367-7100

JEROEN VAN KWAWEGEN
JAI CHANDRASEKHAR
1285 Avenue of the Americas, 38th Floor
New York, NY  10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Plaintiffs Blackrock Balanced Capital Portfolio (FI), et al.*


WOLLMUTH MAHER & DEUTSCH LLP

*/s/ David H. Wollmuth*
          DAVID H. WOLLMUTH

DAVID H. WOLLMUTH
RANDALL R. RAINER
MICHAEL C. LEDLEY
STEVEN S. FITZGERALD
MELISSA A. FINKELSTEIN
500 Fifth Avenue
New York, NY 10110
Tel:    (212) 382-3300
Fax:    (212) 382-0050

GEORGE A. ZELCS
JOHN A. LIBRA
MATTHEW C. DAVIES
MAX C. GIBBONS
205 North Michigan Plaza, Suite 1950
Chicago, IL 60601
Tel:    (312) 641-9750
Fax:    (312) 641-9760
   -and-
STEPHEN M. TILLERY
505 North Seventh Street, Suite 3600
St. Louis, MO 63101-1625
Tel:    (314) 241-4844
Fax:    (314) 241-3525

*Counsel for Plaintiff Phoenix Light SF Limited, et al.*

Fax:    (631) 367-1173

*Counsel for Plaintiff Royal Park Investments SA/NV*