**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROYAL PARK INVESTMENTS SA/NV,<br><br>　　　　　　　　Plaintiff,<br>　　　v.<br><br>HSBC BANK USA, NATIONAL<br>ASSOCIATION,<br><br>　　　　　　　　Defendant. | **Case No. 14-CV-8175-LGS-SN** |

**HSBC BANK USA, N.A.'S MEMORANDUM OF LAW
IN OPPOSITION TO ROYAL PARK INVESTMENTS SA/NV'S
RULE 72 OBJECTIONS AND MOTION TO VACATE**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A.    Royal Park's Creation and Its Inadequate Collection of Documents From Its
Assignors.................................................................................................... 2

    B.    Royal Park's Failure to Fulfill its Discovery Obligations ...................................... 4

    C.    HSBC's Motion to Compel the Production of Unredacted BNP Documents ........ 7

STANDARD OF REVIEW ................................................................................. 8

ARGUMENT ...................................................................................................... 9

I.    Royal Park May Not Rely on Evidence and Arguments That Were Not Raised Before
Judge Netburn. .................................................................................................... 10

II.    The Magistrate Judge's Decision Was Not Clearly Erroneous or Contrary to Law......... 12

    A.    Royal Park Mischaracterizes Judge Netburn's Order and Its Own Discovery
Obligations.............................................................................................. 12

    B.    Judge Netburn Explicitly Adopted the Reasoning in HSBC's Letters. ............... 15

    C.    Royal Park Fails to Demonstrate the Redactions are Proper. ............................. 17

        1.    There Is No Conflict Between Belgian and U.S. Law Because the
Litigation Exception Applies. .................................................................. 17

        2.    The Comity Analysis Favors Disclosure. ................................................. 18

CONCLUSION................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. Evans*, 1993 WL 427409 (S.D.N.Y. Oct. 15, 1993) ..................................................11

*Alfadda v. Fenn*, 149 F.R.D. 28 (S.D.N.Y. 1993) ..........................................................................22

*Bank of New York v. Meridien BIAO Bank Tanz. Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997) ......................................................................................................................................5

*BrightEdge Techs., Inc. v. Searchmetrics, GmbH*, 2014 WL 3965062 (N.D. Cal., Aug. 13, 2014) ..............................................................................................................17, 22

*Bryant v. New York State Educ. Dep't*, 692 F.3d 202 (2d Cir. 2012) ...........................................22

*Catalano v. BMW of N. Am., LLC*, 2016 WL 3406125 (S.D.N.Y. June 16, 2016) ................20, 21

*CE Int'l Res Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 WL 2661037 (S.D.N.Y. June 12, 2013) ..........................................................................................................24

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petrol. Co.*, 105 F.R.D. 16 (S.D.N.Y. 1984) .................................................................................24

*Creighton v. City of New York*, 2015 WL 8492754 (S.D.N.Y. Dec. 9, 2015) ...............................10

*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014) ..........................................................9

*Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d 434 (S.D.N.Y. 2005) ............................................10

*In re Consol. RNC Cases*, 2009 WL 130178 (S.D.N.Y. Jan. 8, 2009) ...................................10, 11

*In re Maxwell Commc'n Corp., PLC*, 93 F.3d 1036 (2d Cir. 1996) .............................................18

*In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179 (S.D.N.Y. 2007) .........................................................5

*In re Payment Card Interchange Fee & Merchant Discount Litig.*, 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010) ...............................................................................................22

*JPMorgan Chase Bank, N.A. v. KB Home*, 2010 WL 1994787 (D. Nev. May 18, 2010) ......................................................................................................................................5

*JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505 (S.D.N.Y. 2005) ................................. passim

*Khatabi v. Bonura*, 2016 WL 8838889 (S.D.N.Y. Apr. 21, 2016) ..................................................9

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) ........................10

*Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409 (S.D.N.Y. 2016) .........................17, 21, 22, 23

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 2017 WL 3142072
(S.D.N.Y. July 24, 2017) ...................................................................................9

*McCulloch v. Town of Milan*, 2009 WL 4857994 (S.D.N.Y. Dec. 11, 2009) ...............................9

*Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238 (S.D.N.Y. 2010) ....................................24

*Minpeco, S.A. v. ContiCommodity Servs. Inc.*, 116 F.R.D. 517 (S.D.N.Y. 1987)........................22

*Motorola Credit Corp. v. Uzan*, 73 F. Supp. 3d 397 (S.D.N.Y. 2014)..................................20, 21

*MPD Accessories B.V. v. Urban Outfitters*, 2013 WL 5647430 (S.D.N.Y. Oct. 9,
2013) .............................................................................................................9

*Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs,
Warehousemen & Helpers*, 894 F.2d 36 (2d Cir. 1990) .........................................11

*Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 2005 WL 3046284
(S.D.N.Y. Nov. 14, 2005), *aff'd*, 476 F.3d 140 (2d Cir. 2007)...............................22

*Pershing Pacific West LLC v. MarineMax, Inc.*, 2013 WL 941617 (S.D. Cal. Mar.
11, 2013) .......................................................................................................22

*Philips v. Ford Motor Co.*, 2016 WL 8505624 (N.D. Cal. June 10, 2016) ................13, 18, 20, 23

*PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010) .......................................................9

*Reino de Espana v. Am. Bureau of Shipping*, 2005 WL 1813017 (S.D.N.Y. Aug.
1, 2005) .......................................................................................19, 21, 23, 24

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275 (7th
Cir. 1990).......................................................................................................22

*Reno v. Flores*, 507 U.S. 292 (1993) ........................................................................................22

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390
(S.D.N.Y. Aug. 31, 2016) ...........................................................................4, 6, 25

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D. 341
(S.D.N.Y. 2016).....................................................................................5, 14, 15

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of
Iowa*, 482 U.S. 522 (1987)................................................................................ passim

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150 (D. Or. 2015) ..............17, 22

*Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199 (E.D.N.Y. 2007) .............................................19

*Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143 (S.D.N.Y. 2011) ..............................................22

*Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 28 (2d Cir. 2015) ...............................16

*Yukos Capital S.A.R.L. v. Samaraneftegaz*, No. 10-cv-06147-PAC (S.D.N.Y. Apr. 17, 2014) ......................................................................................................................16

**STATE CASES**

*In re Activision Blizzard Stockholder Litig.*, 86 A.3d 531 (Del. Ch. 2014)..................................22

**INTRODUCTION**

Royal Park filed this lawsuit asserting the right to bring claims it purportedly received as an assignee of its shareholder, BNP Paribas ("BNP"). Prior to filing suit against HSBC, Royal Park recognized it needed assignor documents; sued its assignor BNP in Brussels to try to obtain those documents; and then signed away its right to those documents when it settled its litigation with BNP. Dkt. No. 378 at 51-52 (citing testimony). In December 2015, this Court ruled that if Royal Park proceeded with its claims, it assumed the obligation to produce documents held by its assignor BNP, and that Royal Park must bear the consequences of any past failure or present inability to obtain those documents. Since then, Royal Park has done everything it can to delay and avoid complying with the Court's order to produce BNP documents.

At the close of fact discovery, after depositions were nearly complete, Royal Park finally produced a small set of documents from BNP, which Judge Netburn promptly held to be the result of an insufficient search. Moreover, this production included many documents that are unusable in discovery, as well as at depositions or trial, because much of the identifying information in the documents was redacted. These redactions continued Royal Park's campaign to avoid its discovery obligations. Judge Netburn, to whom all discovery disputes were assigned over a year-and-half ago and who ordered Royal Park multiple times to meet its discovery obligations, granted HSBC's motion to remove the redactions. Royal Park then lost its motion for reconsideration, and now raises these Rule 72(a) objections.

A fundamental error, however, underlies Royal Park's objections. Contrary to Royal Park's assertions, HSBC is not seeking the production of documents from BNP as a third party. As Judge Scheindlin and other judges in this district correctly have held, Royal Park has the obligation in this litigation to produce documents. Dkt. No. 89; *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507 (S.D.N.Y. 2005) (Lynch, J.). Royal Park should have obtained

those documents before beginning its litigation and has no right to redact documents under Belgian privacy law.  Accordingly, Judge Netburn correctly reaffirmed Royal Park's discovery obligations and ordered Royal Park to remove the redactions.  If Royal Park is unable or unwilling to produce unredacted documents from BNP, it must bear the consequences—a fundamental equitable point that has been echoed by every court to address an assignee's obligations to produce its assignor's documents.  *See infra* pp. 4-5, 13-14.  Royal Park recognized and admitted this at a recent hearing: *"[I]t's Royal Park's obligation to produce these documents. If we can't get BNP to do it, then that's going to fall on us."* Apr. 24, 2017 Hr'g Tr. at 36:15–17 (emphasis added).

Royal Park is bound by *Winnick*.  Royal Park is a sophisticated party who knew the risks it was taking when it brought claims here without securing documents it knew would be discoverable in U.S. litigation.  Faced with this Court's multiple orders on BNP documents, as well as the weight of authority ordering production of discovery in the United States over a claimed foreign law objection, Royal Park raises here its previously rejected arguments as to BNP documents.  Royal Park's objections, however, do not offer a sufficient basis to disturb Judge Netburn's ruling, much less meet Rule 72(a)'s exacting standard.  Judge Netburn reached the appropriate conclusion, and Royal Park's objections should be denied.

## BACKGROUND

### A.     Royal Park's Creation and Its Inadequate Collection of Documents From Its Assignors

The Belgian State and BNP negotiated the creation of Royal Park after the collapse of Fortis Bank, a large Belgian banking institution, during the financial crisis in 2008.  Decl. of Vidya A. Mirmira in Supp. of HSBC Opp'n ("Mirmira Decl.") Ex. 1 ¶¶ 46-50.  The Belgian government then brokered the sale of parts of the bank to BNP.  *Id.*  As a condition of the sale,

BNP insisted on the creation of Royal Park to absorb assets off the books of Fortis, including the RMBS at issue in this action. *Id.* ¶ 52. Not only was BNP instrumental in the creation of Royal Park, BNP also selected the securities that transferred to Royal Park. *Id.* The Belgian government and BNP became two of the three shareholders of Royal Park, together holding 55% of outstanding shares, and each is represented on the Board of Directors. *Id.* ¶ 50 & Mirmira Decl. Ex. 2. Royal Park is an entity that exists now solely to pursue litigation, Mirmira Decl. Ex. 3, and any recovery would benefit its shareholders including BNP. As Board members, both BNP and the Belgian state approved the initiation of this litigation and are directly involved in managing it. Mirmira Decl. Ex. 4 at 109:21-114:2 & 377:11-13. The Belgian state's representative on Royal Park's board is the Chairman of the Board. *Id.* at 82:9-83:6.

Royal Park received its certificates in the three trusts at issue here from two Fortis entities, one based in Belgium and another in New York. Despite now claiming that all parties involved intended to assign litigation rights to Royal Park when it was created, Royal Park collected only a very limited set of documents from Fortis Brussels that was necessary for the future management of the assets, and it collected no documents at all from Fortis New York. *Id.* at 39:14-44:8, 327:8-23, 331:3-14. Thus, at the time of its creation, Royal Park did not collect adequate documents, and the documents it did collect *were not collected forensically or for this litigation*. Apr. 24, 2017 Hr'g Tr. at 24:11-25:10; 31:16-21.

Royal Park subsequently began to initiate litigation related to its RMBS portfolio and realized that it needed Fortis documents that it had failed to collect earlier. Mirmira Decl. Ex. 4 at 332:2-333:4. BNP (who had taken over Fortis by then) was unwilling to cooperate; it believed that it had retained certain litigation rights with respect to Royal Park's securities, and it had made a strategic decision that it did not want to be involved in U.S. litigation with respect to

those claims.  In 2012, Royal Park sued BNP in the Belgian Court of Commerce for the documents that it believed necessary for U.S. litigation.  Mirmira Decl. Ex. 5.  They reached a settlement in which Royal Park received a limited set of documents and then Royal Park released BNP from any further obligation.  Mirmira Decl. Ex. 6.

The document disputes between Royal Park and BNP demonstrate that Royal Park knew well before it filed this lawsuit that it needed documents from BNP to proceed with U.S. litigation, and that BNP was unwilling to provide them.  Royal Park also knew that it had signed away in the settlement any right to pursue additional documents from BNP.  In short, Royal Park filed this lawsuit knowing that it could not meet its discovery obligations.  *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *8 (S.D.N.Y. Aug. 31, 2016) ("[H]aving knowingly waived its rights to compel documents from its assignors, RPI cannot use its inability to do so, or the failure of its more recent efforts to obtain voluntary cooperation, as justification for a court order relieving it of the obligation to produce otherwise-discoverable documents from their files.").  This long history between Royal Park and BNP belies Royal Park's suggestion now that it is acting in "good faith" to get documents from BNP.

**B.     Royal Park's Failure to Fulfill its Discovery Obligations**

As discovery progressed Royal Park was not forthcoming with HSBC or the Court about its document disputes with BNP.  Instead, it took the position that assignor documents were irrelevant and outside of its possession, custody, or control, despite the fact that BNP was both a Board member and shareholder.  Ultimately, HSBC moved to compel the production of assignor documents, which the Court granted on December 4, 2015.  Dkt. No. 89 ("*Winnick* Order").

In that order, the Court adopted the reasoning of *JPMorgan Chase Bank v. Winnick*, holding that it is "both logically inconsistent and unfair to allow the right to sue to be transferred to assignees of a debt free of the obligations that go with litigating a claim."  228 F.R.D. 505,

506 (S.D.N.Y. 2005) (Lynch, J.); Dkt. No. 89 at 3-4.  In doing so, this Court followed a long line

of cases that echoed this fundamental equitable principle.  *See, e.g.*, *In re NTL, Inc. Sec. Litig.*,

244 F.R.D. 179, 196 (S.D.N.Y. 2007); *Bank of New York v. Meridien BIAO Bank Tanz. Ltd.,* 171

F.R.D. 135, 149 (S.D.N.Y. 1997).  Consequently, if Royal Park seeks to recover for damages

allegedly suffered by its assignors, then it must collect and produce documents from its assignors

to the same extent that would have been required if the assignors had sued on their own behalf.

*Winnick*, 228 F.R.D. at 507; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 314 F.R.D.

341, 347 (S.D.N.Y. 2016).  To the extent that Royal Park is unable to secure BNP's cooperation,

Royal Park must bear the consequences.  *Winnick*, 228 F.R.D. at 507 ("If plaintiff and the

assignees failed to obtain rights to insist on cooperation from their assignors in providing such

discovery, and cannot persuade [their assignors] to cooperate now, that is their problem, not

defendants'."); *JPMorgan Chase Bank, N.A. v. KB Home*, 2010 WL 1994787, at *5 (D. Nev.

May 18, 2010) ("[T]he *Winnick* court expressly recognized that JPMorgan and current debt

holders might not be able to obtain discovery from Assignor Lenders. However, the court held

that that problem was better left in the lap of JPMorgan and the other plaintiffs rather than

dumped in the lap of defendants.").

     Following this Court's ruling that Royal Park must produce documents from its assignor

BNP in this case, Dkt. No. 89 at 4-5, every district court facing a similar motion against Royal

Park has followed the reasoning of *Winnick.  See, e.g.*, *Deutsche Bank*, 314 F.R.D. at 347; *Royal

Park Invs. SA/NV v. U.S. Bank N.A.*, No. 14-cv-2590-VM-JCF, Dkt. No. 78 (S.D.N.Y. Mar. 30,

2016).  Further, courts have confirmed that Royal Park cannot duck its responsibility by claiming

an inability to get the documents, or by placing the burden on the defendants to make a special

showing of need.  *Deutsche Bank*, 2016 WL 4613390, at *7.  Nevertheless, Royal Park produced

nothing in response to the Court's order for well over a year-and-half.

In its Rule 72(a) objections, Royal Park claims that its failure to comply with the *Winnick*

Order stems from HSBC's "grossly overbroad discovery demands."  Royal Park's Mem. of Law

in Supp. of Rule 72 Objections and Mot. to Vacate ("Mot.") at 3.  Royal Park's claims are

incorrect and belied by the record.  HSBC made multiple attempts to meet and confer with Royal

Park in an effort to negotiate mutually agreeable search terms that would capture documents

relevant to the issues in this litigation.  For a long period of time, Royal Park refused to engage

in those discussions at all and informed HSBC and this Court that it was not going to produce

anything from BNP regardless of the terms offered.  July 13, 2016 Hr'g Tr. at 12:15-18

("[HSBC] raised the issue of the assignor documents that Royal Park was ordered to produce.

We have told them for months that we are unable to obtain those documents, and so they won't

be produced."); Apr. 24, 2017 Hr'g Tr. at 30:15-20.

Near the end of fact discovery, however, long after Royal Park's key witnesses had been

deposed, HSBC discovered that BNP was reviewing documents for Royal Park to produce in

another trustee case.  After HSBC inquired about this, Royal Park agreed to make a small

production of BNP documents, using search terms limited to trust and CDO names and CUSIP

numbers.  HSBC maintained that those search terms were inadequate to meet Royal Park's

obligations under *Winnick*.  Once again, however, Royal Park refused to enter into meaningful

negotiations, and HSBC was forced to raise the issue with the Court.  Dkt. No. 323.

At that time, Royal Park raised the same relevance arguments that it rehashes here, based

on rulings in the *Deutsche Bank* and *Wells Fargo* trustee cases.  Mot. at 3-4; Apr. 24, 2017 Hr'g

Tr. at 32:20-33:5.  Those rulings, however, were related to document requests not at issue here.

Judge Netburn properly rejected Royal Park's arguments and held that the documents resulting from Royal Park's limited search terms in this litigation "are not likely to be producing the type of relevant information that the defendant is entitled to."  Apr. 24, 2017 Hr'g Tr. at 35:24-36:1. Accordingly, she ordered the parties to agree on a broader set of search terms.  *Id.*  Over four months later, after several delays in Royal Park providing hit counts for these additional search terms, the parties are still meeting-and-conferring on additional search terms.

### C.     HSBC's Motion to Compel the Production of Unredacted BNP Documents

The documents presently at issue in this motion are those resulting from Royal Park's original, overly narrow search terms.  Such documents hit on search terms that Royal Park itself proposed—which were limited to the trust names and CUSIPs at issue in this case—and thus inarguably are relevant.[1]  These documents have been rendered useless by heavy redactions.  For example, Royal Park produced emails with senders and receivers redacted and no identifying metadata.  Mirmira Decl. Ex. 7; Dkt. No. 388-1.  Royal Park's sole justification for the redactions was an email from BNP's U.S. counsel asserting that the redactions were required by Belgian privacy law.  Once again, HSBC attempted to meet and confer on this issue, and once again, it was forced to seek Court intervention.

In its motion to compel Royal Park to remove the redactions, HSBC noted that the obligation to produce documents falls on Royal Park.  Dkt. No. 388 at 1-2.  HSBC further demonstrated that Belgian privacy law would not apply here in any case.  First, there is a litigation exception that U.S. courts have held allows the production of documents in similar circumstances.  *Id.* at 3-4.  Second, even if the exception did not apply, the appropriate comity

---

[1] Judge Netburn's order established that documents resulting from the additional terms she ordered are relevant as well.  Apr. 24, 2017 Hr'g Tr. at 35:23-36:1.

analysis would favor disclosure in this case.  *Id.* at 4-5.   In response, Royal Park failed to

respond to the fundamental point that Royal Park, not BNP, was the party subject to the Court's

order to produce documents.  Dkt. No. 389.  Royal Park also failed to offer a meaningful

response to HSBC's arguments regarding the litigation exception.  *Id.*  Instead, it offered only a

partial argument regarding the comity analysis.

Judge Netburn granted HSBC's motion on July 24, fully adopting the reasoning set forth

in HSBC's letter motion and reply and ordering Royal Park to produce unredacted documents by

July 28.  Dkt. No. 392 ("[F]or the reasons set forth in HSBC's letters of July 11 and 19, 2017, the

motion to compel is GRANTED. Royal Park is ORDERED to produce unredacted versions of

the approximately 1,400 documents by no later than July 28, 2017.").  Royal Park failed to meet

that deadline, and Judge Netburn ordered Royal Park to provide a status update by August 7.

In its update, Royal Park noted that it had removed a handful of redactions from less than

half of the documents at issue.  Dkt. No. 398.  It also included a cursory motion for

reconsideration of the Court's July 24 Order.  *Id.*  On August 11, 2017, Judge Netburn denied

Royal Park's motion, holding that it did not meet the standard for reconsideration, adopting the

reasons set forth in HSBC's August 10, 2017 opposition to Royal Park's motion for

reconsideration, and reaffirming the merits of its July 24 Order:

> For the reasons set forth in HSBC's letter, Royal Park's motion for reconsideration,
> ECF No. 398, of the Court's July 24, 2017 Order is DENIED.  Procedurally, Royal
> Park has failed to point to any controlling decision or factual matter that the Court
> overlooked, as required by Federal Rule of Civil Procedure 59(e) and Local Civil
> Rule 6.3.  The Court also reaffirms the decision as correct on the merits.

Dkt. No. 403.  Royal Park's objections under Rule 72(a) followed.  Dkt. Nos. 408 & 409.

## STANDARD OF REVIEW

A magistrate judge's findings in a non-dispositive ruling may be set aside only if they are

"clearly erroneous or . . . contrary to law."  Fed. R. Civ. P. 72(a).  Under this "highly deferential"

standard of review, *McCulloch v. Town of Milan*, 2009 WL 4857994, at *1 (S.D.N.Y. Dec. 11, 2009), Royal Park must satisfy a "heavy burden" to show that Judge Netburn's orders should be overturned, *MPD Accessories B.V. v. Urban Outfitters*, 2013 WL 5647430, at *1 (S.D.N.Y. Oct. 9, 2013).

Royal Park's suggestion that a *de novo* standard of review should apply, Mot. at 7, is incorrect. Courts in this district expressly distinguish between the *de novo* standard that applies under Rule 72(b) (with respect to dispositive magistrate judge rulings) and the "highly deferential" clearly-erroneous-or-contrary-to-law standard that applies under Rule 72(a) (with respect to non-dispositive magistrate rulings such as the orders at issue here). *See Khatabi v. Bonura*, 2016 WL 8838889, at *2 (S.D.N.Y. Apr. 21, 2016) ("[Rule 72(a)] invokes a 'clearly erroneous' or 'contrary to law' standard of review while [Rule 72(b)] requires a '*de novo*' determination."). Non-dispositive orders should be set aside only "if the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 2017 WL 3142072, at *1 (S.D.N.Y. July 24, 2017) (Schofield, J.).[2] Royal Park does not satisfy this exacting standard.

## ARGUMENT

Royal Park has the burden to show that Judge Netburn's decisions below were clearly erroneous or contrary to law. Royal Park cannot meet this burden. First, Royal Park impermissibly relies on arguments and evidence, including a purported "expert" declaration that

---

[2] Royal Park omits this Court's authority on the standard of review, citing instead to authority from other jurisdictions. Mot. at 7. Even that non-binding authority notes that a *de novo* standard applies only to "*pure* question[s] of law." *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (emphasis added). Here, the issue of whether international comity precludes the production of unredacted documents from BNP is not a pure question of law subject to *de novo* review, but rather is "within the court's discretion." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014).

it has submitted for the first time in support of the instant motion, that it did not raise before

Judge Netburn; these new arguments and evidence should therefore be disregarded under well-

settled authority.  Second, on the merits Royal Park offers no justification to overturn Judge

Netburn's order requiring Royal Park to produce unredacted documents from BNP.

## I.      Royal Park May Not Rely on Evidence and Arguments That Were Not Raised Before Judge Netburn.

As an initial matter, the Court should not consider Royal Park's objections to the extent

they seek to rely on new evidence and new arguments that were not raised with Judge Netburn.

A "district court's review of a magistrate judge's *non-dispositive* ruling under FRCP 72(a) is

limited to the evidence that was before the magistrate judge."  *Koumoulis v. Indep. Fin. Mktg.*

*Grp., Inc.*, 29 F. Supp. 3d 142, 151-52 (E.D.N.Y. 2014); *see also Creighton v. City of New York*,

2015 WL 8492754, at *5 (S.D.N.Y. Dec. 9, 2015) ("The overwhelming weight of authority

favors the view that, upon review of objections to a magistrate judge's non-dispositive ruling, a

district court may not consider evidence not presented to the magistrate judge in the first

instance.").  Litigants "cannot be permitted to use litigation before a magistrate judge as

something akin to a spring training exhibition game, holding back evidence for use once the

regular season begins before the district judge."  *Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d

434, 438 (S.D.N.Y. 2005); *see also In re Consol. RNC Cases*, 2009 WL 130178, at *10

(S.D.N.Y. Jan. 8, 2009) ("For the district judge to review new evidence or arguments would

reduce the magistrate's work to something akin to a meaningless dress rehearsal.").  Here, Royal

Park bases its objections on declarations that were not relied upon below.  Such new matters

should not be considered by the Court in resolving Royal Park's objections.

The declaration of Etienne Kairis, Wood Decl. Ex. D, was submitted for the first time

before this Court in support of the instant motion.  Because Royal Park never submitted it before

Judge Netburn, it is not properly before the Court now and should not be considered.[3] *See Alexander v. Evans*, 1993 WL 427409, at *6 n.8 (S.D.N.Y. Oct. 15, 1993) (declining to consider expert witness affidavit submitted with objections to magistrate judge's ruling because "affidavit was not before [the magistrate judge]"); *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) (holding that objecting party "had no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate").  This is particularly so in light of Royal Park's failure to provide any justification (much less a compelling one) for why it did not submit this declaration previously to Judge Netburn.

The Court also should not consider the declaration of Frederik Van Remoortel, Dkt No. 284-2, *Royal Park Invs. SA/NV v. U.S. Bank N.A.*, No. 14-cv-02590-CM-JCF (S.D.N.Y. July 14, 2017), which Royal Park likewise never submitted to Judge Netburn and also did not submit as part of the record in support of this motion.  Rather, in its briefing before Judge Netburn, Royal Park cited this declaration from another case a single time, in connection with **one** of the seven factors that is considered under the *Aerospatiale* comity analysis (discussed *infra* pp. 18-25).  *See* Dkt. No. 389 at 3.  Now, however, Royal Park cites to this declaration ubiquitously in support of its argument that Belgian law prohibits the disclosure of documents in unredacted form.  *See* Mot. at 5, 10, 11, 17, 19.  This attempt to bolster its position by citing new arguments and evidence is improper.[4] *Consol. RNC Cases*, 2009 WL 130178, at *10 (declining to consider new arguments that were not raised before the magistrate judge).

---

[3] Mr. Kairis's declaration also attempts to rely on provisions of Belgian law that Royal Park never raised with Judge Netburn.  *Compare* Wood Decl. Ex. D ¶¶ 7-14, *with* Dkt. No. 389 at 2-4.

[4] These purported experts' opinions also should be disregarded for the separate reason that neither is an independent authority on Belgian data protection law—they are BNP and Royal Park's lawyers.  In particular, Mr. Van Remoortel's law firm has represented BNP in related

Moreover, as discussed below, these individuals' suppositions that the Belgian Data Privacy Act prohibits the disclosure of the BNP documents in unredacted form is both (1) incorrect because the Act's litigation exception permits disclosure,[5] as held by numerous other U.S. courts; and (2) immaterial because, even assuming *arguendo* that the documents are not subject to the litigation exception, the documents must be produced under the alternative *Aerospatiale* comity analysis.[6]

## II.   The Magistrate Judge's Decision Was Not Clearly Erroneous or Contrary to Law.

Royal Park bases its objections on two grounds.  First, it claims Judge Netburn erred in finding that "the fact that Royal Park has *already* produced some of the disputed documents in unredacted form (without raising any objections) undermines its arguments that it cannot now produce the redacted materials without running afoul of European privacy law."  Mot. at 7-8. Second, it claims Judge Netburn did not conduct a comity analysis to determine whether the redacted information should be subject to Belgian privacy law.  *Id.*  Neither contention has merit.

### A.   Royal Park Mischaracterizes Judge Netburn's Order and Its Own Discovery Obligations.

According to Royal Park, Judge Netburn's decision was contrary to law because it "fail[ed] to consider [BNP] as a legally distinct entity (with legally distinct rights) from Royal

---

RMBS trustee matters, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 14-cv-04394-AJN-BCM, Dkt. No. 437 at 2 (Aug. 14, 2017), and Mr. Kairis's law firm has represented Royal Park in other matters, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 14-cv-04394-AJN-BCM, Dkt. No. 446 at 4 (Aug. 31, 2017).

[5] Only Mr. Van Remoortel addresses the litigation exception at all, and he does so in a cursory manner, admitting that "a detailed analysis would fall outside the scope of this declaration." *Royal Park Invs. SA/NV v. U.S. Bank N.A.*, No. 14-cv-02590-CM-JCF, Dkt No. 284-2 ¶ 60 (S.D.N.Y. July 14, 2017).

[6] If the Court is inclined to consider these declarations, HSBC respectfully requests the opportunity to supplement the record with its own expert declaration regarding the applicability of Belgian law.

Park" and "concluded that Royal Park's production of unredacted documents resulted in a waiver of BNPFF's right to object to unredacted production of documents." Mot. at 8. This argument is based on (1) a mischaracterization of Judge Netburn's decision; and (2) the faulty premise that BNP's rights are at issue here.

First, Royal Park argued to Judge Netburn, as it does here, that Royal Park had produced some number of the redacted documents in unredacted form and this was a reason to deny HSBC's motion to compel. Dkt No. 389 at 1-2. Judge Netburn rejected this argument, echoing the reasoning of the *Philips* case; as explained in HSBC's opposition to Royal Park's reconsideration motion, Dkt No. 390 at 5 (which Judge Netburn adopted, Dkt. No. 392), the fact that Royal Park has produced some documents in unredacted form undercuts its argument that redaction is required to comply with Belgian law. *Philips v. Ford Motor Co.*, 2016 WL 8505624, at *3 (N.D. Cal. June 10, 2016) (granting motion to compel documents in unredacted form even if some of the redacted information could be in unredacted documents). It was entirely appropriate for Judge Netburn to point out that Royal Park has produced some of the disputed documents in unredacted form, particularly since Royal Park was attempting to use its own deficient production as a basis to oppose the motion to compel. Dkt. No. 389 at 1-2.

Second, Judge Netburn did not hold that BNP had waived its right to object to an unredacted production of documents. To the contrary, BNP is not producing documents in this case at all. HSBC has never subpoenaed BNP or sought documents from it directly. BNP is only relevant to this case insofar as Royal Park purports to bring claims that originally belonged to BNP (which it does). It is Royal Park that is obligated under *Winnick* to produce documents from its assignor, and Royal Park, not BNP, that is subject to this Court's multiple orders. Royal Park did not argue anywhere in its briefing before Judge Netburn that it was subject to the

requirements of the Belgian privacy laws.[7]  Instead, it attempted to imply that BNP is a separate party involved in this case that has its own independent rights—a fiction that Judge Netburn rejected.  As *Winnick* and all the subsequent decisions make clear, to the extent that Royal Park cannot obtain documents from BNP because of BNP's assertions of privacy laws, that is Royal Park's problem and Royal Park must suffer the consequences.  *Winnick*, 228 F.R.D. at 507 ("If plaintiff and the assignees failed to obtain rights to insist on cooperation from their assignors in providing such discovery, and cannot persuade [their assignors] to cooperate now, that is their problem, not defendants'."); *Deutsche Bank*, 314 F.R.D. at 347; Dkt. No. 89.

Under this Court's December 2015 and April 2017 orders, it is Royal Park's responsibility to produce these documents in unredacted form.  *JPMorgan Chase Bank v. Winnick*, 228 F.R.D. 505, 507-08 (S.D.N.Y. 2005); Dkt. No. 89 at 3-5; Apr. 24, 2017 Hr'g Tr. at 24:3-10 & 36:15-25.  In an attempt to escape these orders and its admission that it is Royal Park's discovery obligation to produce assignor documents, Royal Park raises two red herrings.  First, it claims that *Winnick* gives BNP as the assignor an independent right to object to the production of documents.  Mot. at 8.  As HSBC noted in its response to Royal Park's motion for reconsideration, the Court decided Royal Park's obligations under *Winnick* over a year-and-a-half ago, in December 2015, and neither Royal Park nor BNP raised any objection under Belgian law at that time.  Dkt. No. 403 at 4.  The time for raising new arguments under *Winnick* has long since passed, and in any event, they would have no place in Rule 72(a) objections.  But even setting aside the obvious waiver, the argument is without merit.  The *Winnick* court's holding that assignors "may themselves interpose objections to the content of defendants' discovery

---

[7] Although Royal Park attaches to its Rule 72(a) Objections its boilerplate discovery objection based on Belgian privacy laws, Wood Decl. Ex. A at 3, it has not redacted names and email addresses from documents on that basis.

requests," 228 F.R.D. at 508, is inapposite to the issue of whether Royal Park must produce unredacted documents in this litigation. The *Winnick* court was simply pointing to two methods by which objections could be made—by the assignor directly or by the assignee on behalf of the assignor. *Id.* at 507-08. BNP has chosen not to interpose its own objections.[8] Rather, Royal Park has interposed objections on BNP's behalf, and the Court has overruled those objections.

The second red herring is Royal Park's argument that it lacks possession, custody, or control of the BNP documents. This argument makes no sense in the context of *Winnick*, and courts repeatedly have rejected it. Dkt. No. 89 (Judge Scheindlin ordering Royal Park to produce BNP documents despite Royal Park's argument that they lacked possession, custody, or control); *Deutsche Bank*, 314 F.R.D. at 347 ("Regardless of the precise extent or degree of Royal Park's access to the materials held by BNP Paribas (contractual, practical, or otherwise), it is surely in a better position than its adversary to identify and obtain those materials for use in this litigation."); *U.S. Bank*, No. 14-cv-2590-VM-JCF, Dkt No. 78 (adopting the reasoning of *Deutsche Bank*); *Winnick*, 228 F.R.D. at 507. In short, Royal Park's obligations under *Winnick* do not depend on its possession, custody, or control over its assignor's documents.

**B.    Judge Netburn Explicitly Adopted the Reasoning in HSBC's Letters.**

Royal Park's second basis for its objections rests on its mischaracterization that Royal Park's previous production of unredacted documents was Judge Netburn's sole basis for her opinion. According to Royal Park, Judge Netburn failed to perform the required comity analysis

---

[8] That BNP has avoided actually appearing in this case to interpose objections is likely due to what the *Winnick* court held (what Royal Park omitted from its quote)—that assignors "may themselves interpose objections to the content of defendants' discovery requests, *provided that by doing so they waive any objection to being treated as parties to the litigation for purposes of discovery*." 228 F.R.D. at 508 (emphasis added). If BNP wants to stand on its own objections, it must be willing to face all the discovery obligations of a party. Neither BNP nor Royal Park has ever suggested that BNP is willing to accept that condition.

to determine whether Belgian privacy law precluded the production of unredacted documents from BNP.  However, Judge Netburn did not omit that analysis—she fully and explicitly adopted the reasoning set forth in HSBC's letter motion and response (which articulated, among other things, a comity analysis).  Dkt. No. 392 at 2 ("Accordingly, for the reasons set forth in HSBC's letters of July 11 and 19, 2017, the motion to compel is GRANTED.").  In those letters, HSBC set forth three distinct bases for granting the motion: (1) it is Royal Park that is obligated to produce documents under *Winnick*, and the Belgian privacy laws do not apply to Royal Park; (2) in any event, the litigation exception to the Belgian Data Privacy Act mandates disclosure, rendering the comity analysis moot; and (3) even assuming *arguendo* that the litigation exception did not apply, the factors underlying the comity analysis favor disclosure.  Dkt. Nos. 388, 390. Accordingly, Judge Netburn's opinion was fully supported by both the specific analysis in the order and the analysis adopted from HSBC's letters.

Royal Park has failed entirely to meet the "heavy burden" required to overturn a non-dispositive motion.  The case cited by Royal Park, *Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 28 (2d Cir. 2015), is inapposite.  In that case, the court did not fully and unequivocally adopt a party's reasoning, as Judge Netburn did here.  *See* Dkt No. 198, *Yukos Capital S.A.R.L. v. Samaraneftegaz*, No. 10-cv-06147-PAC (S.D.N.Y. Apr. 17, 2014).  Here, Judge Netburn adopted the arguments on the litigation exception as well as the comity analysis set forth in HSBC's letters.  Because Royal Park has not identified an error in the decision below, the Court need not reach the revised comity analysis that Royal Park offers here for the first time—the Court should deny Royal Park's motion.  However, should the Court decide to entertain that analysis, it too fails on the merits for the reasons discussed below.

C.      **Royal Park Fails to Demonstrate the Redactions are Proper.**

Royal Park carries the underlying burden of showing that the Belgian Data Privacy Act

precludes Royal Park from producing unredacted documents from BNP.[9]  "[W]here the alleged

obstacle to production is foreign law, the burden of proving what the law is and demonstrating

why it impedes production falls on the party resisting discovery."  *Laydon v. Mizuho Bank, Ltd.*,

183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016).  Royal Park failed to carry this burden before Judge

Netburn, and it fails to do so here.

1.      **There Is No Conflict Between Belgian and U.S. Law Because the
                Litigation Exception Applies.**

Relying upon Article 21, Royal Park claimed that the Belgian Data Privacy Act

"prohibits an EU-based entity from transmitting 'personal data' to a country outside the

European Union."  Wood Decl. Ex. B.  As HSBC discussed in its motion, Dkt. No. 388 at 3, the

Act allows for the transfer of personal data in a number of circumstances, including if "the

transfer is necessary or legally required on important public interest grounds, or *for the*

*establishment, exercise or defence of legal claims*."  Article 22 § 1 (emphasis added).  In the July

24, 2017 opinion, Judge Netburn adopted HSBC's reasoning that this litigation exception allows

the disclosure of the redacted information, and other district courts have applied the litigation

exception in similar circumstances.[10]

---

[9] Further, as discussed above, *supra* pp. 10-12, Royal Park's arguments under Belgian privacy law have been a shifting target.  It raised its initial objections under Article 21 (to which HSBC responded with the litigation exception under Article 22), while its new arguments rely primarily upon "expert" opinions (from its lawyers) as to Articles 4 and 5 of the Belgian Data Privacy Act.

[10] *See St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1163 (D. Or. 2015) (transfer of personal data during discovery to country outside EU was permitted under exception "for the establishment, exercise or defence of legal claims" and recognizing application of exception even when producing party was not named party); *BrightEdge Techs., Inc. v. Searchmetrics, GmbH*, 2014 WL 3965062, at *4 (N.D. Cal., Aug. 13, 2014) (holding that, given the existence of the exception in both the German Federal Data Protection Law and the EU

Royal Park's objections do not even address this authority.[11]  Instead Royal Park attempts to rely on an impermissible "expert" opinion and the interpretation of an "independent advisory group" that were not submitted below for the disputed proposition that the litigation exception applies only to orders based on EU or Belgian law.  Mot. at 11.  Royal Park fails to explain why an "advisory group" should have any kind of persuasive authority over a U.S. court.

The Court should disregard these dubious and biased sources and rely on the plain language of the Act and its application in similar U.S. cases.  As the cases cited above establish, *supra* n.10, the language of the Act is not limited to orders based on EU or Belgian law, and U.S. courts have relied on it repeatedly to require disclosure of information against challenges based on European privacy laws.  Royal Park has not offered any reason to disturb Judge Netburn's ruling on this issue.

### 2.    The Comity Analysis Favors Disclosure.

Even assuming *arguendo* the litigation exception did not apply and the Belgian Data Privacy Act prohibited disclosure, Royal Park still must produce the documents in unredacted form under U.S. law pursuant to the *Aerospatiale* comity analysis.  It "is well settled that [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S.

---

Directive, resisting party had not met its burden to demonstrate that discovery sought was prohibited under foreign law); *Philips*, 2016 WL 8505624 at *4-5 (German privacy law "does not prohibit the disclosure of protected information because [an exception] allows for production of personal information for 'establishment, exercise or defense of legal claims'").  The same analysis applies to Belgian privacy law because they both arise from the EU privacy directive.

[11] Royal Park cites an inapposite case, *In re Maxwell Commc'n Corp., PLC*, 93 F.3d 1036 (2d Cir. 1996), in which the court deferred to ongoing parallel proceedings in London.

522, 544 n.29 (1987).  As found by Judge Netburn, the *Aerospatiale* factors weigh in favor of disclosure.[12]

 *First*, the redacted information is important to the litigation.[13]  The documents at issue here hit on search terms for the trust names and CUSIPs involved in this case, and they are the only documents that Royal Park has thus far produced from its assignor BNP in compliance with the *Winnick* Order.[14]  A document containing relevant information communicated in a business email, for example, has little to no use at a deposition or at trial if HSBC does not know who sent or received it.  For Royal Park to assert this information is "meaningless" to the litigation defies common sense.  *See* Mirmira Decl. Ex. 7; Dkt. No. 388-1.  Royal Park acknowledges HSBC's position is that the documents are relevant to "assignor knowledge about the securities, and actions that the assignors could have taken regarding the securities."  Mot. at 12-13.  Royal Park has never collected or produced documents from the three custodians whose documents are redacted.  Many of these documents relate to the time period when Royal Park claims that the majority of its damages accrued, *i.e.*, the period of Fortis's ownership.  Judge Netburn

---

[12] Royal Park is making many of its arguments for the first time.  Royal Park now asserts that each of the seven factors considered under the comity analysis weighs in favor of nondisclosure, Mot. at 12-21, whereas before Judge Netburn Royal Park discussed only five of these factors, Dkt. No. 389 at 3-4.  As discussed above, *supra* pp. 10-12, Rule 72(a) objections are not the appropriate place to raise new arguments that a party could have made below.  The Court should disregard all new arguments and new evidence that Royal Park attempts to rely on now (after not presenting them to Judge Netburn).

[13] Contrary to Royal Park's implication, Mot. at 13, the court "'does not need to find . . . that the requested documents are 'vital' to a proper defense of this action.'"  *Reino de Espana v. Am. Bureau of Shipping*, 2005 WL 1813017, at *7 (S.D.N.Y. Aug. 1, 2005).  Royal Park's reliance on *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199 (E.D.N.Y. 2007), is inapposite, as the court *granted* the motion to compel over a French law objection.

[14] *See supra* pp. 6-7.

recognized the importance of these documents when she fully adopted the reasoning in HSBC's motion.[15]  Dkt. No 392.

_Second_, HSBC's request is highly specific.  Royal Park's contention that there is a large number of names in the emails is irrelevant.  HSBC's requests do not require any additional searches or document collection on Royal Park's part.  U.S. courts already have held that seeking the reproduction of redacted documents is a "sufficiently narrow" request under the second _Aerospatiale_ factor.  _See Philips_, 2016 WL 8505624 at *3-5 ("[T]he request is sufficiently narrow under the second factor because it seeks reproduction of a set of documents [a party] has already produced.")  Royal Park does not address this on-point case that deals with reproduction of redacted documents, and the two cases it relies upon do not support its position.[16]

_Third_, although the information was apparently stored in Belgium, Fortis Bank's CDO group was at all relevant times located in New York and therefore many of the documents involve U.S. personnel and/or originated in New York.  Royal Park has not explained why American employees of a U.S. entity should be protected by Belgian privacy laws.  Moreover, a case relied upon by Royal Park holds that "this factor [regarding where the documents

---

[15] As discussed above, _supra_ pp. 6-7, Royal Park relies on rulings in the _Deutsche Bank_ and _Wells_ cases to claim that the documents at issue here are irrelevant.  Royal Park is again attempting to resurrect a failed (and inapplicable) argument.  Those decisions related to document requests that are not at issue here, and Judge Netburn reached her own conclusions during her April 24 hearing, when she found Royal Park's BNP search terms to be inadequate and ordered additional terms.  Apr. 24, 2017 Hr'g Tr. at 35:23-36:1.

[16] _See Motorola Credit Corp. v. Uzan_, 73 F. Supp. 3d 397, 401 (S.D.N.Y. 2014) (ordering third party banks in France, Jordan, and UAE to produce individual financial information).  In _Catalano v. BMW of North America, LLC_, 2016 WL 3406125, at *8 (S.D.N.Y. June 16, 2016), the court granted a motion to compel the foreign defendant to produce documents over a foreign law objection and ordered the parties to meet-and-confer to narrow the requests.  This meeting-and-conferring has already occurred here as to the additional terms ordered by Judge Netburn.

originated] is not determinative." *Motorola Credit Corp. v. Uzan*, 73 F. Supp. 3d 397, 401 (S.D.N.Y. 2014) (ordering foreign banks to produce).

*Fourth*, there is no alternative method available to HSBC to secure unredacted versions of the documents. While HSBC has been able to identify a few of the heavily redacted documents as duplicates of previously produced unredacted copies, there is no indication that all or even most of the redacted documents also have been produced in unredacted form, nor is it feasible for HSBC to match all unredacted and redacted documents. Royal Park acknowledges that this factor weighs against it,[17] and so it falls back instead on the unsupported assertion that the names associated with a particular document are irrelevant. As explained above, information that cannot be tied to particular witnesses is rendered virtually useless in discovery or at trial.

*Fifth*, the competing national interests favor disclosure. Royal Park's own authority demonstrates that "two strong interests tilt the balance in favor of" HSBC. *Reino*, 2005 WL 1813017, at *4 (ordering production). "First, the United States has an undoubtedly substantial interest in fully and fairly adjudicating matters before its courts, which is only possible with complete discovery." *Id.*; *see also Laydon*, 183 F. Supp. 3d at 423 ("obvious [U.S.] interest in having its own procedural rules applied to discovery" and ordering production). "Second, the United States has 'an important interest in protecting its own nationals from unfair disadvantage when they are being sued in the courts of their own nation.'" *Reino*, 2005 WL 1813017, at *4.

In contrast, Belgium's privacy interests here are marginal at best, particularly as it stands to gain from this litigation. The cases Royal Park cites to show Belgium's purported interest involve information that is qualitatively different from the information here—personal financial

---

[17] The cases cited by Royal Park for this point do not support its position. *See supra* n.16 (discussing *Catalano*); *see infra* pp. 21, 23, 24 & n.21 (discussing *Reino*).

information or government investigation documents, as opposed to everyday business records.[18]

Royal Park also relies on a media article regarding Facebook, which involved Facebook

installing a "cookie" on users' Internet devices that tracked their web usage for up to two years.

Dkt. 409 at 23.  Royal Park cannot point to a single case establishing that Belgium has a strong

national interest in protecting the kind of data at issue here—names and business email addresses

in business emails.[19]  "[D]iscovery *of* personal data" was at issue in the cases cited by Royal

Park, whereas "discovery that *incidentally contains* personal data" is at issue here.[20]  *St. Jude

Med. S.C.*, 104 F. Supp. 3d at 1164–65 (ordering production).

---

[18] *Minpeco, S.A. v. ContiCommodity Servs. Inc.*, 116 F.R.D. 517, 524 (S.D.N.Y. 1987) ("disclosure of customer account information" under Swiss "bank secrecy statutes"); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 156 (S.D.N.Y. 2011) ("banking records" under Chinese bank secrecy laws); *In re Payment Card Interchange Fee and Merchant Discount Litig.*, 2010 WL 3420517 (E.D.N.Y. Aug. 27, 2010) (European Commission's investigation files); *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1279 n.3, 1280-81 (7th Cir. 1990) (national *state* secrets and *service* secrets under Romanian law); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 2005 WL 3046284, at *2 (S.D.N.Y. Nov. 14, 2005) (Korean quasi-governmental entity's investigation files and "Korean national interest in the unimpeded function of regulatory bodies"), *aff'd*, 476 F.3d 140 (2d Cir. 2007) (affirmed on state sovereignty grounds, not comity analysis); *In re Activision Blizzard Stockholder Litig.*, 86 A.3d 531, 551 (Del. Ch. 2014) (*granting* motion to compel, with suggested "pseudonyms" for minors and family members, home addresses, and "personal data revealing racial or ethnic origin, religious beliefs, a trade union membership, or concerning health or sex life").  No such personal intimate information or governmental investigatory records are at issue here.

[19] The other cases cited by Royal Park are entirely inapposite.  *Bryant v. New York State Education Department*, 692 F.3d 202, 217 (2d Cir. 2012), and *Reno v. Flores*, 507 U.S. 292, 299 (1993), involve fundamental rights under the Due Process Clause of the U.S. Constitution and have nothing to do with international comity or European privacy laws.  In *Pershing Pacific West LLC v. MarineMax, Inc.*, the court did not order personal information to be redacted; it gave examples of ways in which information could be disclosed, such as via consent, redactions after *in camera* review, or a protective order (which the parties have in place here), and granted the motion to compel.  2013 WL 941617, at *9 (S.D. Cal. Mar. 11, 2013).

[20] Moreover, as Fortis Bank's CDO group was located in New York, many of the communications likely involve non-Belgian citizens.  And the litigation exception discussed above, *see supra* pp.17-18, demonstrates that Belgium's interest is "not all-consuming." *Laydon*, 183 F. Supp. 3d at 423; *BrightEdge*, 2014 WL 3965062, at *4 (exceptions in privacy law put this factor "in favor of compelling production"); *Alfadda v. Fenn*, 149 F.R.D. 28, 35 (S.D.N.Y. 1993)

Further, as a shareholder of Royal Park, along with BNP, the Belgian state stands to profit from this litigation. Both the Belgian state and BNP have representatives sitting on the Board of Royal Park directing the course of this litigation; in fact, the Belgian state's representative is Chairman of Royal Park's Board, who has submitted several declarations in this and other cases supporting Royal Park's claims. Mirmira Decl. Ex. 4 at 82:9-83:6; Dkt. No. 337-3; *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-04394-AJN-BCM, Dkt. No. 187-3 (June 8, 2016); *Reino*, 2005 WL 1813017, at *4.[21]

*Sixth*, there is little realistic possibility of hardship for BNP or Royal Park. While Royal Park claims that large fines are *possible* for violating the privacy laws, it fails to point to any actual prosecutions under remotely similar circumstances—complying with a U.S. court order to produce names and business email addresses in business emails in litigation seeking to benefit BNP and the Belgian state. *See Laydon*, 183 F. Supp. 3d at 425 ("[T]he Moving Defendants are unable to cite a single instance in which a UK enforcement action was taken against an entity for violating the [UK Data Protection Act] by complying with discovery demands in the United States."). Given the business relationship amongst the Belgian state, BNP, and Royal Park, the suggestion that Belgium would prosecute either BNP or Royal Park for disclosing the business email addresses of its employees in these circumstances is outlandish and speculative at best.

---

(where applicability of Swiss secrecy laws was not clear, national interests tipped in U.S.'s favor). The fact that there is a protective order in this case also tips the national-interest factor "in favor of production." *See Philips*, 2016 WL 8505624, at *4; *Laydon*, 183 F. Supp. 3d at 425.

[21] Royal Park's attempt to commandeer the Supreme Court's exhortation in *Aerospatiale* that foreign litigants not be placed "in a disadvantageous position," Mot. at 17-18, has been rejected. *See Reino*, 2005 WL 1813017, at *4 (rejecting this very argument because it would "turn on its head" the Supreme Court's concern that foreign *defendants* might be disadvantaged).

Royal Park already has produced unredacted duplicates of some of these documents without adverse legal consequences. *See supra* pp. 13 & 21.

Moreover, where, as here, the party resisting discovery is the one who brought the lawsuit, pleas of hardship carry much less weight because a "production order by this Court does not condemn plaintiffs to confinement in . . . prison.  It merely gives them a choice.  They can withdraw their complaint voluntarily at any time." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petrol. Co.*, 105 F.R.D. 16, 31 (S.D.N.Y. 1984) ("Even if criminal penalties were likely to be imposed . . . [that does not] counsel against issuance of a production order.").

Here, Royal Park brought this lawsuit in a U.S. court seeking billions of dollars, Compl. ¶ 19, and it remains under a court order to produce these documents.  It cannot avail itself of the U.S. court system but willfully ignore American discovery rules. *Compagnie Francaise*, 105 F.R.D. at 32.  To the extent Royal Park finds itself subject to competing demands, it may withdraw its complaint. *Id.* at 31; *Reino*, 2005 WL 1813017, at *8 ("hardship factor does not weigh heavily in Spain's favor because Spain, as a plaintiff, has the option of abandoning this lawsuit").  If it does not, it is appropriate for Royal Park to bear the consequence of its non-compliance, rather than prejudice HSBC for Royal Park's failure to meet its obligations.  Apr. 24 2017 Tr. at 36:15-17.

*Seventh*, Royal Park's protestations of good faith are belied by its own conduct since the Court first ordered it to produce documents from BNP in December 2015.[22]  As detailed above,

---

[22] Even if Royal Park had acted in good faith, "good faith will not insulate a party from the obligation to respond in discovery." *Milliken & Co. v. Bank of China*, 758 F. Supp. 2d 238, 250 (S.D.N.Y. 2010).  The other case cited by Royal Park here involved individual asset information sought from a non-party via subpoena. *CE Int'l Res Holdings, LLC v. S.A. Minerals Ltd. P'ship*,

Royal Park failed to comply with the *Winnick* Order for over a year-and-a-half, refused to compromise over issues such as search terms and the current redactions, and has engaged in protracted litigation over those issues.  It has done all this after filing numerous actions in U.S. courts knowing that it did not have the documents it needed to fulfill its discovery obligations. Whatever difficulties Royal Park faces now with fulfilling its discovery obligations are largely of Royal Park's own making.  *Deutsche Bank*, 2016 WL 4613390, at *8.  Royal Park's inadequate compliance with the *Winnick* Order over a year-and-a-half after it was issued, and as discovery was closing, does not amount to good faith.

In sum, Royal Park's revised comity analysis fares no better than before.  Royal Park relies on cases that either support HSBC's position, with the courts ordering production, *see, e.g.*, *supra* n. 13, 16, 17; or that unlike here, involve individual account information or governmental investigatory files, and do not reference a statutory litigation exception, *see supra* n.18.  Thus, the cases cited by HSBC, which deal with analogous circumstances involving European privacy laws, demonstrate that nearly all, if not all, of the *Aerospatiale* factors favor production.

## CONCLUSION

Royal Park has fought tooth-and-nail to avoid its discovery obligations, while seeking to recover on its assignors' claims.  Having produced only limited and belated BNP documents with key information redacted, Royal Park is now asking, after the end of fact discovery, for the Court to bless its deficient production.  Its objections, however, provide no basis for overruling Judge Netburn's prior rulings.  For the foregoing reasons, HSBC respectfully requests the Court deny Royal Park's Rule 72(a) Objections and Motion to Vacate.

---

2013 WL 2661037, at *3-4 (S.D.N.Y. June 12, 2013) (customer financial information under Singapore bank secrecy laws at issue).

Dated: September 8, 2017      By:   /s/ *Vidya Atre Mirmira*

George A. Borden
Kevin M. Hodges (*pro hac vice*)
Andrew W. Rudge  (*pro hac vice*)
Edward C. Reddington (*pro hac vice*)
Vidya Atre Mirmira (*pro hac vice*)
Eric C. Wiener (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
gborden@wc.com
khodges@wc.com
arudge@wc.com
ereddington@wc.com
vmirmira@wc.com
ewiener@wc.com

*Counsel for HSBC Bank USA, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2017, I electronically filed the foregoing document by email to the chambers of Judge Schofield, in accordance with Individual Rule § I.C.3, and to counsel of record.

/s/ *Jeffrey R. Hoops*
Jeffrey R. Hoops