KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

January 30, 2018

**VIA ECF**
Hon. Lorna G. Schofield
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Coordinated RMBS Trustee Litigation against HSBC Bank USA, N.A.*, Nos. 14-cv-08175; 14-cv-09366; 14-cv-10101; 15-cv-02144; 15-cv-10032; 15-cv-10096, Notice of Supplemental Authority by Coordinated Plaintiffs Supporting Sampling

Dear Judge Schofield:

Coordinated plaintiffs respectfully submit a recent decision by the Honorable Katherine B. Forrest as supplemental authority supporting the use of sampling-based expert evidence in these cases.  See *Deutsche Bank v. Morgan Stanley Mortgage*, No. 14-cv-3020, ECF No. 145 (S.D.N.Y. Jan. 25, 2018).

The court in *Deutsche Bank* denied summary judgment and held that "statistical sampling is an appropriate means of attempting to prove both liability and damages" in a repurchase case by a plaintiff trustee — the same type of case plaintiffs allege HSBC should have brought in order to preserve investor trust funds. *Id.* at 13.  HSBC and the Magistrate Judge's opinion precluding sampling rely heavily on "sole remedy" provisions in the governing Pooling and Servicing Agreements ("PSAs"), as well as Judge Castel's construction of such provisions.  Judge Forrest, however, rejected those arguments and approved the use of sampling-based expert evidence at trial, finding that "there should be no serious dispute in 2018 that statistical sampling is a generally accepted method of proof in RMBS cases."  *Id*. at 35 (citing *Assured Guaranty v. Flagstar Bank*, 920 F. Supp. 2d 475, 512 (S.D.N.Y. 2013) (Rakoff, J.)).

**1.  *Sole remedy.*** Judge Forrest observed that New York's "Court of Appeals has made clear that courts may 'award damages in lieu of the desired equitable remedy' 'where the granting of equitable relief appears to be impossible or impracticable' or 'in order to prevent a failure of justice … when it is for any reason impracticable to grant the specific relief demanded.'" *Id.* at 30 (quoting *Doyle v. Allstate Ins. Co.*, 1 N.Y.2d 429, 443 (1956)).  The court "conclude[d] that it would be impracticable and inequitable to limit Deutsche Bank to specific performance of the Repurchase Protocol," *id.*, for three reasons.

*First*, the court rejected Judge Castel's requirement of "loan-by-loan analysis and proof," as now having been "proved to be extraordinary and, measured against various benchmarks, impracticable" because the court's bench trial in that case "fully analyzed" "only 20 out of 9,342 loans at issue (or approximately 0.0021%.)" *Id.* at 30-31.  Further, the subsequent special master "review process will be ongoing for the foreseeable future, and the final cost, both in terms of time and resources expended, will be extraordinary." *Id.* at 31.  The court concluded that such an approach "is demonstrably impracticable, and will permit an award of damages in lieu of specific performance." *Id.*

*Second*, the court found that "allowing for an alternative award of damages is consistent with broader principles of equity" because the "primary relief that Deutsche Bank is seeking — *i.e.*, the 'Purchase Price' of materially nonconforming loans — is completely fungible." *Id.* at 31-32.  Thus, "'whether the Trustee's remedy is characterized as "compensatory damages," "rescissory damages," or "specific performance," … has little practical significance given that the form of the relief (if not necessarily the quantum) is the same in each case:  the payment of money to make Plaintiff whole.'" *Id.* at 32 (quoting *Deutsche Alt-A v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 501 (S.D.N.Y. 2013)).  The same is true here, where plaintiffs seek a remedy based on the repurchase price that HSBC should have sought to enforce by bringing the same type of case advanced by the plaintiff trustee in *Deutsche Bank*.

*Third*, "[t]he reality is that the Repurchase Protocol was not designed or intended to remedy a breach of the nature or magnitude alleged here." *Id.* at 33. "A repurchase protocol theoretically provides security for certificateholders by giving the sponsor a means of maintaining the integrity of the trust and remedying the types of isolated breaches that might be expected to pop up in the loan pool over time," but evidence of pervasive breaches means that "the Trust was doomed to breach and the Repurchase Protocol doomed to impracticability." *Id.* at 34. Here, for example, HSBC had "discovery or receipt of notice" of pervasive breaches yet failed to take action. *See* No. 15-cv-2144, ECF No. 247 at 21-22 (notice from Goldman Sachs re 14 Fremont trusts), ECF Nos. 297 at 2-3 & 297-1 (HSBC allegations in 16 complaints against Deutsche Bank). And HSBC likewise failed to notify investors of those same facts, making it liable for "for breach of the … notice provision" in the PSAs. *Deutsche Bank* at 34.

**2. *Sampling.*** Because "it would be impracticable and inequitable to limit Deutsche Bank's recovery to specific performance" and require loan-by-loan proof, the court held that "statistical sampling is an entirely appropriate method of attempting to prove both liability and damages." *Id.* at 35-36. The "purpose of statistical sampling is to determine 'the proportion of the individual members in the pool exhibiting any given characteristic' 'despite the unique characteristics of the individual members populating the underlying pool.'" *Id.* at 36 (quoting *Flagstar*, 920 F. Supp. 2d at 512); *see id.* at 22 n.7 (noting that the *Flagstar* contract also had "a 'sole remedy' provision"). And importantly, "proper statistical sampling is not a shot in the dark — it is a well-established and scientifically sound method of inferring (to varying degrees of certainty) how many *individual* loans in the pool contain material breaches." *Id.* at 36.

The court noted that "the Repurchase Protocol is triggered upon discovery or notice 'of a breach of any representation or warranty … which materially and adversely affects the value of … *any* of the [loans].'" *Id.* at 36 (alterations and emphasis by the court). The PSAs in this case similarly required HSBC to enforce seller repurchase duties upon "'discovery or receipt of notice … of a breach … in respect of *any* Loan that materially and adversely affects the value of such Loan." Magistrate Judge's Opinion re Sampling at 4 (quoting PSA § 2.03) (emphasis added). "A statistically significant sample demonstrating that … any … percentage … of the underlying loans contain material breaches undoubtedly satisfies that requirement." *Deutsche Bank* at 36.

**3. *"Discovery or receipt of notice."*** In *Deutsche Bank*, Judge Forrest agreed with Judge Rakoff that the phrase "discovery or receipt of notice" *id.* at 37, should be construed to mean "constructive or inquiry notice," *id.* at 40, as plaintiffs have argued in these cases. Judge Forrest disagreed with Judge Castel's contrary construction, which in any event was *dicta*. *See id.* at 41 & n.10. Judge Forrest also held the agreement did "not explicitly require that the party providing notice specifically identify or offer proof as to each and every loan subject to cure/repurchase, let alone that they do so in order to satisfy the threshold notice requirement." *Id.* at 38.

**4. *Materiality.*** The court also was "persuaded that plaintiff's expert reports are wholly sufficient to create a genuine dispute as to the materiality of defendant's alleged breaches." *Id.* at 55. Here, too, plaintiffs' experts may opine on the materiality of breaches in sampled loans and reliably extrapolate those results statistically to entire trust loan pools.[*]

---

[*] Triaxx is not using sampling but otherwise joins in the PSA contract construction arguments herein.

                                                                               Respectfully submitted,

                                                                               */s/ Scott K. Attaway*
                                                                               Scott K. Attaway

cc:      Counsel of Record (Via ECF)