UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/1/18

-----------------------------------------------------------X
ROYAL PARK INVESTMENTS SA/NV,                          :
                                     Plaintiff,        :
                      -against-                        :
HSBC BANK USA, N.A.,                                   :           14 Civ. 8175 (LGS)
                                     Defendant.        :
-----------------------------------------------------------X     OPINION AND ORDER

-----------------------------------------------------------X
BLACKROCK BALANCED CAPITAL                            :
PORTFOLIO (FI), et al.,                               :
                                     Plaintiffs,      :
                      -against-                        :           14 Civ. 9366 (LGS)
HSBC BANK USA, N.A.,                                  :
                                     Defendant.        :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        Certificateholders of RMBS trusts are suing trustee HSBC Bank USA, N.A. ("HSBC"),

asserting claims for breach of contract and breach of trust for violations of the agreements

outlining HSBC's obligations as trustee.  Before the Court are motions in two of six coordinated

lawsuits ("*Royal Park*" and "*BlackRock*") to certify those suits as class actions under Federal

Rules of Civil Procedure 23(a) and 23(b)(3), to appoint the named Plaintiffs in both actions as

class representatives and to appoint their counsel as class counsel.  Because the Court cannot

conclude on the record before it that the two proposed classes satisfy the predominance

requirement under Rule 23(b)(3), the motions are DENIED.

## I.      BACKGROUND

### a.  Factual Background

        Familiarity with the factual and procedural background of these cases is assumed, and is

described in detail in Judge Scheindlin's decision on the motion to dismiss in this case, *Royal

Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 594-95 (S.D.N.Y.

2015); and in Magistrate Judge Netburn's Opinion & Order on sampling, *Royal Park Invs. SA/NV*

*v. HSBC Bank USA, Nat'l Ass'n*, No. 14 Civ. 8175, 2017 WL 945099, at *1-*3 (S.D.N.Y. Mar. 10, 2017). These factual statements are hereby incorporated by reference.

In brief, Plaintiffs are current certificateholders in each of 267 trusts formed between 2004 and 2008, which issued fixed-income instruments known as RMBS certificates. The certificates are collateralized by thousands of mortgage loans held in the trusts, and certificateholders are entitled to the cash flows generated by those loans. The loans were transferred to the trusts by institutional entities called "depositors," which had acquired them in large pools from entities, known as "sponsors" or sellers," that had either originated the loans themselves or purchased the loans directly or indirectly from the original lenders and aggregated them.

The trusts are governed by agreements running between the trustee, relevant depositors, sponsors and/or sellers and other interested parties.[1] Among other things, the agreements set forth or incorporate by reference certain representations and warranties ("R&Ws") made by the relevant sponsors or sellers as to the credit quality and characteristics of the loans held by the trusts and as to the accuracy of the data conveyed about such loans. The agreements require the warranting entities to cure, substitute or repurchase any loans failing to conform to the R&Ws.

_____

[1] There are two types of RMBS trust at issue in this case, indenture trusts and PSA trusts, each with a particular contractual structure. One of the bellwether trusts in this case is an indenture trust that issued debt obligations, or notes. Indenture trusts involve three main agreements: a trust agreement creating the Delaware statutory trust that issues the notes, an indenture containing the terms of the notes, and a sales and servicing agreement setting forth the servicing obligations as to the underlying mortgage loans. The remaining trusts (including all three trusts in the *Royal Park* action) are PSA trusts that issued certificates, representing ownership interests. The PSA trusts are governed by the PSA itself, which governs the terms of the certificates and the servicing of the loans.

As trustee, HSBC owed certain "limited, contractual" duties to the certificateholders set forth in the governing agreements, generally identified as the pooling and servicing agreements ("PSAs" or the "Agreements") and other related agreements, including the Mortgage Loan Purchase Agreements and Servicing Agreements.   Except for an implied duty to avoid clear conflicts and perform its ministerial duties with due care, the trustee's obligations are strictly defined by the terms of the PSAs.  Upon the occurrence of a contractually defined Event of Default, HSBC must exercise its rights and powers under the PSAs using the same degree of care and skill as a prudent person would exercise under the circumstances in the conduct of his or her own affairs.  Plaintiffs claim that HSBC breached the PSAs by failing to take appropriate action to remedy alleged breaches, mainly R&W breaches by sponsors and Events of Default triggered by servicer failings.

### b.  Procedural History

Following Judge Scheindlin's resolution of HSBC's motion to dismiss, Plaintiffs in six coordinated cases against HSBC are left with breach of contract and common law claims, and claims under the Trust Indenture Act, 15 U.S.C. § 77ooo ("TIA").  To address the complexity of these cases, Judge Scheindlin ordered the parties to proceed only on a "bellwether" or "representative sample" of the trusts at issue.  The parties agreed on 24 "Bellwether Trusts."

Plaintiffs in the *Royal Park* and *BlackRock* actions now seek to certify classes to further prosecute these contract, common law, and TIA claims.  The named Plaintiffs in the *BlackRock* action are 175 investment funds run by institutional investors, and the named Plaintiff in the *Royal Park* action is a special-purpose vehicle established in Belgium to take impaired assets off the balance sheet of a Belgian institution, Fortis Bank.

*BlackRock* Plaintiffs move to certify a class of:

All individuals who purchased or otherwise acquired a beneficial interest in a security issued from the Bellwether Trusts between the date of offering and 60 days from the final order certifying the class and who hold that beneficial interest

3

in the security through the date of final judgment in the District Court, and who were damaged as a result of Defendant HSBC Bank USA, National Association's ("HSBC" or "Defendant") alleged breaches of contract and violations of the Trust Indenture Act of 1939 ("TIA").

*Royal Park* Plaintiff moves to certify a class of:

All persons and entities who held Certificates in the Covered Trusts at any time between the date of issuance to no later than 60 days after notice of class certification and opportunity to opt-out is issued and were damaged as a result of HSBC Bank USA, N.A.'s conduct alleged in the Complaint.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) provides that plaintiffs may sue on behalf of a class where:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Where, as here, Plaintiff seeks to certify a class under Rule 23(b)(3), Plaintiff also must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

As relevant here, "[p]redominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). "The requirement's purpose is to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Mazzei v. Money*

*Store*, 829 F.3d 260, 272 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)), *cert. denied*, 137 S. Ct. 1332 (2017).

"The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism, and is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." *In re Petrobras Secs.*, 862 F.3d 250, 270 (2d Cir. 2017) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)). "Where individualized questions permeate the litigation, those 'fatal dissimilarities' among putative class members 'make use of the class-action device inefficient or unfair.'" *Id.* (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 (2013)). "The predominance inquiry mitigates this risk by 'asking whether the common, aggregation-enabling, issues in the case are *more prevalent or important* than the non-common, aggregation-defeating, individual issues.'" *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). "This analysis is 'more qualitative than quantitative,' and must account for the nature and significance of the material common and individual issues in the case." *Id.* at 271 (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50, at 197 (5th ed. 2012)) (citing *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)).

The Second Circuit gives Rule 23 a "liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *accord In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12 Civ. 2548, 2017 WL 1273963, at *5 (S.D.N.Y. Mar. 31, 2017). But "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff must establish by a preponderance of the evidence that each of Rule 23's requirements is met. *In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016).

## III.    DISCUSSION

The Royal Park and BlackRock motions to certify the proposed classes are denied.  Both the proposed classes fail because Plaintiffs have not proven predominance.

While some members of the proposed class are original certificateholders, others, including many named Plaintiffs such as PIMCO and BlackRock, are seeking losses incurred by previous holders of their securities.  As explained below, the fact that many class members acquired their beneficial interests in the securities at issue after the alleged injuries occurred raises individualized questions as to standing to sue and the applicable statute of limitations.  These questions would overwhelm any common issues in the proposed class actions and "make use of the class-action device inefficient or unfair." *Petrobras*, 862 F.3d at 270 (quoting *Amgen*, 568 U.S. at 470).

### A.    Standing To Sue

Investors claiming losses incurred by previous holders must prove that they have the standing to do so.  "Lawsuits by assignees . . . are cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 285 (2008) (internal quotation marks omitted).  An assignment of claims from the original certificateholders and their assignees to the putative class members would allow the class members to satisfy constitutional standing requirements.  *See Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 417-18 (2d Cir. 2015).  The issue here is whether the putative class members were assigned the claims such that they have standing to bring suit based on the certificates.  The fact that Plaintiffs currently hold the certificates does not establish their standing as to losses incurred by previous certificateholders.  The Second Circuit upheld a denial of class certification on predominance grounds where "the fact-finder would have to look at every class member's [transaction] documents to determine who did and who did not have a

valid claim." *Mazzei*, 829 F.3d at 272. *See also Petrobras*, 862 F.3d at 268 (citing *Mazzei* for the proposition that "classes that require highly individualized determinations of member eligibility" must be scrutinized under the predominance requirement).

The classmembers in this case "are from all over the country . . . as well as from outside the United States, including Europe and Asia." These certificateholders traded through brokers potentially located in yet other jurisdictions. In another action against an RMBS trustee, Judge Nathan denied class certification in part on the basis that the standing of investors who were assigned or acquired certificates through the secondary market to assert breach of contract claims may turn on the terms of the assignments (and any prior assignments) and on the jurisdiction whose law governs each assignment. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ. 4394, 2017 WL 1331288, at *7 (S.D.N.Y. Apr. 4, 2017) ("*Deutsche Bank*"). In another similar action, Magistrate Judge Netburn recommended denying class certification for the same reason. *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.*, No. 14 Civ. 9764 (S.D.N.Y. Jan. 10, 2018) ("*Wells Fargo* Class Cert. R&R"). This Court agrees with Judge Nathan's and Judge Netburn's reasoning on this issue and summarizes it below.[2]

Consistent with common law principles, many jurisdictions generally do not recognize an assignment of a litigation right or claim when an underlying property is transferred unless the assignor "manifest[s] an intention to transfer the right." Restatement (Second) of Contracts § 324 (1981); *see also DNAML Pty, Ltd. v. Apple Inc.,* No. 13 Civ. 6516, 2015 WL 9077075, at *4

---

[2] Judge Nathan denied class certification finding that the proposed class was not ascertainable because standing to sue could not be determined "in an administratively feasible manner that does not require[] individualized hearings." *Deutsche Bank,* 2017 WL 1331288, at *8. Her opinion preceded the Second Circuit's opinion in *Petrobras*, which holds that the ascertainability doctrine "requires only that a class be defined using objective criteria that establish a membership with definite boundaries." 862 F.3d at 264.

(S.D.N.Y. 2015) (surveying history of common law rule; noting that at common law, there was "no presumption of an automatic assignment of the right to bring a claim associated with the property when the property was sold" and that, generally, "the law has required an express assignment of right to bring a cause of action").  On the other hand, the New York General Obligations Law provides that "[u]nless expressly reserved in writing, a transfer of any bond shall vest in the transferee all claims or demands of the transferrer, whether or not such claims or demands are known to exist . . . for damages against the trustee or depository under any indenture under which such bond was issued."  N.Y.G.O.L. § 13-107(1).

Given the secondary market trading of the securities at issue involving many domestic and international jurisdictions, determining which class members have contract claims will require individual inquiries.  First, the Court would have to apply New York's fact-intensive "center of gravity" choice-of-law framework to determine which jurisdiction's law governs a particular assignment.  Under this approach, courts consider five factors in determining which jurisdiction has the "most significant relationship" to a contract dispute:  (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter and (5) the domicile or place of business of the contracting parties.  *Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 151–52 (2d Cir. 2003) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317 (N.Y. 1994)).  For each of the more than 200 class members, this analysis would be necessary for *each* transfer in the chain from the original certificateholder to the potential class member.  Second, the Court would have to apply the law relevant to each transaction to determine whether claims were assigned with the transfer of certificates or retained by the seller.  A certificateholder has standing to sue only if every prior transaction in the chain included an assignment of the right to sue along with the underlying certificate.

8

The fact-intensive individualized inquiry necessary to determine standing and class membership would undermine any economies achieved by class treatment and would fail to establish liability as to any potential absent class member whose certificates were traded on the secondary market. Assuming for this decision that issues as to HSBC's conduct are common to all certficateholders of a given trust, "there is no great advantage in trying the common issues in this case as a class action." *Johnson v. Nextel Commc'ns., Inc.*, 780 F.3d 128, 147 (2d Cir. 2015). "A single bellwether trial that establishes [HSBC's] role through special interrogatories would have the same consequence as trying common issues on a classwide basis through its collateral estoppel effect on subsequent cases." *Id.* The predominance requirement is meant "to ensure that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Mazzei*, 829 F.3d at 272 (quoting *Myers*, 624 F.3d at 547). Class certification would achieve none of these benefits as compared to bellwether trials.

Plaintiffs assert that the certificates at issue either contain or incorporate by reference to the PSAs New York choice-of-law provisions that require the application of New York law to all transfers of the certificates. Plaintiffs thus argue that under N.Y.G.O.L. § 13-107(1), the right to sue the trustee is transferred along with each assignment of the certificates. Specifically, Plaintiffs state, first, that certificates for six of the trusts contain New York choice-of-law clauses providing that the certificates "shall be governed by and construed in accordance with the laws of the State of New York"; and second, that certificates for all the trusts at issue generally contain language stating the certificates are "issued under" and "subject to the terms, provisions and conditions" of the underlying PSAs, to which the certificateholder "by virtue of the acceptance

9

[of the certificate] assents and by which such Holder is bound."[3]  Plaintiffs claim that this

incorporates the New York choice-of-law provisions in the PSAs.

This choice of law argument is unconvincing.  Addressing the language common to all the

trusts first, courts in this district have found that an indenture's governing law clause has "no

relevance to the question whether the contracts of sale of notes operated to assign certain rights of

action—a question controlled, as to each sale, by New York choice of law principles."  *Deutsche

Bank*, 2017 WL 1331288 at *7 (quoting *Semi-Tech Litig. LLC v. Bankers Tr. Co.*, 272 F. Supp.

2d 319, 330 (S.D.N.Y. 2003)); *accord In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th

Cir. 1985) ("[T]he provisions of the indenture have no relevance to the question whether the

contracts of sale [of certificates] operated to assign certain rights of action. We must construe the

contracts of sale . . . rather than the indenture.").  The choice-of-law provisions in the PSAs

govern the rights and duties of the parties to the agreements -- as relevant here, the trustee and the

certificateholders.  They do not purport to govern the separate contracts between buyers and

sellers of the certificates.  Such contracts contain terms and consideration outside the purview of

the PSAs and the certificates themselves.  For the same reason, the choice of law provisions in

certificates for six of the trusts, which state that the certificates themselves are governed by New

York Law, do not dictate the governing law for separate contracts transferring these certificates

from one holder to the next.

Plaintiffs point to *Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*, 06 Civ. 5246,

2007 WL 950134 (S.D.N.Y. Mar. 28, 2007), as contrary authority, but it is not.  There, two

_____

[3] It is assumed for purposes of this decision that Plaintiff's representation as to the content
of the certificates is correct.  Among the certificates submitted by BlackRock that purportedly
contain NY choice-of-law provisions, only one exhibit contains the relevant provision.  The
remainder are truncated.

mutual funds sued an indenture trustee for breaches of the indenture agreement. The funds had purchased notes on the secondary market at various times and depended on § 13-107 for standing to bring certain claims. Judge Koeltl denied a motion to dismiss where there was "no showing that New York law did not govern each prior transfer of the [notes] at issue." *Id.* at *6. The notes in that case included an express New York governing law provision. The court noted that "[w]here a contract contains a New York governing law provision and where the transaction involves more than $250,000 . . . New York General Obligations Law § 5-1401 provides that the choice of law provision is controlling." *Id.* Notably, the court did not find that New York law governed that transfer of the notes. Rather, it denied the motion to dismiss to allow the parties to "brief after any appropriate discovery whether New York choice of law rules indicate that New York substantive law applies such that [plaintiff] has obtained the right to pursue the claims of prior holders of the [n]otes." *Id.*

The posture in this case is inapposite. Here, Plaintiffs seek to skip the New York choice of law analysis. They seek a ruling that, regardless of the many jurisdictions and individual circumstances involved in the contracts transferring the certificates at issue, these transfer contracts are all governed by New York law because the certificates being transferred are. Without examining the individual transfer contracts, there is no reason to conclude that the choice of law governing a particular asset must be the same as the choice of law governing a contract conveying that asset.[4]

_____

[4] The *Royal Park* class definition raises additional complications because it includes former, as well as current, certificateholders. Because an assignor of a certificate must either retain its claims or transfer them with the assignment, only one certificateholder in a given chain of title can have standing to sue for a particular injury. Class members thus have reason to litigate among themselves who in a given chain of title holds the requisite right of action.

**B.     Applicable Statute of Limitations**

The geographic diversity of the putative class members contributes to the lack of predominance in another way, by affecting the statute of limitations applicable to each class member's claim. *See Wells Fargo* Class Cert. R&R at 29-30. "Although the existence of a meritorious defense does not necessarily defeat certification, affirmative defenses may be considered as a factor in the class certification calculus." *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 226 F.R.D. 446, 454 (S.D.N.Y. 2005). The fact that a substantial number of class members' claims are time barred counsels against finding that common issues predominate. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233 (2d Cir. 2008). To determine the statute of limitations for each claim, the Court must apply New York's borrowing statute, C.P.L.R. § 202, which provides in relevant part that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued[.]" The statute requires "courts to 'borrow' the Statute of Limitations of a foreign jurisdiction where a nonresident's cause of action accrued, if that limitations period is shorter than New York's." *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 526 (N.Y. 1999). Under § 202, "a cause of action accrues at the time and in the place of the injury." *Id.* at 529. "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.* Moreover, for assigned claims, the cause of action accrues where the assignor's claim accrued. *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416 (N.Y. 2010). Thus, to ascertain whether any given class member's claim is timely, the Court would have to determine the holder of the certificate at the time the claim accrued, that certificateholder's residency, and the statute of limitations in the applicable jurisdiction.

Nor could New York choice-of-law provisions override the application of § 202. "Choice of law provisions typically apply to only substantive issues . . . and statutes of limitations are considered procedural because they are deemed as pertaining to the remedy rather than the right." *Id.* (citations and internal quotation marks omitted).

## IV.    CONCLUSION

For the reasons set forth above, the *Royal Park* and *BlackRock* Plaintiffs' motion to certify a class in this action, appoint these Plaintiffs as class representative and appoint their counsel as class counsel is DENIED.

The Clerk of Court is respectfully directed to close the motions at 14 Civ. 8175, Docket No. 335, and 14 Civ. 9366, Docket No. 385.

Dated: February 1, 2018
         New York, New York

                    LORNA G. SCHOFIELD
                 UNITED STATES DISTRICT JUDGE