```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
-------------------------------------------X    ELECTRONICALLY FILED
  ROYAL PARK INVESTMENTS SA/NV,            :    DOC #:_____
                            Plaintiff,     :    DATE FILED: 2/23/18
           -against-                       :
  HSBC BANK USA, N.A.,                     :    14 Civ. 8175 (LGS)
                            Defendant.     :
-------------------------------------------X              ORDER

-------------------------------------------X
  BLACKROCK BALANCED CAPITAL                :
  PORTFOLIO (FI), et al.,                   :
                            Plaintiffs,     :
           -against-                        :   14 Civ. 9366 (LGS)
  HSBC BANK USA, N.A.,                      :
                            Defendant.      :
-------------------------------------------X
-------------------------------------------X
  PHOENIX LIGHT SF LIMITED, et al.,         :
                            Plaintiffs,     :
           -against-                        :
  HSBC BANK USA, N.A.,                      :   14 Civ. 10101 (LGS)
                            Defendant.      :
-------------------------------------------X
-------------------------------------------X
  NATIONAL CREDIT UNION                     :
  ADMINISTRATION BOARD, et al.,             :
                            Plaintiffs,     :
           -against-                        :   15 Civ. 2144 (LGS)
  HSBC BANK USA, N.A.,                      :
                            Defendant.      :
-------------------------------------------X
-------------------------------------------X
  COMMERZBANK AG,                           :
                            Plaintiff,      :
           -against-                        :
  HSBC BANK USA, N.A.,                      :   15 Civ. 10032 (LGS)
                            Defendant.      :
-------------------------------------------X
-------------------------------------------X
  TRIAXX PRIME CDO 2006-1, et al.,          :
                            Plaintiffs,     :
           -against-                        :
  HSBC BANK USA, N.A.,                      :   15 Civ. 10096 (LGS)
                            Defendant.      :
-------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Certificateholders of RMBS trusts are suing Trustee HSBC Bank USA, N.A. ("HSBC") for violations of the Pooling and Servicing Agreements ("PSAs") outlining HSBC's obligations as trustee. Plaintiffs[1] seek permission to re-underwrite a sample of the underlying loans to prove liability and damages by showing high breach rates across the loan portfolio. HSBC objects to sampling as a valid method of proving its knowledge of loan-specific defects. HSBC thus requests that the Court first consider whether sampling is appropriate before the parties incur the enormous expert discovery cost and attorney time required to re-underwrite the loans.

The Honorable Sarah Netburn denied Plaintiffs' motion by Order dated February 24, 2017, and provided her reasoning in an Opinion and Order dated March 10, 2017 (the "Sampling Opinion"). Quoting the proportionality standard in Rule 26, the Sampling Opinion holds that "the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." including evaluation of relative burden and benefit). Judge Netburn determined that any benefit from sampling is slight based on her conclusion that Plaintiffs cannot prove their case through sampling but instead must prove that HSBC breached its contractual obligations as indenture trustee only on a loan-by-loan basis. However, the Sampling Opinion also expressly states that "at summary judgment or trial, conclusions of law set forth in this opinion should not be deemed to have law-of-the-case effect."

---

[1] All the Plaintiffs except Triaxx seek to use sampling to establish their claims and damages.

Plaintiffs object to the ruling. For the reasons stated below, Plaintiffs' objection is overruled.

## I.     LEGAL STANDARD

### A.  Standard of Review

Under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), a magistrate judge may adjudicate non-dispositive matters. *See also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010). A magistrate judge's order as to a non-dispositive motion may be set aside only where it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Arista Records*, 604 F.3d at 116. "An order is clearly erroneous if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Frydman v. Verschleiser*, No. 14 Civ. 5903, 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* Dispositive matters may be referred to a magistrate judge only for recommendation, not decision, and are reviewed by the District Court *de novo* in response to objections. *See* § 636(b)(1); Fed. R. Civ. P. 72(b). Discovery matters typically are considered non-dispositive. *Arista Records*, 604 F.3d at 116.

The Sampling Opinion denies Plaintiffs' discovery application based on Federal Rule of Civil Procedure 26 and its proscription concerning the scope of discovery. The Sampling Opinion accordingly is subject to review under a clear error, and not a *de novo,* standard of review. In a substantially similar case in substantially the same procedural posture against a different defendant, Judge Failla held that the clear error standard applied and reasoned:

> Judge Netburn did not decide Plaintiffs' standard of proof at trial or summary judgment in resolving the sampling issue. She in fact did just the opposite, disclaiming any law-of-the-case effect. A dispositive determination was not inevitably implicated by her

3

>proportionality analysis under Rule 26. Nor did the Sampling Opinion terminate any claims or the action. Indeed, the Consolidated Plaintiffs themselves have admitted that they have other evidence relevant to Defendant's "discovery" and "actual knowledge.

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, No. 14 Civ. 10067, 2017 WL 3610511, at *28 (S.D.N.Y. Aug. 21, 2017) (overruling Defendants' objection to Judge Netburn's order denying sampling applying both a clear error and *de novo* standard). In this case, as in *Wells Fargo*, the Defendant's objection would be overruled on proportionality -- or perhaps even relevance -- grounds for the reasons explained below, even if the Sampling Opinion were reviewed *de novo*.

## II.  DISCUSSION

Familiarity with the factual and procedural background of these cases is assumed, and is described in detail in prior opinions in this case, including Judge Scheindlin's decision on the motion to dismiss, *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 595 (S.D.N.Y. 2015), and in the Sampling Opinion. These factual statements are hereby incorporated by reference.

### A.  Document Defect and R&W Breach Claims Under § 2.03 of the PSAs

Plaintiffs generally allege that HSBC breached its contractual duties under § 2.03 of the PSAs. That provision imposes duties on HSBC only on the occurrence of one of two conditions -- upon HSBC's "discovery or receipt of notice" of (i) any materially defective Mortgage File document or (ii) a breach by the Seller of any representation or warranty ("R&W"). Plaintiffs seek to use sampling to show that both conditions overwhelmingly were satisfied in a sampling of loans such that HSBC was on constructive notice of the conditions as to all of the loans. Judge Netburn rejected the argument, finding that § 2.03 requires actual knowledge about defect or breach as to a specific loan rather than generalized knowledge based on sampling.

The requirement that HSBC have information on a loan-by-loan basis to trigger its duties comports with the structure of § 2.03 of the PSAs and the limited duties it imposes on HSBC as trustee. When the trustee identifies a defective document or R&W breach, it must request that the seller cure the defect or breach, and if the seller does not, the trustee must require the seller to repurchase the loan. The trustee cannot fulfill either of these duties without loan-specific information. The trustee cannot provide notice to the seller without knowing the specific defective document or the specific R&W breach. The trustee cannot evaluate any cure and cannot enforce the seller's obligation to repurchase a specific loan without information about that loan. Given the limited and loan-specific nature of the trustee's duties under § 2.03, the "discovery or receipt of notice" requirement must require HSBC to have information about a specific loan, rather than generalized knowledge or notice extrapolated from other loans. *See Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("Whether [a trustee] was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a loan's documentation was deficient requires looking at individual loans and documents."). Sampling cannot provide loan-specific information as to any loan outside the sample and is therefore of limited benefit.

For now, it is unnecessary to decide what level of loan-specific knowledge or notice is required to satisfy § 2.03. Judge Netburn's opinion was not clearly erroneous in concluding that Plaintiffs' proposed sampling would provide slight benefit at great cost and therefore is not justified under the proportionality standard of Rule 26. *See generally Wells Fargo*, 2017 WL 3610511, at *10 (declining to decide the precise level of loan-specific notice required under § 2.03, finding it "plausible" that plaintiffs might demonstrate "'discovery' through a showing of

conscious avoidance or implied actual knowledge, either of which would imposed a higher burden than 'constructive knowledge'").

Plaintiffs argue that sampling should be permitted because it can show "the breach rates HSBC would have discovered in a proper investigation (liability) and . . . estimate the harms to the trusts and plaintiff investors (damages)." In support of their argument, Plaintiffs cite numerous RMBS cases in which courts approved of sampling to show liability and damages against originators and sponsors. These cases are inapposite because the duty of an originator or sponsor to underwrite each loan before issuing or purchasing it is not comparable to the limited and loan-specific nature of the trustee's duties under the PSAs. Originators and sponsors review each loan file and make R&Ws as to each loan. Therefore, if any loan turns out to be defective, it is fair to assume that the originator or sponsor is liable. Thus, sampling to determine breach rates and average harm per breach can be a cost-effective way to establish liability and damages in a lawsuit against one of these entities.

For instance, Plaintiffs cite *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013), for the proposition that "[s]ampling is a widely accepted method of proof in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims." *Id.* at 512. There, Judge Rakoff, presiding over a bench trial, credited proof of liability and damages by sampling and found the sampling expert's "sample size . . . provided an adequate basis for assessing whether the Trusts as a whole complied with or breached Flagstar's representations and warranties"; and the damages expert "provided a solid basis for calculating the damages occasioned by any such breaches." *Id.* at 501. But unlike the instant actions, *Flagstar* was a lawsuit against a monoline originator and sponsor. The defendant was thus the entity that originated the loans and made the R&Ws in question, and was presumptively responsible for each material breach.

6

Indenture trustees, in contrast, neither underwrite loans nor, as discussed above, have any duty to examine them absent receipt of some form of loan-specific information of a breach. Thus, as to trustees, information establishing general breach rates and average harm per breach cannot prove liability and damages; trustees are merely responsible for materially breaching loans for which they received relevant loan-specific information and for which they failed to take contractually obligated action. Re-underwriting a sample of loans does not aid in determining the loans, if any, about which the trustee received relevant actionable information. Plaintiffs have not cited any authority, nor is the Court aware of any, permitting the use of sampling to establish liability or damages in a lawsuit against an RMBS trustee.

Plaintiffs' assertion that general awareness of breach rates is "discovery" under § 2.03 is similarly unavailing because the authorities Plaintiffs cite are unpersuasive. In *Bank of N.Y. Mellon Tr. Co., Nat'l Ass'n v. Morgan Stanley Mortg. Capital, Inc.*, No. 11 Civ. 505, 2013 WL 3146824 (S.D.N.Y. June 19, 2013), again a case addressing the duties of a servicer rather than a trustee under a separate contract from the PSAs, the court held that "[a] party discovers a breach when it knows *or should know* that the breach has occurred," *id.* at *19 (emphasis added). The Second Circuit vacated and remanded the case on appeal, but Plaintiffs note that the Circuit affirmed the district court's observation that "the law charges a party with discovery of breach only after it has had a reasonable opportunity to investigate and confirm its suspicions—in short, when it effectively becomes aware, rather than simply suspicious, of breach," *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 310 (2d Cir. 2016). This holding does not imply that the mere opportunity to investigate constitutes discovery or that indenture trustees have a general duty to investigate in the first place. Rather, the opinion holds only that there can be no "discovery" based on unconfirmed suspicions. As discussed, Plaintiffs' other authorities involve actions against originators and sponsors whose duties are not

7

comparable to those of trustees.  *See, e.g.*, *Law Debenture Tr. Co. of N.Y. v. WMC Mortg., LLC*, No. 3:12 Civ. 1538, 2015 WL 9581729, at *1 (D. Conn. Dec. 30, 2015) (originator); *Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 494 (S.D.N.Y. 2013) (sponsor); *MASTR Asset Backed Sec. Tr. 2006-HE3 ex rel. U.S. Bank N.A. v. WMC Mortg. Corp.*, 2012 WL 4511065, at *6–7 (D. Minn. Oct. 1, 2012) (originator); *LaSalle Bank N.A. v. Citicorp Real Estate, Inc.*, No. 02 Civ. 7867, 2003 WL 22047891, at *6 (S.D.N.Y. Aug. 29, 2003) (sponsor).

### B. Master Servicer Event of Default Claims Under § 8.01

Plaintiffs assert claims against HSBC under § 8.01 of the PSAs for failing to investigate and ultimately force repurchase of the loans.  Section 8.01 imposes a heightened, prudent person standard of care on the trustee, but only if the trustee has "actual knowledge" or "written notice" of an Event of Default ("EoD").  An EoD under the PSAs generally occurs upon the master servicer's breach of its obligations, receipt of notice of the breach, and failure to cure during the requisite period.  Plaintiffs assert a breach by the master servicer based *inter alia* on its failure to send notice to HSBC and others that the master servicer had discovered -- in the aftermath of the housing and financial crisis -- R&W breaches in the servicing portfolios.  Plaintiffs assert that they will show that HSBC had actual knowledge of the master servicer's breach of its obligations, which gave rise to a prudent person duty to investigate and discover the full extent of breaching loans, and then to force repurchase of the loans.  Plaintiffs apparently make the relatively limited argument now (as compared to below) that sampling will show that, had HSBC undertaken a similar investigation by sampling, it would have found widespread breaching loans, thus triggering HSBC's duty to force the sellers to repurchase the loans under § 2.03, discussed above.

The Sampling Opinion rejected this argument on the basis that Plaintiffs had failed to show that HSBC was obligated to investigate and undertake an extensive sampling review; and

8

that, even if HSBC had conducted a sampling, it could have identified the specific breaching loans outside the sample to force the sellers to repurchase.

This Court finds no clear error in the opinion's reasoning. Even assuming that Plaintiffs could show the master servicer's breach, that HSBC had actual knowledge of the breach, and that HSBC was required to conduct its own detailed sampling -- which Plaintiffs assert in a fairly conclusory manner -- Plaintiffs cannot overcome the unavoidable fact that a sampling is just that, and by definition cannot provide loan specific information as to any loan outside the sample.

### C. Proof of Damages

Plaintiffs argue that sampling would enable "Plaintiffs' damages experts [to] use the extrapolated breach rate together with loan values and the trust's waterfall structure as components for calculating damages." But as discussed above and as the Sampling Opinion states, "to successfully enforce repurchase of a specific loan after a defined EOD has occurred, HSBC would have needed to locate the individual breaching loans themselves rather than determine trust-wide breach rates." Sampling cannot prove damages for the same reason it cannot prove liability; it cannot identify the specific breaching loans outside the sample based on the existence and rate of defective loans within the sample.

### III. CONCLUSION

Because the Sampling Order is neither clearly erroneous nor contrary to law, Plaintiffs' objection is **OVERRULED**.

The Clerk of Court is respectfully directed to close the motions at 14 Civ. 8175, Docket No. 313; 14 Civ. 9366, Docket No. 341; 14 Civ. 10101, Docket No. 241; 15 Civ. 2144, Docket No. 244; 15 Civ. 10032, Docket No. 194; and 15 Civ. 10096, Docket No. 148.

Dated: February 23, 2018
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE